



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| SAMUEL RANDLES,<br><br>  Plaintiff,<br><br>v.<br><br>EAGLE MOUNTAIN-SAGINAW<br>INDEPENDENT SCHOOL DISTRICT;<br>JON GRADY, individually; and<br>LARRY LANCE, individually,<br><br>  Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED**<br><br>**4-26CV-999-P** |

### PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT UNDER 42 U.S.C. § 1983

This action challenges EMSISD's continuing use of an August 8, 2024 district-wide Criminal Trespass Warning as a permanent, unreviewable school exclusion; Police Captain Jon Grady's personal administration, renewal, and threat to arrest Plaintiff for entry 'for any reason'; Officer Larry Lance's August 11, 2026 seizure and Taser force in enforcing that warning; and the District policy that burdened Plaintiff's speech, petition, religious exercise, parental direction, and physical participation in his children's educational community. Plaintiff seeks damages and focused declaratory, notice, and prospective injunctive relief.

...

# TABLE OF CONTENTS

I. NATURE OF THE ACTION ........................................................................................ 3

II. PARTIES, JURISDICTION, AND VENUE ............................................................. 3

III. STATUTORY AND CONSTITUTIONAL FRAMEWORK ................................... 4

IV. FACTUAL ALLEGATIONS .................................................................................... 6

V. CLAIMS FOR RELIEF ............................................................................................. 9

    COUNT I - FIRST AMENDMENT SPEECH, PETITION, AND RETALIATORY

    EXCLUSION ............................................................................................................... 9

    COUNT II - FIRST AND FOURTEENTH AMENDMENTS: FREE EXERCISE AND

    PARENTAL DIRECTION ....................................................................................... 10

    COUNT III - FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS ............. 11

    COUNT IV - FOURTH AMENDMENT UNREASONABLE SEIZURE ......................... 11

    COUNT V - FOURTH AMENDMENT EXCESSIVE FORCE ........................................ 12

    COUNT VI - MUNICIPAL LIABILITY UNDER MONELL ........................................ 12

VI. INJURY AND RELIEF REQUESTED .................................................................. 13

VII. ATTORNEYS' FEES AND COSTS ...................................................................... 17

VIII. JURY DEMAND AND PRAYER ........................................................................ 17

VERIFICATION UNDER 28 U.S.C. § 1746 ............................................................... 18

## I. NATURE OF THE ACTION

1. On August 8, 2024, Eagle Mountain-Saginaw Independent School District (EMSISD) used an official, district-wide Criminal Trespass Warning (CTW) to exclude Plaintiff from every District property after he sought his son's PTA Reflections video and information about the school activity. The CTW cites Texas Penal Code § 30.05, has no expiration, supplies no appeal information, and states that it remains effective until EMSISD rescinds it in writing.

2. Penal Code § 30.05 remains applicable to criminal trespass on school property when its elements are met. But it defines an offense after effective notice; it does not give District police independent ownership of public-school property or create a separate, perpetual school-exclusion system. When EMSISD, through its administrators or commissioned peace officers, refuses entry to District property, Education Code § 37.105, EMSISD's GKA materials, and the Board-governed appeal process regulate that governmental exclusion.

3. EMSISD intentionally treated the § 30.05 label as a way around the school-specific safeguards: statutory grounds, a recorded warning, written appeal information, parental accommodations, Board access, and a maximum term of two years. District officials simultaneously routed Plaintiff into FNG(LOCAL), declared the police CTW unappealable, and maintained an arrest threat that prevented the physical access needed to complete the very review process Texas law requires.

4. After the two-year anniversary, EMSISD Police Captain Jon Grady declared the same 2024 CTW perpetual and threatened arrest if Plaintiff entered Greenfield for a parent event or 'for any reason.' On August 11, 2026, Officer Larry Lance enforced that notice, seized Plaintiff, and fired a Taser into Plaintiff's back after Plaintiff had disengaged and was moving away.

5. The exclusion burdens Plaintiff's speech and petition activity, physical participation in his children's educational community, and sincere religious exercise of directing their moral and religious upbringing. Plaintiff seeks damages from Grady and Lance individually and municipal, declaratory, notice, and prospective injunctive relief against EMSISD.

## II. PARTIES, JURISDICTION, AND VENUE

6. Plaintiff Samuel Randles is a Texas resident and father of children enrolled in EMSISD. He has recurring reasons to attend open Board meetings, scheduled parent events and conferences, school activities, and arranged records and instructional-material inspections.

7. Defendant Eagle Mountain-Saginaw Independent School District is a Texas local governmental entity. It may be served through Superintendent Jerry Hollingsworth at 1600 Mustang Rock Road, Fort Worth, Texas 76179.

8. Defendant Jon Grady is the EMSISD Police Captain and acted under color of state law. EMSISD's official directory identifies him as Police Captain of the EMSISD Police Department. Grady personally administered the CTW, asserted authority to decide whether District entry would result in arrest, reaffirmed the CTW after two years, and threatened arrest for entry at Greenfield 'for that event or any reason.' He is sued individually.

9. Defendant Larry Lance is an EMSISD peace officer who acted under color of state law. EMSISD's public directory identifies him as a police officer of the EMSISD Police Department and assigns him an EMSISD email address. He issued the CTW and personally enforced it on August 11, 2026. He is sued individually.

10. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201-2202, and equitable relief by 42 U.S.C. § 1983 and Rule 65. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside in this District and the events occurred in Tarrant County, Texas.

11. The requested relief runs against EMSISD's CTW and Defendants' conduct. Adjudication requires no review or alteration of a family-court judgment.

### III. STATUTORY AND CONSTITUTIONAL FRAMEWORK

12. Section 37.105 authorizes identified school officials, including a school-district peace officer, to refuse entry only when a person refuses to leave peaceably and either poses a substantial risk of harm or persists in identified inappropriate behavior after the required warning. EMSISD deliberately reduced those requirements to request plus refusal, then used Penal Code §30.05 to arrest Plaintiff and convert the resulting deficient school exclusion into a permanent, unreviewable ban. The warning must be recorded, a parent must receive written appeal information and required accommodations, and the exclusion may not exceed two years.

13. The implementing rule requires each school board to use its existing grievance process for a § 37.105 appeal and to permit the excluded person to address the Board personally within 90 days unless the appeal is granted earlier. 19 Tex. Admin. Code § 103.1207. Section

37.105 also protects a return made solely to attend an open governmental meeting, subject to applicable law and valid court orders.

14. Penal Code § 30.05 applies when a person enters or remains on property of another without effective consent after notice from an owner or person with apparent authority. The Board holds the exclusive power and duty to govern and oversee District management, and it commissions District peace officers under Education Code §§ 11.151 and 37.081. Any apparent authority Lance or Grady had over District property therefore derived from EMSISD's governance; police status did not make them independent owners or detach a District exclusion from school law.

15. Sections 37.105 and 30.05 can operate together. Section 37.105 regulates the District's school-property exclusion and its safeguards; § 30.05 may criminally enforce a current and effective notice when all offense elements are satisfied. Texas Government Code § 311.026 requires the general and special provisions to be harmonized and gives the specific provision effect in an irreconcilable conflict. A § 30.05 heading cannot enlarge the District's school exclusion beyond the authority from which the notice arose.

16. EMSISD's GKA Regulation and refusal-of-entry materials reflect that sequence: § 37.105 authorizes refusal of entry, the instrument may be called a criminal trespass warning, the term may not exceed two years, an appeal must be provided, and violation of a valid notice may support § 30.05 enforcement. Hall v. McKinney ISD likewise applied § 37.105 to a school officer's CTW and found the warning defective when statutory protections were omitted. Dkt. No. 009-R10-10-2022, PFD 7-9 (Tex. Educ. Agency Apr. 18, 2023).

17. The First Amendment protects speech, petition, association, and the free exercise right of parents to direct the religious upbringing of their children. Mahmoud v. Taylor, 606 U.S. 522, 535-46 (2025). The Fourteenth Amendment protects parental care, custody, control, and educational direction. Meyer v. Nebraska, 262 U.S. 390 (1923); Pierce v. Society of Sisters, 268 U.S. 510 (1925); Troxel v. Granville, 530 U.S. 57 (2000).

18. For EMSISD's continuing enforcement after September 1, 2025, Texas Education Code §§ 1.009, 26.001, 26.006, and 26.007 and Texas Constitution article I, § 37 reinforce the concrete parental activities at issue: directing moral and religious upbringing, receiving educational information, reviewing instructional materials in person, consulting school

officials, and attending open Board meetings. They also identify available, narrower ways to address legitimate safety concerns.

## IV. FACTUAL ALLEGATIONS

### A. The 2024 CTW

19. On July 22, 2024, Greenfield Principal Darius Flowers introduced Plaintiff's son to the EMSISD Board as a PTA Reflections film-production award winner. Plaintiff then sought the child's submitted video and information about the activity.

20. On August 8, 2024, Plaintiff attended Greenfield's Meet the Teacher Night and asked PTA President Amanda Hixon and Flowers for that information. The recording begins with Hixon saying, 'No problem. No problem,' and explaining that Plaintiff had questions about Reflections.

21. Lance arrested Plaintiff and issued EMSISD's printed CTW. The form states that the Superintendent authorized EMSISD Police to issue it; identifies Plaintiff as a District parent; covers every campus, office, bus, parking area, stadium, and facility; requires police scheduling for each visit; threatens arrest under § 30.05; and states: 'This notice shall remain in effect until it is rescinded in writing.'

22. The CTW contains no expiration, statutory warning record, parental accommodations, or written appeal information. It routes all in-person school business through EMSISD Police under threat of arrest.

23. Lance's later report described Hixon as distraught and stated that Plaintiff appeared prepared to strike Flowers. The recording captures no threat or attempted strike. Lance's report also admits that Plaintiff did not resist, actively or passively, during handcuffing.

24. Lance's report and Mark Allain's approving supplement confirm EMSISD Police's deliberate conflation of Education Code § 37.105 and Penal Code § 30.05. Allain stated that every element was satisfied because Flowers and Lance asked Plaintiff to leave and Plaintiff refused. But refusal alone did not establish either statutory ground for a school exclusion: a substantial risk of harm, or persistence in identified inappropriate conduct after the warning required by § 37.105. EMSISD nevertheless used § 30.05 to arrest Plaintiff without establishing the grounds for a school exclusion, then treated the resulting deficient notice as permanent authority beyond § 37.105's appeal protections and two-year limit.

25. On August 15, 2024, Grady told Plaintiff that he controlled access and would decide whether entry resulted in Plaintiff going 'to jail again.' Grady was EMSISD Police Captain, not a Fort Worth, Saginaw, or county officer, and he administered the CTW as a District police directive.

**B. District knowledge, the blocked review path, and continuing use**

26. On August 14, 2024, Jennifer Randles emailed Flowers that she had called Lance about new family orders, that Lance would review them with Flowers, and that she would call both before service the next day. Flowers answered, 'Thank you for letting us know.' Her supporting family-court affidavit then used accounts attributed to Hixon, Flowers, and the on-campus officer, including the all-property ban and alleged school safety judgments.

27. Jennifer later admitted that Plaintiff had requested the Reflections video, that she possessed it, and that she had not provided it. She identified herself as Greenfield PTA Donations Chair. In February 2025, EMSISD policy director Philo Waters confirmed that a teacher received the USB, passed it to the PTA, and returned it to the child's mother; Waters located another copy through a PTA-associated person and sent it to Plaintiff.

28. The Texas Education Agency's complaint-management response directed Plaintiff to use the local grievance process. Plaintiff followed that route and expressly raised § 37.105, the absent appeal, the indefinite term, the arrest, and the video dispute under FNG(LOCAL).

29. Waters, acting through the District grievance system and on behalf of the Superintendent, deliberately bypassed the required Level I process. After receiving Plaintiff's grievance, Waters did not schedule or conduct the conference required by FNG(LOCAL). He instead dismissed the grievance without a conference or merits review, declared the police CTW unappealable, copied Superintendent Hollingsworth, and closed the issue on EMSISD's behalf. At Level II, the District partially overturned Waters's timeliness dismissal but expressly declined to remand the timely issue for the Level I proceeding Plaintiff had been denied. The District thereby eliminated an entire level of review while leaving the CTW active. Plaintiff received no § 37.105 Board appeal or personal Board review within 90 days.

30. That procedure was circular. FNG(LOCAL) was the Board-adopted route required for a § 37.105 appeal, yet EMSISD used the § 30.05 label to deny review within that route. The

CTW simultaneously threatened arrest for entry onto every District property, including the Administration Building where the Board meets.

31. EMSISD also directed Plaintiff to inspect public records in person at a District building while maintaining that entry onto District property could trigger arrest. The OAG found material defects in EMSISD's original $21,540.40 cost estimate, including charges for legal review and unexplained printing of electronic records. The CTW, cost barriers, and police-permission condition obstructed Plaintiff's ability to obtain and inspect records concerning the exclusion and his children.

32. On March 10, 2026, EMSISD counsel Stacy Alford attended a family hearing, identified herself on the record as EMSISD's lawyer, and discussed her prior subpoena work for EMSISD. A May 28, 2026 amended family filing again relied on the August 2024 arrest and EMSISD accounts to seek Plaintiff's exclusion from the children's school activities. These facts show notice, motive, continuing consequences, and the need for discovery into nonprivileged District communications and use of the CTW.

33. Plaintiff holds sincere Christian religious beliefs that impose on him a parental duty to direct his children's moral and religious upbringing. His practice includes knowing what they are taught, reviewing instructional materials, speaking with teachers and administrators, attending parent conferences and school activities, and counseling his children in response. The all-property ban, refusal of direct communication, obstruction of materials and records, and police-controlled access substantially interfere with that exercise by placing EMSISD between parent and children at the place where the challenged education occurs.

## C. Renewed enforcement and seizure

34. On August 7, 2026, Sergeant Calene McDonald warned Plaintiff that the CTW remained active for the August 11 Meet the Teacher Night and copied Grady and Lance. Plaintiff responded in writing that the school exclusion lacked the safeguards and two-year limit required by Education Code § 37.105. On August 10, after receiving that notice and Plaintiff's request to attend the parent event, Grady wrote that Plaintiff would be arrested if he entered Greenfield 'for that event or any reason until the notice is rescinded.'

35. Grady expressly relied on the § 30.05 label to distinguish the CTW from § 37.105, declared it continuing after two years, and authorized arrest under that construction. He identified no

new conduct, current risk finding, recorded warning, parental accommodation, appeal, or newly issued notice. These were Grady's own administrative and enforcement decisions, not liability alleged merely from his supervision of Lance.

36. On August 11, Plaintiff stood on Greenfield property at the front entrance and attempted to enter Meet the Teacher Night. He was unarmed and was not moving toward Lance. Lance placed his body in front of the door, put his hands on Plaintiff, invoked the 2024 CTW, and ordered Plaintiff to leave without identifying any new conduct or reason beyond criminal trespass.

37. Lance initiated and escalated the physical encounter. He grabbed Plaintiff's shirt and pulled Plaintiff toward him while announcing an arrest. Plaintiff raised his hands and used them to block Lance's grip on his body and shirt. Lance then drew and aimed his Taser. Plaintiff disengaged, turned away, and fled. With Plaintiff's back visibly facing him and Plaintiff moving away, Lance fired the Taser into Plaintiff's back. The electrical discharge incapacitated Plaintiff, caused him to fall, and injured his right arm and hand and scraped other parts of his body. As the first wires dislodged during the fall, Lance immediately fired a second cartridge; it missed. Lance and Officer Davis then pursued Plaintiff on foot as Plaintiff demanded that they stop.

38. The CTW remains unrescinded. Plaintiff intends to attend and speak at the August 24, 2026 open Board meeting and to attend scheduled events, conferences, and arranged inspections involving his children's education under the neutral visitor and safety rules applied to other parents and visitors.

## V. CLAIMS FOR RELIEF

### COUNT I – FIRST AMENDMENT SPEECH, PETITION, AND RETALIATORY EXCLUSION (EMSISD, GRADY, AND LANCE)

39. Plaintiff's requests for information about his child's school activity, grievances, public-records requests, objections to District conduct, and intended Board comments are protected speech and petition activity.

40. The CTW operates before that activity occurs. It excludes Plaintiff from the Administration Building and every District forum, conditions entry on discretionary police permission, and threatens arrest until written rescission. As applied to an open Board meeting and other

opened forums, that regime burdens protected speech, petition, and association. Chiu v. Plano ISD, 339 F.3d 273, 280-84 (5th Cir. 2003).

41. Lance issued the CTW during Plaintiff's protected request for his child's school-activity information and enforced it after Plaintiff's grievances and records requests. EMSISD maintained the exclusion, and Grady personally administered it and renewed the arrest threat after receiving Plaintiff's statutory objection and request to attend a parent event. That sequence, the breadth of the ban, Grady's threat of arrest for entry 'for any reason,' and the actual Taser-backed enforcement plausibly allege causation and adverse actions that would deter a person of ordinary firmness.

42. Plaintiff requests compensatory, nominal, declaratory, and injunctive relief, and punitive damages against Grady and Lance, as specified in Section VI.

## COUNT II – FIRST AND FOURTEENTH AMENDMENTS: FREE EXERCISE AND PARENTAL DIRECTION (EMSISD, GRADY, AND LANCE)

43. Plaintiff's sincere exercise of directing his children's religious upbringing requires informed, physical parental participation in their education through material review, communication with educators, conferences, school activities, and corresponding instruction within the family. Mahmoud recognizes that the First Amendment protects parents against school policies posing a real threat of undermining the religious beliefs and practices they seek to instill.

44. Lance imposed and enforced the physical barrier; Grady personally administered and renewed it after two years; and EMSISD withheld the process and accommodations governing parent exclusions, obstructed educational information and records, and refused ordinary communication. Their acts substantially interfered with Plaintiff's religious parental practice and family integrity by preventing physical participation at the place where the children's education occurred.

45. The district-wide, indefinite, police-controlled ban was not narrowly tailored to current conduct. Texas law identified individualized grounds, a warning record, parental accommodations, Board review, and a maximum term, yet EMSISD bypassed each protection and renewed the ban without a new risk determination.

46. Plaintiff requests compensatory, nominal, declaratory, and injunctive relief, and punitive damages against Grady and Lance, as specified in Section VI.

## COUNT III – FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS (EMSISD, GRADY, AND LANCE)

47. EMSISD deprived Plaintiff of protected liberty and concrete access interests through an all-property ban with no end date, appeal notice, neutral determination, timely hearing, or meaningful Board review. The restraint directly affected open-meeting attendance, educational participation, religious parental direction, and in-person inspection rights.

48. The procedural design was intentional and self-defeating: TEA directed use of the local process; 19 Texas Administrative Code § 103.1207 made that process the route to the Board; EMSISD invoked FNG(LOCAL) while declaring the police CTW outside any appeal; and the CTW threatened arrest at the location of Board review. Ad hoc police permission to perform isolated tasks did not test or terminate the underlying deprivation.

49. The § 30.05 label supplied no substitute process and could not make the same District decision both official enough to command arrest and beyond the Board-governed safeguards for District exclusions. Lance issued the notice without appeal information, EMSISD closed the prescribed review path, and Grady personally continued the no-appeal administration and arrest threat after notice of the deprivation.

50. Plaintiff requests compensatory, nominal, declaratory, and injunctive relief, and punitive damages against Grady and Lance, as specified in Section VI.

## COUNT IV – FOURTH AMENDMENT UNREASONABLE SEIZURE (GRADY AND LANCE)

51. Lance intentionally restrained Plaintiff through physical contact and Taser force. Torres v. Madrid, 592 U.S. 306, 317-18 (2021).

52. Grady personally declared the 2024 CTW continuing, authorized arrest for entry at the parent event, and communicated that threat to Plaintiff and the officers copied on the exchange. Lance implemented that directive, announced the arrest, and began the seizure before the ensuing struggle. Probable cause for the initial seizure is judged from the facts then known and cannot be retroactively supplied by later conduct. The 2024 CTW was the asserted basis; it was issued as a District parental exclusion without the required process and enforced after the two-year maximum without new notice or conduct.

53. By August 2026, the text of § 37.105, EMSISD's own GKA materials, Hall, the grievance notice, Grady's express label-based rationale, and the passage of two full years made it objectively unreasonable to treat the 2024 school exclusion as perpetual solely because its

heading cited § 30.05. Heien v. North Carolina, 574 U.S. 54, 66-67 (2014), protects only objectively reasonable mistakes of law.

54. Plaintiff requests compensatory and nominal relief against Grady and Lance, punitive damages against Grady and Lance, and declaratory relief, as specified in Section VI.

## COUNT V — FOURTH AMENDMENT EXCESSIVE FORCE (LANCE)

55. Lance initiated and escalated the encounter. Plaintiff was unarmed, made no threat, was not advancing toward Lance, and raised his hands after Lance blocked the entrance, grabbed Plaintiff's shirt, and pulled Plaintiff toward him. Plaintiff used his hands only to block Lance's grip and disengage. Lance then drew and aimed his Taser. Plaintiff turned away and fled from the threatened force. Although Plaintiff's back was visibly turned and he posed no immediate threat to Lance or anyone else, Lance fired the Taser into Plaintiff's back, incapacitating him, driving him to the ground, and causing physical injury. As the first wires dislodged during the fall, Lance immediately fired a second cartridge without pausing to reassess the need for additional force; the second cartridge missed.

56. At most, Lance was attempting an arrest for a nonviolent trespass offense resting entirely on the expired and procedurally defective CTW. The Graham factors weigh against the force used: the asserted offense was minor and nonviolent; Plaintiff was unarmed; Plaintiff made no threat or aggressive movement; and the Taser probes struck Plaintiff in the back while he was moving away. Flight did not transform Plaintiff into an immediate threat or justify incapacitating force under these circumstances. Lance's initiation of physical contact, deployment of the Taser into Plaintiff's back, and immediate attempt to fire a second cartridge were disproportionate and objectively unreasonable. Graham v. Connor, 490 U.S. 386, 396-97 (1989); Ramirez v. Martinez, 716 F.3d 369, 378-79 (5th Cir. 2013); Peña v. City of Rio Grande City, 879 F.3d 613, 619-21 (5th Cir. 2018).

57. Plaintiff requests compensatory and nominal relief against Lance, punitive damages against Lance, and declaratory relief, as specified in Section VI.

## COUNT VI — MUNICIPAL LIABILITY UNDER MONELL (EMSISD)

58. The Board of Trustees is EMSISD's final policymaker under Texas law. It holds exclusive District governance authority, adopted GKA and FNG(LOCAL), commissions District peace officers, and defines their jurisdiction. Jett v. Dallas ISD, 7 F.3d 1241, 1245-46 (5th Cir. 1993).

59. The challenged CTW is an official, printed District instrument—not Lance's private rule. It states Superintendent authorization and embodies district-wide terms: every property, centralized police permission, no expiration, and arrest until written rescission. The authority claimed by EMSISD Police over District property derived from the District and its Board-governed structure.

60. Grady, as Police Captain, exercised the official and unreviewed administration of the CTW assigned to EMSISD Police. Waters, acting through the District grievance system and on behalf of the Superintendent, deliberately bypassed the required Level I review: he scheduled no conference, conducted no merits review, declared the police CTW unappealable, and closed the issue on EMSISD's behalf. At Level II, the District partially overturned Waters's timeliness dismissal but expressly refused to remand the timely issue for the Level I proceeding Plaintiff had been denied, eliminating that level of review while leaving the CTW active. After this notice, McDonald and Grady formally reaffirmed the CTW beyond two years, and Lance enforced it. These coordinated and repeated acts by supervisory officials across multiple District departments plausibly establish official ratification, a settled custom, and a deliberately maintained enforcement policy - not isolated conduct attributable through respondeat superior.

61. The formal instrument, label-based no-appeal rule, district-wide police-permission practice, and continued enforcement after actual notice were moving forces behind the First and Fourteenth Amendment deprivations and the CTW-based seizure. Discovery is expected to identify the Board's adoption, delegation, authorization, training, comparable notices, and nonprivileged communications presently withheld or inaccessible to Plaintiff.

62. Plaintiff requests compensatory, nominal, declaratory, notice, and injunctive relief against EMSISD, as specified in Section VI.

## VI. INJURY AND RELIEF REQUESTED

63. The seizure and Taser caused physical injury, pain, humiliation, emotional distress, and loss of liberty. The continuing exclusion has denied physical participation in Plaintiff's children's educational community, substantially burdened religious parental direction, obstructed records and materials access, and chilled speech, petition, and Board participation. The loss of time and educational, moral, religious, and community experiences with Plaintiff's children is irretrievable. Damages cannot recreate those events,

but they may compensate the proven injury and vindicate completed deprivations while prospective relief prevents recurrence.

64. An actual and imminent controversy exists because EMSISD maintains the CTW, Grady promised arrest for entry for any reason, force was used on August 11, and Plaintiff intends to attend the August 24 Board meeting and recurring parental activities.

65. COUNT I - SPEECH, PETITION, AND RETALIATORY EXCLUSION. Plaintiff requests judgment against EMSISD, Grady, and Lance; compensatory damages in an amount determined by the jury for chilled speech and petition, lost Board and educational participation, humiliation, emotional distress, and irretrievable lost opportunities to appear with and for his children; nominal damages for each proven violation not producing measurable loss; punitive damages against Grady and Lance for reckless or callous indifference to federally protected rights; and the declaratory, corrective-notice, and prospective injunctive relief stated below.

66. COUNT II - FREE EXERCISE AND PARENTAL DIRECTION. Plaintiff requests judgment against EMSISD, Grady, and Lance; compensatory damages in an amount determined by the jury for the burden on religious exercise and parental direction, including irretrievable loss of physical educational, moral, and religious opportunities with his children and resulting emotional distress; nominal damages for each proven violation; punitive damages against Grady and Lance for reckless or callous indifference; and the declaratory, corrective-notice, and prospective injunctive relief stated below.

67. COUNT III - PROCEDURAL DUE PROCESS. Plaintiff requests judgment against EMSISD, Grady, and Lance; compensatory damages in an amount determined by the jury for deprivation of timely notice, hearing, appeal, Board access, liberty, educational participation, and related emotional injury; nominal damages for each proven denial of due process; punitive damages against Grady and Lance for reckless or callous indifference; and the declaratory, corrective-notice, and prospective injunctive relief stated below.

68. COUNT IV - UNREASONABLE SEIZURE. Plaintiff requests judgment against Grady and Lance; compensatory damages in an amount determined by the jury for loss of liberty, physical and emotional injury caused by the seizure, humiliation, disruption, and resulting costs; nominal damages for each proven Fourth Amendment violation; punitive damages

against Grady and Lance for reckless or callous indifference; and the corresponding declaratory relief stated below.

69. COUNT V - EXCESSIVE FORCE. Plaintiff requests judgment against Lance; compensatory damages in an amount determined by the jury for bodily injury, pain, medical and related expenses, loss of liberty, humiliation, emotional distress, and other injury proximately caused by the Taser deployments and pursuit; nominal damages for the proven violation; punitive damages against Lance for reckless or callous indifference; and the corresponding declaratory relief stated below.

70. COUNT VI - MONELL MUNICIPAL LIABILITY. Plaintiff requests judgment against EMSISD; compensatory damages in an amount determined by the jury for each constitutional injury caused by the official CTW, no-appeal administration, police-permission practice, ratification, and settled enforcement custom; nominal damages for each proven municipal violation; and the declaratory, corrective-notice, and prospective injunctive relief stated below.

71. DECLARATORY RELIEF. Under 28 U.S.C. §§ 2201-2202, Plaintiff requests declarations that: (a) as applied and administered as a District-wide refusal-of-entry and ejection order, EMSISD's August 8, 2024 CTW could not bypass Texas Education Code § 37.105 by bearing a Texas Penal Code § 30.05 label and is no longer enforceable; (b) EMSISD may not use § 30.05, or a document labeled as a § 30.05 criminal-trespass warning, to create, continue, or enforce a District refusal-of-entry or ejection decision governed by § 37.105 without the statutory grounds and safeguards applicable to that decision; (c) EMSISD's official CTW and no-appeal administration violated the First and Fourteenth Amendments as alleged in Counts I-III and VI; (d) Grady's personal administration, renewal, and threat of arrest for entry 'for any reason' violated the First, Fourth, and Fourteenth Amendments as alleged in Counts I-IV; (e) Lance's issuance and enforcement of the CTW violated the First, Fourth, and Fourteenth Amendments as alleged in Counts I-V; and (f) Lance's August 11 seizure and force violated the Fourth Amendment as alleged in Counts IV-V.

72. RESCISSION, RECORD CORRECTION, AND CORRECTIVE NOTICE. Plaintiff requests temporary, preliminary, and permanent relief against EMSISD and all officers, employees, and agents bound under Federal Rule of Civil Procedure 65(d)(2), including Grady and Lance upon actual notice, requiring EMSISD to: (a) rescind the August 8, 2024

CTW and permanently cease relying on it to exclude, arrest, detain, cite, seize, use force against, or threaten Plaintiff; (b) correct each District-maintained record or database entry characterizing the CTW as permanent, unappealable, or presently enforceable; (c) provide written corrective notice to Plaintiff, the Board of Trustees, the Superintendent, EMSISD Police, Greenfield Elementary administrators, relevant records custodians, and every identifiable person, agency, or database to which EMSISD communicated the CTW or its continuing enforceability, stating that the CTW has been rescinded and may not be relied upon as authority to exclude, arrest, detain, cite, seize, use force against, or threaten Plaintiff; (d) transmit the corrected characterization to every identifiable recipient of the prior characterization; and (e) provide Plaintiff copies of the notices and a sworn certification of compliance.

73. PROSPECTIVE PROCEDURES AND TRAINING. Plaintiff requests a permanent injunction enjoining EMSISD and its officers, employees, and agents from using Texas Penal Code § 30.05, or a document labeled as a § 30.05 criminal-trespass warning, to create, continue, or enforce a District refusal-of-entry or ejection decision governed by Texas Education Code § 37.105 without satisfying the substantive grounds, recorded-warning requirement, contemporaneous written appeal information, parental accommodations, Board-appeal requirements, and maximum statutory duration applicable under § 37.105. To prevent recurrence of the constitutional violations alleged, Plaintiff further requests an order requiring EMSISD, within 60 days after final judgment, to adopt, publish, and implement written procedures that: (a) require identification of the current statutory ground, scope, and duration of each such exclusion; (b) require a recorded warning and persistence when § 37.105(a)(2) is invoked; (c) provide contemporaneous written appeal information and meaningful access to the Board appeal; (d) preserve required parental accommodations; (e) prohibit continuation or renewal beyond the statutory maximum absent new conduct and a new compliant decision; and (f) require documented training on those procedures for personnel who issue, administer, review, or enforce District exclusions.

74. NEUTRAL PHYSICAL ACCESS. Plaintiff requests temporary, preliminary, and permanent relief prohibiting Defendants from relying on the August 8, 2024 CTW to deny Plaintiff physical access to open Board meetings, scheduled parent conferences and events,

school activities generally open to parents, and arranged inspections of educational records and instructional materials. EMSISD may apply neutral, generally applicable visitor and safety rules, valid court orders, and any current individualized restriction lawfully imposed on new conduct after constitutionally adequate notice and process.

75. DAMAGES ALLOCATION. Plaintiff requests compensatory damages in an amount determined by the jury for all actual injuries proximately caused by each Defendant, including physical injury and pain, medical and related expenses, loss of liberty, emotional distress, humiliation, disruption of daily life, chilled speech and petition, and lost educational, religious, and parental opportunities: against EMSISD for injuries caused by municipal policy under Counts I-III and VI; against Grady for injuries caused by his personal acts under Counts I-IV; and against Lance for injuries caused by his personal acts under Counts I-V. Plaintiff requests nominal damages for every proven violation lacking measurable compensatory loss and punitive damages against Grady and Lance under Smith v. Wade, 461 U.S. 30, 56 (1983). Liability may be joint and several to the extent permitted for indivisible injury, without duplicative recovery.

76. Plaintiff further requests pre- and post-judgment interest and all additional legal or equitable relief authorized by law.

## VII. ATTORNEYS' FEES AND COSTS

77. Under 42 U.S.C. § 1988, Plaintiff seeks an award of reasonable attorneys' fees incurred if he later retains counsel and prevails. As a pro se litigant at present, Plaintiff seeks taxable costs under 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d).

## VIII. JURY DEMAND AND PRAYER

78. Plaintiff demands a jury on every triable issue and requests: (a) judgment against each Defendant on each applicable count; (b) the count-specific relief stated in Section VI; (c) the declarations stated in paragraph 71; (d) rescission, record correction, and corrective notice as stated in paragraph 72; (e) prospective procedures, training, and neutral physical access as stated in paragraphs 73-74; (f) compensatory damages in an amount determined by the jury; (g) nominal damages for each proven constitutional violation; (h) punitive damages against Grady and Lance; (i) pre- and postjudgment interest; (j) taxable costs and any recoverable fees; and (k) all further legal or equitable relief the Court deems just.

Respectfully submitted,

*Sam Randles*

Samuel Randles, Pro Se

5001 SH-114E, Apt. 1313

Roanoke, Texas 76262

Telephone: 214-250-6187

Email: randles.sam@gmail.com

 .

## VERIFICATION UNDER 28 U.S.C. § 1746

I, Samuel Randles, declare under penalty of perjury that I have read this Complaint. The factual allegations based on my personal knowledge are true and correct. Allegations describing identified records and communications accurately state what those records and communications say to the best of my knowledge, information, and belief.

Executed on August 13th, 2026.

*Sam Randles*

Samuel Randles

# CIVIL COVER SHEET

JS 44 (Rev. 03/24)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

HUG 13 2026 FM3:26
RECEIVED-USDC-NDTX

## I. (a) PLAINTIFFS
Samuel Randles

**DEFENDANTS**
Eagle Mountain-Saginaw Independent School District; Jon Grady; Larry Lance

**(b)** County of Residence of First Listed Plaintiff    **Denton County, Texas**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Samuel Randles, Pro Se
5001 SH-114E, Apt. 1313

Attorneys *(If Known)*

4-26CV-999-P

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 1983

Brief description of cause:
First, Fourth, and Fourteenth Amendment claims; Monell municipal liability; declaratory and injunctive relief.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
Unspecified + injunctiv

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE    Reed O'Connor                    DOCKET NUMBER   4:25-cv-01422-O

DATE

SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE

Case 4:26-cv-00999-P-BJ   Document 1   Filed 08/13/26   Page 20 of 20   PageID 20

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.