**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

SAMUEL RANDLES,

Plaintiff,

v.

**Civil Action No. 4:26-cv-00999-O-BP**

EAGLE MOUNTAIN-SAGINAW INDEPENDENT SCHOOL DISTRICT; JON GRADY; and LARRY LANCE,

Defendants.

# SEALED SUPPLEMENTAL APPENDIX IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

*Filed under Federal Rule of Civil Procedure 5.2 and Local Civil Rule 79.3*

## INDEX OF SUPPLEMENTAL APPENDIX


Sealed USB Envelope - 12 files: C, C-T, D-O, D-R, D-T, E, E-T, F, G, G-T, H, and I ..... 1

Supplemental Declaration of Samuel Randles ..... 3-4

Exhibit C / C-T - School Board Video, Authentication, and Transcript ..... 1, 5-11

Exhibits D-R / D-O / D-T - Arrest Videos, Authentication, and Transcript ..... 1, 12-38

Exhibit E / E-T - Parmer Service Video, Authentication, and Transcript ..... 1, 39-45

Exhibit F - Lance Encounter Audio ..... 1, 46

Exhibit G / G-T - Grady Audio, Authentication, and Telephone Transcript ..... 1, 47-67

Exhibit H - Affidavit Authenticating Parmer Relationship Documents ..... 1, 68-80

Exhibit I - Affidavit Authenticating Greenfield Schoolwide-Hold Documents ..... 1, 81-86

**SUPPLEMENTAL DECLARATION OF SAMUEL RANDLES**

1. My name is Samuel Randles. I am the Plaintiff, an adult Texas resident, and the father of children enrolled in Eagle Mountain-Saginaw Independent School District. I have personal knowledge of the facts stated here.

2. I reviewed the twelve exhibit files stored on the sealed USB drive: C, C-T, D-O, D-R, D-T, E, E-T, F, G, G-T, H, and I. The non-documentary media comprise Exhibits C through G. The documentary PDF files C-T, D-T, E-T, G-T, H, and I are also reproduced in the electronic appendix. The submitted copies are true and correct copies of the materials described below, except for the disclosed visual blurring in Exhibit D-R.

3. Exhibit C is the video I made at the public EMSISD Board meeting on July 22, 2024. It records Principal Darius Flowers speaking about my child F.A.R. and the PTA Reflections program. Officer Larry Lance was present at the event. Exhibit C-T is a true and correct copy of the certified transcript of the recording.

4. Exhibit D-O is the original body-camera recording of my August 8, 2024 arrest at Greenfield Elementary. Exhibit D-R is a derivative viewing copy in which visual depictions of nonparty children have been blurred. The audio is unchanged. I have preserved Exhibit D-O. Exhibit D-T is the full sworn authentication and certified transcript. Its authentication establishes the August 8, 2024 event date; the transcript title's isolated 8/8/25 notation does not change the date of the recorded event.

5. Exhibit E is the video I made on August 15, 2024, while I was in the area used for student pickup near Greenfield Elementary. Travis Parmer approached from the direction of the campus accompanied by Lance and another EMSISD officer, described himself as a functionary of the court, and delivered papers from my related family law case on behalf of my exwife. Travis is the brother and business associate of my exwife's attorney, Elizabeth 'Betsy' Parmer. Exhibit E-T is the full sworn authentication and certified transcript.

6. Exhibit F is the audio recording I made during my August 11, 2026 encounter with Lance at Greenfield Elementary. I participated in the recorded encounter. The recording fairly and accurately captures the encounter, including Lance's reliance on criminal trespass and Texas Penal Code section 30.05, his use of a Taser, and his failure during the recorded encounter to identify a separate basis under Texas Education Code section 37.105.

7. Exhibit G is the audio recording of my August 15, 2024 telephone conversation with Captain Jon Grady. I participated in the recorded call, and the recording fairly and accurately captures the conversation. Exhibit G-T is a true and correct copy of the full sworn authentication and certified transcript. I reviewed G-T, and it accurately reflects the substance of the recorded conversation.

8. Exhibit H is the notarized Affidavit Authenticating Documentary Exhibits and its attachments, reproduced as supplied. The attachments identify Elizabeth 'Betsy' Parmer and Travis Parmer as siblings and document their roles in Parmer Consulting, LLC.

9. Exhibit I is the notarized Affidavit Authenticating Greenfield Elementary Hold and its attachments, reproduced as supplied. It authenticates Principal Darius Flowers's August 15, 2024 email and schoolwide-hold notice concerning events during dismissal.

10. The recordings designated Exhibits C, D, E, H, and I contain my minor children's names. Exhibit D-O also depicts nonparty children. I therefore request that the supplemental appendix and media envelope be maintained under seal. Exhibit D-R is provided so the Court can review the arrest recording without viewing the other children.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 8, 2026, in Mesquite, Texas. 28 U.S.C. section 1746.

/s/ Samuel Randles Sam Randles
Samuel Randles

# EXHIBIT C AND EXHIBIT C-T

## July 22, 2024 School Board Video and Certified Transcript

Non-documentary Exhibit C is submitted on the sealed USB flash drive.

Exhibit C-T is the full sworn authentication and reporter-certified transcript. A PDF copy is stored on the sealed USB drive and reproduced on the following electronic appendix pages.

The recording includes the name of minor child F.A.R. and is submitted under seal.

322-619733-17

**Cause No.322-619733-17**

| | | |
|---|---|---|
| **IN THE INTEREST OF** | **§** | **IN THE DISTRICT COURT** |
| | **§** | |
| [redacted] **AND** | **§** | **322nd JUDICIAL DISTRICT** |
| [redacted] | **§** | |
| | **§** | |
| **CHILDREN** | **§** | **TARRANT COUNTY, TEXAS** |

**AFFIDAVIT REGARDING TRANSCRIPT JULY 22, 2024 SCHOOL BOARD MEETING**

BEFORE ME, the undersigned authority, on this day personally appeared **Samuel Randles**, who being duly sworn, stated as follows:

1. **My name is Samuel Randles. I am over the age of eighteen (18) years, of sound mind, competent to make this affidavit, and fully capable of testifying to the matters stated herein. I have personal knowledge of the facts stated in this affidavit, and they are true and correct to the best of my knowledge.**
2. Attached hereto is a true and correct copy of the **Transcript of Audio Recording dated July 22, 2024**, prepared by **Amy Massey & Associates** and transcribed by **Joanna M. West, Texas CSR #11794**.
3. The transcript accurately reflects the **audio portion of a video recording made by me during a public meeting of the Eagle Mountain–Saginaw Independent School District Board of Trustees**. The full video recording remains in my personal possession and can be produced upon request.
4. The recording captures **Principal Darius Flowers** publicly introducing my son, [redacted], before the school board and audience. During the meeting, Principal Flowers read aloud [redacted] name, identified both parents, and stated that [redacted] was a **Gator Council member and a UIL PTA Reflections Award Winner for film production.** [redacted] was invited to lead the *Pledge of Allegiance to the Texas Flag* at Mr. Flowers's request, while my younger son [redacted] and I were seated nearby. **Neither Jennifer Randles nor her family were present.**

5. This transcript has not been altered or modified in any way. It is presented as evidence to demonstrate **Principal Darius Flowers's firsthand acknowledgment of the existence of Fox's PTA Reflections video submission and his familiarity with its contents**, as evidenced by his detailed public statement before the board. Despite this, **Mr. Flowers later testified under oath before Associate Judge Lori DeAngelis that he "did not know where to get the video" and had no knowledge of its location at the time of my wrongful arrest**, a statement directly contradicted by this recording. The inconsistency establishes **clear evidence of perjury and willful misrepresentation under oath**.

6. This recording further evidences **the pattern of contradictory statements and concealment of educational records by EMS-ISD personnel**, including the PTA Reflections video and related student materials, in violation of **Texas Education Code § 26.008** and federal parental-access provisions under the **Family Educational Rights and Privacy Act (FERPA).**

FURTHER AFFIANT SAYETH NOT.

(signed)

**Samuel Randles**

**5001 SH-114 E, Apt 1313, Roanoke, TX, 76262**

**214-250-6187**

**Randles.sam@gmail.com**

**SWORN TO AND SUBSCRIBED BEFORE ME** on this the **6th day of October, 2025**, by **Sam Randles** to certify which witness my hand and seal of office.

Notary Public in and for the State of Texas
My Commission Expires: 2/2/2027

MICHAEL MCBRIDE
NOTARY PUBLIC
STATE OF TEXAS
ID 130098918
EXP. 02-02-2027

*********************************************

TRANSCRIPTION OF AUDIO RECORDING

Date of Audio: 7/22/2024

*********************************************

PREPARED BY:
Joanna West, Texas CSR No. 11794

SPEAKERS:
DARIUS FLOWERS

NOTE: Please note that this transcription may have slight inaccuracies due to the quality of the audio and the interpretation of the transcriptionist.

(Beginning of audio recording.)

DARIUS: [redacted] parents are Jennifer and Samuel Randles. He's a Gator Council member, UIL PTA Reflection Award winner, also in film production. He enjoys soccer, music, building, and exploring different things.

(End of audio recording.)

REPORTER'S CERTIFICATE

TRANSCRIPTION OF AUDIO RECORDING

I, the undersigned Certified Shorthand Reporter in and for the State of Texas, certify that the above recording was transcribed to the best of my ability, and that the transcript is a true record of the audio contained in the recording.

I further certify that I am neither attorney or counsel for, related to, nor employed by any parties to the action in which this testimony is taken and, further, that I am not a relative or employee of any counsel employed by the parties hereto or financially interested in the action.

Certified by me this 11th day of September, 2025.

______________________________

JOANNA M. WEST, Texas CSR 11794
EXPIRATION DATE: 6/30/2026
AMY MASSEY & ASSOCIATES
FIRM REGISTRATION NO. 404
6724 KIRK LANE
BURLESON, TX 76028
817-447-6721

# EXHIBITS D-R D-O AND D-T

## August 8, 2024 Arrest Videos and Certified Transcript

Exhibit D-R is the visually blurred viewing copy; its audio is unchanged.

Exhibit D-O is the preserved original submitted under seal.

Exhibit D-T is the full sworn authentication and reporter-certified transcript. A PDF copy is stored on the sealed USB drive and reproduced on the following electronic appendix pages.

The sworn authentication establishes the 8/8/24 event date; the isolated 8/8/25 title-page notation does not alter it.

322-619733-17

**Cause No.322-619733-17**

| | | |
|---|---|---|
| **IN THE INTEREST OF** | **§** | **IN THE DISTRICT COURT** |
| | **§** | |
| [redacted] **AND** | **§** | **322nd JUDICIAL DISTRICT** |
| [redacted], | **§** | |
| | **§** | |
| **CHILDREN** | **§** | **TARRANT COUNTY, TEXAS** |

**AFFIDAVIT REGARDING TRANSCRIPT OF AUGUST 8, 2024 ARREST AT GREENFIELD ELEMENTARY**

BEFORE ME, the undersigned authority, on this day personally appeared **Samuel Randles**, who being duly sworn, stated as follows:

1. **My name is Samuel Randles. I am over the age of eighteen (18) years, of sound mind, competent to make this affidavit, and fully capable of testifying to the matters stated herein. I have personal knowledge of the facts stated in this affidavit, and they are true and correct to the best of my knowledge.**
2. Attached hereto is a true and correct copy of the **Transcript of Audio Recording dated August 8, 2024**, prepared by **Amy Massey & Associates** and transcribed by **Joanna M. West, Texas CSR #11794**.
3. The transcript accurately reflects the **audio portion of the body-worn camera recording of Officer Larry Lance, Eagle Mountain–Saginaw ISD Police Department**, documenting my unlawful arrest at **Greenfield Elementary School** in Fort Worth, Texas. The full video recording remains in my possession and can be produced upon request.
4. The recording captures the sequence beginning when **PTA President Amanda Hixon's husband, escorts Larry Lance to the main hallway. Amanda Hixon escorted me to Principal Darius Flowers** after I requested a copy of the PTA Reflections video featuring my son, [redacted] **Unknown Speaker 1**, later identified as **Amanda Hixon's husband**, first contacted Officer Lance and relayed

false information claiming I was being "belligerent to the PTA." Officer Lance then approached and, without any basis, treated the matter as a law-enforcement issue rather than a parental-record request.

5. The video shows that **I was calm, unarmed, and lawfully present** in the front-office area. I was brought there by school staff—not trespassing—and engaged Principal Flowers directly about the same PTA video he had publicly referenced before the EMS-ISD School Board. Flowers again falsely claimed he "did not have the video." **Amanda Hixon**, who had invited me to the office, stood nearby throughout and misrepresented the situation to Officer Lance, prompting the unlawful detention.

6. Officer Lance proceeded to handcuff me in the presence of parents and children and **publicly escorted me to the cafeteria stage**, leaving me seated there in view of others—an improper and humiliating display inconsistent with any professional arrest protocol. The transcript and body-camera footage demonstrate that **false and misleading information was provided to Officer Lance by Amanda Hixon and her husband before his arrival, portraying me as belligerent when I had remained calm and cooperative. Jennifer Randles, who at that time served as the PTA Finance Chair, had direct ties to both Hixon and Principal Flowers through the PTA and the school administration.** The events show a coordinated effort between **Jennifer Randles, the Hixons, and EMS-ISD personnel** to engineer a pretext for police involvement and to portray me negatively to the school community. Officer Lance's subsequent description of the incident to another officer also conflicts with his own written report, further evidencing **collusion, procedural misconduct, and the reliance on false statements by school and PTA officials**.

7. This transcript has not been altered or modified in any way. It is presented as evidence to demonstrate **false reporting by school and PTA officials, perjurious statements by Principal Flowers, and misconduct by Officer Lance**, resulting in a wrongful and retaliatory arrest. The recording supports claims of **due-process violations, abuse of authority, and coordinated defamation** arising from my lawful efforts to obtain educational information.

FURTHER AFFIANT SAYETH NOT.

(signed)

**Samuel Randles**

**5001 SH-114 E, Apt 1313, Roanoke, TX, 76262**

**214-250-6187**

**Randles.sam@gmail.com**

**SWORN TO AND SUBSCRIBED BEFORE ME** on this the **6th day of October, 2025**, by **Sam Randles** to certify which witness my hand and seal of office.

Notary Public in and for the State of Texas
My Commission Expires: 2/2/2027

MICHAEL MCBRIDE
NOTARY PUBLIC
STATE OF TEXAS
ID. 130098918
EXP. 02-02-2027

*********************************************

TRANSCRIPTION OF AUDIO RECORDING

Date of Audio: 8/8/25

*********************************************

PREPARED BY:
Joanna West, Texas CSR No. 11794

SPEAKERS:
SAMUEL RANDLES
DARIUS FLOWERS
OFFICER LANCE
OFFICER DAVIS
AMANDA
VARIOUS UNKNOWN SPEAKERS

NOTE: Please note that this transcription may have slight inaccuracies due to the quality of the audio and the interpretation of the transcriptionist.

(Beginning of audio file.)

UNKNOWN 1: There's a parent being kind of belligerent to the PTA. Can you come in here?

AMANDA: I need you. I need you. Cafeteria.

UNKNOWN 1: Let me get Darius.

OFFICER LANCE: What's the problem?

AMANDA: No problem. No problem. I'm looking for Flowers.

SAMUEL: The problem is that --

OFFICER LANCE: Oh, okay.

SAMUEL: Is she acting like there's a problem?

MR. FLOWERS: What's going on?

AMANDA: (Indiscernible) -- he has some issues about the Reflections thing, so I told him he could come talk to you about it.

SAMUEL: Well, sure but you're the principal -- or you're the president of the PTA, right?

(Simultaneous speakers.)

SAMUEL: So you have a video of my son from PTA.

UNKNOWN 2: Where's the --

(Simultaneous speakers.)

OFFICER LANCE: Where's the what?

UNKNOWN 2: Where's the other gentleman besides him? Is he the principal? He's the principal.

OFFICER LANCE: He's the principal. The vice

principal is in the --

UNKNOWN 2: Yeah. I need to talk to him because he wants me to sign some paperwork.

OFFICER LANCE: Okay.

UNKNOWN 2: He's a white guy, right?

OFFICER LANCE: Okay. Yeah. But he's in conference right now with someone.

UNKNOWN 2: Oh.

OFFICER LANCE: So if you wait in there, he'll be out in a minute.

UNKNOWN 2: Because he was asking me if I need to sign some papers.

(Simultaneous speakers.)

SAMUEL: -- my son.

MR. FLOWERS: Disrespected you how?

SAMUEL: Because you mentioned (indiscernible) in front of a board that's (indiscernible) questions (indiscernible) about [redacted] being the winner of a PTA Reflections contest. So why wouldn't you send it me, Mr. Flowers?

MR. FLOWERS: I don't have the video.

SAMUEL: (Indiscernible) does. Somebody does.

MR. FLOWERS: She's (indiscernible) -- she's just got --

SAMUEL: -- the video.

MR. FLOWERS: (Indiscernible.)

SAMUEL: -- (indiscernible) your own PTA Reflections contest. That doesn't make any sense.

MR. FLOWERS: (indiscernible) you think I'm lying.

SAMUEL: I do. So tell me the truth.

MR. FLOWERS: I'm not lying (indiscernible) --

SAMUEL: I've asked you in multiple e-mails.

MR. FLOWERS: I don't --

SAMUEL: If I can't get it today, then the next (indiscernible) so tell them where the video is.

MR. FLOWERS: I don't have the video (indiscernible) --

SAMUEL: How'd he win State then? This doesn't make any sense, guys.

MR. FLOWERS: That's what we're -- that's what I'm trying to explain.

SAMUEL: I understand. I'm listening.

MR. FLOWERS: I don't have the -- we don't have the --

(Simultaneous speakers.)

SAMUEL: Explain to me. I'm listening. How does he win a competition (indiscernible) video?

MR. FLOWERS: And I'm not going to have this conversation with you right now with parents -- (indiscernible) -- schedule -- (indiscernible) --

SAMUEL: I need that video today. It's a video from the PTA. That is my son. You guys have a video of my son that I don't have.

MR. FLOWERS: That's fine. I'm not going to (indiscernible) --

SAMUEL: (Indiscernible) -- I mean, the next level for this is --

MR. FLOWERS: That's fine.

SAMUEL: -- is the board and media.

MR. FLOWERS: That's fine. That's fine by us.

SAMUEL: -- because you guys are breaking the law.

MR. FLOWERS: Okay. If you have to escalate it (indiscernible) --

SAMUEL: Is that really how you want to handle this, Mr. Flowers?

MR. FLOWERS: (Indiscernible) -- I don't have the video. She doesn't have the video. (Indiscernible) we're not gonna have this conversation -- (indiscernible) --

SAMUEL: Well, ask them to give me the video (indiscernible) video of my own son. And you guys have (indiscernible) -- you're saying that he won a competition that you guys hosted. How does he win a competition that you host and --

(Simultaneous speakers.)

MR. FLOWERS: I don't --

SAMUEL: -- I don't have access to the video of my own son?

MR. FLOWERS: That goes through the PT -- it's called PTA Reflections but they don't have anything to do with it. They go up there --

(Simultaneous speakers.)

SAMUEL: It's called -- you said it's called PTA Reflections. How is it that it's through --

MR. FLOWERS: (Indiscernible.)

SAMUEL: (Indiscernible.)

He literally read from a script where you mentioned [redacted] winning stuff. I have it on video right here in front of the board.

MR. FLOWERS: (Indiscernible.)

AMANDA: (Indiscernible.)

SAMUEL: (Indiscernible.)

AMANDA: (Indiscernible) right now is not (indiscernible) --

MR. FLOWERS: No one's (indiscernible.) No one's (indiscernible.)

SAMUEL: It sounds like you were because I've asked in multiple e-mails, Mr. Flowers --

MR. FLOWERS: But I'm telling you right now --

(Simultaneous speakers.)

SAMUEL: So either you don't know what's going on in your own house --

MR. FLOWERS: I'm not gonna have this conversation (indiscernible) --

(Simultaneous speakers.)

OFFICER LANCE: We're not --

MR. FLOWERS: Yeah. I'm not doing that.

OFFICER LANCE: I'm Officer Lance, okay? I'm a school --

(Simultaneous speakers.)

SAMUEL: How would you feel if somebody had video of your child?

MR. FLOWERS: We understand, but --

SAMUEL: How would you feel? I'm asking you.

MR. FLOWERS: -- listen --

SAMUEL: How would you feel if somebody else had video of your own child that you didn't have?

OFFICER LANCE: Okay.

MR. FLOWERS: We --

(Simultaneous speakers.)

OFFICER LANCE: (Indiscernible) --

SAMUEL: Technically that's against the law because I have to give approval for that. And I never gave approval for somebody else to have video.

MR. FLOWERS: (Indiscernible.)

SAMUEL: I never signed that form.

OFFICER LANCE: We can't -- we can't have a resolution --

MR. FLOWERS: I know. But I'm gonna have to ask you to leave --

OFFICER LANCE: We can't have a resolution here tonight over this, okay?

MR. FLOWERS: Right.

OFFICER LANCE: We can't. So take a deep breath, okay? I --

SAMUEL: But how would you feel as a parent if this was happening to you?

MR. FLOWERS: Right.

OFFICER LANCE: Okay. I wouldn't want it. But I wouldn't come up here at 6:30 on a Thursday night demanding that they generate this videotape for me, okay. Because it's not the proper forum to have this conversation.

SAMUEL: So what would be the proper forum?

OFFICER LANCE: Okay. He's done said, you know --

SAMUEL: No. What would be the proper forum? Would it be an e-mail? Would it be a conversation?

OFFICER LANCE: I don't know what their district policy is.

SAMUEL: I'm asking you. What do you think

would be the proper forum?

OFFICER LANCE: What I would do is I would request it with a carbon copy to the superintendent, okay, and then see where it goes.

SAMUEL: So if I've sent e-mails to Mr. Flowers and --

OFFICER LANCE: And carbon copy --

SAMUEL: -- and multiple e-mails -- and to the PTA --

OFFICER LANCE: That carbon copy --

SAMUEL: -- and nobody's responding to me or he's -- you told me in an e-mail --

OFFICER LANCE: Then that would go --

SAMUEL: -- specifically that you --

OFFICER LANCE: -- to -- then I'd definitely (indiscernible) --

SAMUEL: -- didn't have the video --

OFFICER LANCE: -- if you couldn't get --

SAMUEL: -- but it's under your thing, it's under the GT, right? So, I mean, isn't that what you're saying?

MR. FLOWERS: No.

SAMUEL: Isn't that what you're saying?

MR. FLOWERS: I'm not -- I'm not gonna have this conversation with all the parents here --

(Simultaneous speakers.)

OFFICER LANCE: And here's the (indiscernible.) Okay. We can't solve this.

SAMUEL: We can solve it. Just send me the video. That's the easiest way to solve this.

OFFICER LANCE: That's not gonna happen --

MR. FLOWERS: Not right now (indiscernible) --

OFFICER LANCE: He's -- he's requested that you leave, okay?

MR. FLOWERS: Yes. Yes.

SAMUEL: Amanda can send it right now.

MR. FLOWERS: No, she can't.

OFFICER LANCE: He has requested -- he has care, custody, and control of the facility. He has requested that you leave. So you do need to leave, okay?

SAMUEL: I don't have to leave. I haven't done anything wrong.

OFFICER LANCE: Okay.

SAMUEL: I've requested for a video of my son --

OFFICER LANCE: Sir --

SAMUEL: I haven't done anything wrong.

MR. FLOWERS: I'm not saying (indiscernible) --

OFFICER LANCE: (Indiscernible) roll another unit.

MR. FLOWERS: And I will. And I will try to get the video for you.

SAMUEL: Man, I did good things for you. I did -- I did this in good faith and this is how you treat me. I'm not leaving.

OFFICER LANCE: Okay.

SAMUEL: I'm here. My son attends this school. Both of my children do.

OFFICER LANCE: Okay.

SAMUEL: I've asked for a video. If you want to hide behind him, you can. I'm not doing anything wrong.

UNKNOWN 3: No, I'm not hiding behind Officer --

(Simultaneous speakers.)

SAMUEL: You are hiding behind him.

UNKNOWN 3: I am not.

OFFICER LANCE: No. No, he's not.

SAMUEL: I've asked you as man to man to give me this video and you're the one who's hiding behind --

(Simultaneous speakers.)

UNKNOWN 3: -- (indiscernible) right now.

OFFICER LANCE: Sir --

SAMUEL: I haven't done anything wrong.

OFFICER LANCE: Sir --

SAMUEL: I want video of my son that you have and I don't.

OFFICER LANCE: I've requested -- I've requested that you leave. Now, I'm telling you you have to.

SAMUEL: I haven't done anything --

OFFICER LANCE: And I --

SAMUEL: -- wrong.

OFFICER LANCE: -- will have -- you're forcing me --

SAMUEL: I've asked for a video --

OFFICER LANCE: -- to put you under arrest --

SAMUEL: -- that you as a school have that I don't.

OFFICER LANCE: You're forcing me to put you under arrest. (Indiscernible) public --

SAMUEL: The law says you have to give it to me.

OFFICER LANCE: You know what?

SAMUEL: It does. You have a divorce decree in --

OFFICER LANCE: The law says you --

(Simultaneous speakers.)

SAMUEL: -- your possession that says I have a right to that information.

OFFICER LANCE: Turn around and put your hands -- sir --

SAMUEL: I haven't done anything wrong and I'm not violent at all --

OFFICER LANCE: Okay. Good.

SAMUEL: -- in any way, shape, or form.

OFFICER LANCE: Put your hands behind your back.

SAMUEL: I'm asking you to do the right thing, man.

OFFICER LANCE: Put your hands behind your back.

SAMUEL: (Indiscernible) your children.

MR. FLOWERS: I understand what you're saying.

SAMUEL: I'm telling you, I want the video of my son and you are breaking the law.

OFFICER LANCE: You refuse to leave. You're under arrest for criminal trespass. Do you understand? Come in here and have a seat.

SAMUEL: I haven't done anything wrong.

OFFICER LANCE: Come in here and have -- come in here and have a seat. All right. Turn around and sit down. Take a deep breath, but you're going to jail. Have a seat.

You can slow it down. I've had to go 10-15. I do need another unit.

SAMUEL: Hey, bud, I don't know if you saw that, but --

OFFICER LANCE: 10-4. I don't need a code response but do it (indiscernible) --

SAMUEL: Are you proud of yourself? You arrested --

OFFICER LANCE: No, sir. I wasn't --

SAMUEL: -- somebody who's being a -- I'm a dad trying to get video for his son and you're arresting me.

OFFICER LANCE: No. I'm arresting you for criminal trespass.

SAMUEL: Are you proud of yourself?

OFFICER LANCE: I arrested you for criminal trespass.

SAMUEL: I haven't done anything wrong.

OFFICER LANCE: You --

(Simultaneous speakers.)

SAMUEL: This is an open invitation for anyone who has kids.

OFFICER LANCE: Okay.

SAMUEL: This is an open invitation. I'm here to get video of my son that the PTA has. I've been non-violent. I'm requesting this information.

AMANDA: (Indiscernible.)

OFFICER LANCE: Huh?

AMANDA: What do you want me to do?

OFFICER LANCE: I'm waiting for another unit to get here, but he's going to jail.

SAMUEL: I want you to remember that the next step --

(Simultaneous speakers.)

AMANDA: Can we (indiscernible) --

SAMUEL: -- is I'll go straight to the head of the district for this.

OFFICER LANCE: Okay.

SAMUEL: I will escalate this. There is no question.

OFFICER LANCE: Okay. Let's get out of the public so you're not embarrassed and these kids are --

(Simultaneous speakers.)

SAMUEL: I am not embarrassed at all.

OFFICER LANCE: Okay.

SAMUEL: Let them see what a real man looks like standing up for his child. I am standing up for my children. You are (indiscernible) information, Amanda, from me. That is mine. It is mine.

OFFICER LANCE: Walk away.

SAMUEL: It is legally mine. You are breaking the law. And I saw you flirting with the head of the board, Bob. I saw you touching his arm. It was pretty obvious.

OFFICER LANCE: (indiscernible) I'll be in the cafeteria which is off of the number one main entrance.

SAMUEL: When the PTA withholds information from you, then they want to arrest you. They have video of my child and they refuse to give it to me. The PTA has video of my son and they are not sharing it with me. The PTA has video of my

son and he's not sharing it with me. It is your business. This is what the PTA looks like at Greenfield and everybody should be aware of that.

I've done nothing wrong and I've requested this -- this information in multiple e-mails to the principal and they will not share it with me. They break the law. I love my children and that's why I'm here standing up for them. I have a right to this information. You would all want this information for your own children as well. All of you would. You wouldn't want a school to have video of your child that you don't have. Come on. All of you know in your heart. That's the right thing. This is unacceptable what's happening. I love my children.

If y'all all want to pretend like nothing's going on, that's fine, but that's what's going on here. The PTA has video of my child. They sent him to State. He won State last year. They won't share the video with me. They are legally required to do that.

UNKNOWN 4: It's cool, man. I know you're going through something right now, man. But, like, we all got kids, too. I know you love your child, right.

SAMUEL: I do.

UNKNOWN 4: I love mine --

SAMUEL: And they need to see a real man stand up for their children. That's what's going on.

UNKNOWN 4: I get that.

SAMUEL: I'm standing up for my son.

UNKNOWN 4: But there's innocent kids here that don't know what's going on.

SAMUEL: Everybody needs to know how to stand up for their own child.

UNKNOWN 4: I believe in that, man.

SAMUEL: And that's what I'm doing. It didn't start like this. It started with me asking them. And then they were the ones asking me to leave because they didn't like what I was asking. So now I'm here because they didn't like what I was asking.

UNKNOWN 4: There's no (indiscernible.)

Besides the adults that's in here that you're trying to talk to, there's kids too.

SAMUEL: Yeah.

UNKNOWN 4: And they don't -- they don't need (indiscernible.)

SAMUEL: They do too.

UNKNOWN 4: I don't think so.

SAMUEL: I think so.

UNKNOWN 4: Because you're upset and now you're putting that on my kids and everybody else's kids, man. That's not (indiscernible) --

(Simultaneous speakers.)

SAMUEL: Man, I love my kids.

UNKNOWN 4: I get that.

SAMUEL: I love my kids. That's why I'm here. They're the ones that are choosing to arrest me because I'm asking for something I have a legal right to. This is not about anything I'm doing wrong.

UNKNOWN 4: (Indiscernible.)

SAMUEL: This is about me asking for something I have a legal right to and demonstrating that.

UNKNOWN 4: I got you, man. I got you. But the rest of the kids here --

(Simultaneous speakers.)

SAMUEL: They need to see a man stand up for their children, too.

UNKNOWN 4: But they don't interpret it that way.

SAMUEL: If you want to be a good man, stand up with me, man. This is wrong.

UNKNOWN 4: I'm talking to you. I'm standing up for what I believe in. My daughters -- I don't want my daughters getting upset for something they don't understand --

SAMUEL: It's not good to stay quiet and sit down, man. It's better to stand up.

UNKNOWN 4: I got you.

SAMUEL: I've been asking for this video for

over a year.

UNKNOWN 4: Okay.

SAMUEL: Over a year. The next --

UNKNOWN 4: (Indiscernible) --

SAMUEL: -- escalation I was going to take was to the board. And as soon as I said that, that's when they wanted to arrest me.

UNKNOWN 4: There's a (indiscernible) --

SAMUEL: After I said I wanted to raise this to the board.

OFFICER DAVIS: What's up, sir?

OFFICER LANCE: Okay. What the deal is, he's under arrest for criminal trespass.

OFFICER DAVIS: Okay.

OFFICER LANCE: I don't know what all the details are. It's got something to do with the PTA having a copy of some program or something that he wants a copy of.

OFFICER DAVIS: Okay.

OFFICER LANCE: He says he's been sending e-mails. He came up here and had -- got into a conversation, quote/unquote, with the president of the PTA. She called and wanted an officer up there because she felt threatened. I came up here. Mr. Flowers came up here. They started talking. I stepped back, listened to it. Flowers said, I need you to leave. We can't get that.

I stepped in and said, hey, here's the deal, we can't settle it here tonight. This isn't the proper forum, et cetera, et cetera. You can send all the e-mails you want to, but it's not going to resolve tonight and he's asked you to leave so I have to ask you to leave (indiscernible.)

OFFICER DAVIS: Okay.

OFFICER LANCE: And I said, well, here's the deal, and they started a conversation. Okay. And I said, wait a minute. He's asked you to leave. I've asked you to leave. He said, I ain't leaving. Now, I'm telling you to leave. He said, I ain't leaving. And he said, I'm not confrontational. I said, well, you've got to leave (indiscernible.) I ain't leaving. Okay. Put your hands behind your back. He could -- I cuffed him and (indiscernible), you know, running his mouth about the whole thing. I guess getting his message across to all the people.

OFFICER DAVIS: (Indiscernible.)

OFFICER LANCE: No.

OFFICER DAVIS: (Indiscernible.)

OFFICER LANCE: I haven't called anybody except you.

OFFICER DAVIS: Okay.

OFFICER LANCE: Because I -- I haven't placed anyone under arrest up here at the school. So I (indiscernible) --

OFFICER DAVIS: Right.

OFFICER LANCE: I'd like to get him up and out of the public.

OFFICER DAVIS: Sure.

OFFICER LANCE: And put him in my office is what I'd like to do.

OFFICER DAVIS: Sure.

OFFICER LANCE: All right.

SAMUEL: To the board, so the board can be (indiscernible) --

OFFICER LANCE: You need to stand up, sir. You need to stand up.

SAMUEL: Hey, hold on. What are you doing?

OFFICER LANCE: I'm taking you to my office.

SAMUEL: Hold on one second. I'm just trying to move my hands. All right.

OFFICER LANCE: You want that phone in your pocket or anything?

SAMUEL: No. I'm okay.

OFFICER LANCE: Okay. First hall to the left, A7.

OFFICER DAVIS: A7?

OFFICER LANCE: A7. Fourth door on the right.

SAMUEL: Hey, how you doing? You're letting me brag about this, huh? Walk through the whole corridor with

everybody here.

OFFICER LANCE: Well, how do you suggest I get from there to there? How do you get from one spot to the other unless you walk from it?

SAMUEL: That's goofy.

OFFICER LANCE: Huh?

SAMUEL: That's goofy, man.

OFFICER LANCE: Okay. Go ahead and have a seat right there, sir.

SAMUEL: Are you a Christian?

OFFICER LANCE: Yeah, I am.

SAMUEL: I am, too.

OFFICER LANCE: I'll answer this. I've got to talk to Scott.

OFFICER DAVIS: Okay.

OFFICER LANCE: Hold on a second. Let me step out of the public.

(End of audio recording.)

REPORTER'S CERTIFICATE

TRANSCRIPTION OF AUDIO RECORDING

I, the undersigned Certified Shorthand Reporter in and for the State of Texas, certify that the above recording was transcribed to the best of my ability, and that the transcript is a true record of the audio contained in the recording.

I further certify that I am neither attorney or counsel for, related to, nor employed by any parties to the action in which this testimony is taken and, further, that I am not a relative or employee of any counsel employed by the parties hereto or financially interested in the action.

Certified by me this 14th day of September, 2025.

______________________________

JOANNA M. WEST, Texas CSR 11794
EXPIRATION DATE: 6/30/2026
AMY MASSEY & ASSOCIATES
FIRM REGISTRATION NO. 404
6724 KIRK LANE
BURLESON, TX 76028
817-447-6721

# EXHIBIT E AND EXHIBIT E-T

## August 15, 2024 Parmer Service Video and Certified Transcript

Non-documentary Exhibit E is submitted on the sealed USB flash drive.

Exhibit E-T is the full sworn authentication and reporter-certified transcript. A PDF copy is stored on the sealed USB drive and reproduced on the following electronic appendix pages.

Exhibit H documents Travis Parmer's sibling and business relationship with opposing counsel Elizabeth 'Betsy' Parmer.

The recording includes the name of minor child F.A.R. and is submitted under seal.

322-619733-17

**Cause No.322-619733-17**

| | | |
|---|---|---|
| **IN THE INTEREST OF** | **§** | **IN THE DISTRICT COURT** |
| | **§** | |
| [redacted] **AND** | **§** | **322nd JUDICIAL DISTRICT** |
| [redacted] | **§** | |
| | **§** | |
| **CHILDREN** | **§** | **TARRANT COUNTY, TEXAS** |

**AFFIDAVIT REGARDING TRANSCRIPT OF AUGUST 15, 2024 SERVICE ATTEMPT AT GREENFIELD ELEMENTARY**

BEFORE ME, the undersigned authority, on this day personally appeared **Samuel Randles**, who being duly sworn, stated as follows:

1. **My name is Samuel Randles. I am over the age of eighteen (18) years, of sound mind, competent to make this affidavit, and fully capable of testifying to the matters stated herein. I have personal knowledge of the facts stated in this affidavit, and they are true and correct to the best of my knowledge.**
2. Attached hereto is a true and correct copy of the **Transcript of Audio Recording dated August 15, 2024**, prepared by **Amy Massey & Associates** and transcribed by **Joanna M. West, Texas CSR #11794**.
3. The transcript accurately reflects the **audio portion of a video recording made by me from the public sidewalk opposite Greenfield Elementary School**, where I was lawfully standing at the area designated for student drop-off and pick-up. The full video recording remains in my possession and can be produced upon request.
4. The recording captures **Travis Parmer approaching me on the public sidewalk accompanied by a police escort from Officer Larry Lance and another officer.** Mr. Parmer identified himself as "a functionary of the court" and attempted to serve me with a **Temporary Restraining Order obtained by my ex-wife, Jennifer Randles**, in Cause No. 322-619733-17. Mr. Parmer stated that he "does not read" the paperwork and "just hands them out," and he directed me to a hearing date.

5. This transcript has not been altered or modified in any way. It is presented as evidence to demonstrate **an unlawful and coordinated attempt to effect service of process from school grounds using police personnel as an escort, and to misrepresent Mr. Parmer's authority as a "functionary of the court."** The incident occurred after **Captain John Grady of the EMS-ISD Police Department had been informed of my intent to pickup my children and relayed information internally**, and appears to have been **orchestrated by Jennifer Randles in coordination with EMS-ISD staff and police personnel** to ambush me during a routine school pick-up. The transcript evidences **misuse of law enforcement resources, false representation of official authority, and violation of the Texas Rules of Civil Procedure regarding service of process.**

FURTHER AFFIANT SAYETH NOT.

(signed)

**Samuel Randles**

**5001 SH-114 E, Apt 1313, Roanoke, TX, 76262**

**214-250-6187**

**Randles.sam@gmail.com**

**SWORN TO AND SUBSCRIBED BEFORE ME** on this the **6th day of October, 2025**, by **Sam Randles** to certify which witness my hand and seal of office.

Notary Public in and for the State of Texas
My Commission Expires: 2/2/2027

MICHAEL MCBRIDE
NOTARY PUBLIC
STATE OF TEXAS
ID 130098918
EXP. 02-02-2027

**********************************************

TRANSCRIPTION OF AUDIO RECORDING

Date of Audio: 8/15/2024

**********************************************

PREPARED BY:
Joanna West, Texas CSR No. 11794

SPEAKERS:
SAMUEL RANDLES
TRAVIS PARMER

NOTE: Please note that this transcription may have slight inaccuracies due to the quality of the audio and the interpretation of the transcriptionist.

(Beginning of audio file.)

SAMUEL: Hi. Who are you?

TRAVIS: My name is Travis. I'm a functionary of the court. I have a temporary restraining order for you.

SAMUEL: I'm sorry. What's this in regards to?

TRAVIS: It's all in the paperwork. I don't read them. I just hand them out. This is to do with [redacted], et al. There you go. It's got a date for a hearing on Monday the 26th at 8:30 you'll need to be at, okay?

SAMUEL: I'm sorry. Say that again, that last part. You said there's a hearing on Monday?

TRAVIS: Monday the 26th, 8:30. It's in the paperwork. You're set to be at a hearing, so you'll need to attend that hearing, okay? Or if you have a lawyer, whatever, okay? Thank you, sir.

SAMUEL: This is a document from my ex-wife for a TRO. This isn't even from the school and I don't know how that guy from the school campus issued a TRO for me. Explain that to me.

(End of audio file.)

REPORTER'S CERTIFICATE

TRANSCRIPTION OF AUDIO RECORDING

I, the undersigned Certified Shorthand Reporter in and for the State of Texas, certify that the above recording was transcribed to the best of my ability, and that the transcript is a true record of the audio contained in the recording.

I further certify that I am neither attorney or counsel for, related to, nor employed by any parties to the action in which this testimony is taken and, further, that I am not a relative or employee of any counsel employed by the parties hereto or financially interested in the action.

Certified by me this 11th day of September, 2025.

_______________________________

JOANNA M. WEST, Texas CSR 11794
EXPIRATION DATE: 6/30/2026
AMY MASSEY & ASSOCIATES
FIRM REGISTRATION NO. 404
6724 KIRK LANE
BURLESON, TX 76028
817-447-6721

# EXHIBIT F

## August 11, 2026 Lance Encounter Audio

Non-documentary Exhibit F is submitted on the sealed USB flash drive.

No certified transcript of Exhibit F was supplied for this supplemental appendix.

Plaintiff relies on the recording and the accompanying supplemental declaration.

# EXHIBIT G AND EXHIBIT G-T

## August 15, 2024 Audio Recording and Transcript of Conversation with Captain Jon Grady

Non-documentary Exhibit G is the audio recording submitted on the sealed USB flash drive.

Exhibit G-T is the full sworn authentication and reporter-certified transcript. A PDF copy is stored on the sealed USB drive and reproduced on the following electronic appendix pages.

322-619733-17

**Cause No.322-619733-17**

| | | |
|---|---|---|
| **IN THE INTEREST OF** | **§** | **IN THE DISTRICT COURT** |
| | **§** | |
| [redacted] **AND** | **§** | **322nd JUDICIAL DISTRICT** |
| [redacted] | **§** | |
| | **§** | |
| **CHILDREN** | **§** | **TARRANT COUNTY, TEXAS** |

**AFFIDAVIT REGARDING TRANSCRIPT OF CONVERSATION WITH CAPTAIN JOHN GRADY**

BEFORE ME, the undersigned authority, on this day personally appeared **Samuel Randles**, who being duly sworn, stated as follows:

1. **My name is Samuel Randles. I am over the age of eighteen (18) years, of sound mind, competent to make this affidavit, and fully capable of testifying to the matters stated herein. I have personal knowledge of the facts stated in this affidavit, and they are true and correct to the best of my knowledge.**
2. Attached hereto is a true and correct copy of the **Transcript of Conversation with Captain John Grady**, Eagle Mountain–Saginaw ISD Police Department, dated **August 15, 2024**, transcribed by **Arlington Court Reporting, Inc.** and certified by **Catherine Vecchio, CSR #3383**.
3. The transcript accurately reflects the audio recording of my telephone conversation with Captain John Grady on August 15, 2024, which I personally participated in. I have reviewed the transcript in its entirety, and it faithfully represents the substance and content of the conversation.
4. This transcript has not been altered or modified in any way. It is presented as evidence to demonstrate the communications between myself and Captain Grady regarding the Eagle Mountain–Saginaw ISD's refusal to allow me to update my children's emergency contact information. The conversation occurred **before any service of process had been made upon me**, and Captain Grady's statements reflected a **premature and unlawful restriction of my parental and educational**

**upon me**, and Captain Grady's statements reflected a **premature and unlawful restriction of my parental and educational access rights** coordinated through the school district and its police department.

FURTHER AFFIANT SAYETH NOT.

(signed)

**Samuel Randles**

**5001 SH-114 E, Apt 1313, Roanoke, TX, 76262**

**214-250-6187**

**Randles.sam@gmail.com**

**SWORN TO AND SUBSCRIBED BEFORE ME** on this the **6th day of October, 2025**, by **Sam Randles** to certify which witness my hand and seal of office.

Notary Public in and for the State of Texas
My Commission Expires: 2/2/2027

MICHAEL MCBRIDE
NOTARY PUBLIC
STATE OF TEXAS
ID. 130098918
EXP. 02-02-2027

CONVERSATION WITH CAPTAIN JOHN GRADY

EAGLE MOUNTAIN-SAGINAW ISD POLICE DEPARTMENT

AUGUST 15, 2024

SAM RANDLES: I'm sorry, who am I speaking with.

FEMALE SPEAKER: This is the Eagle Mountain-Saginaw, ISD Police Department.

SAM RANDLES: I was told to call this number and speak to Mr. John Grady.

FEMALE SPEAKER: Okay. May I ask who's calling, please?

SAM RANDLES: I just -- I need to speak with him, please.

FEMALE SPEAKER: Yes, sir. But can I ask for your name, please?

SAM RANDLES: My name is Sam Randalls.

FEMALE SPEAKER: Okay, hold on just one second, sir. Hold on just one second, sir. Okay, sir, I'll transfer you. Hold on just one second.

CAPTAIN GRADY: This is Captain Grady.

SAM RANDLES: Hi, Mr. Grady. My name is Sam Randles. I was told to give you a call.

CAPTAIN GRADY: Okay. And what is it in reference to?

SAM RANDLES: I am trying to update an emergency contact on my emergency contact list at Eagle Mountain-Saginaw, and they will not allow me to do that. And they told me to call you instead.

CAPTAIN GRADY: Okay. So --

SAM RANDLES: Is that correct?

CAPTAIN GRADY: -- just about -- well, I don't know. I'm -- I'm trying to find out. So is this -- is this -- what are you trying to contact -- who you're trying to update for? I guess.

SAM RANDLES: I have two children that go to school at Greenfield Elementary.

CAPTAIN GRADY: Okay. And what information do you need to present to them? Just a phone number or is it a document or what?

SAM RANDLES: I -- I have to update an emergency contact, so someone who can -- I can designate to pick up and drop off from the school. And they're saying that I cannot do that and I have to talk to the chief of police. So, I'm not sure why that's the case.

CAPTAIN GRADY: Well, it wouldn't be the chief. It's me, the captain. So do --

SAM RANDLES: The captain, so --

CAPTAIN GRADY: Are there any -- are there any like protective orders or restraining orders or anything such as that out on you right now?

SAM RANDLES: Do you -- are you not -- do you not know about why I'm calling you? I'm calling to get that updated and they told me to contact you.

CAPTAIN GRADY: Okay. What I'm asking you right now, is there a protective order or something similar to that on you

right now?
SAM RANDLES: There's no protective order against me. No, sir.
CAPTAIN GRADY: There's no temporary restraining order or nothing, correct?
SAM RANDLES: No, sir, there is not.
CAPTAIN GRADY: Okay. So what are you looking for? A form to fill out? Do you need the form to -- to print that stuff? Because I understand what happened the other day. You -- you've been -- you -- you have been barred from being on Eagle Mountain-Saginaw school district property. So if it's -- if it's a form that you're looking to fill out, that can be filled out and it can be either mailed in or fax -- or emailed over or we can make arrangements to pick it up somewhere off school property and deliver it to the -- the school for a contact.
SAM RANDLES: I don't understand. You're not allowing me to update my emergency contact.
CAPTAIN GRADY: I'm not preventing you from doing that. So do you -- how do you do it? I -- I'm not familiar. Do -- do you just not go on to skyward and enter the information or is there a form that you need to submit? That's what I'm asking you.
SAM RANDLES: Are you not aware of the district's policies on that?
CAPTAIN GRADY: No. I -- I work at the police

department, so I deal with the criminal aspect of the district's stuff and not the administrative stuff.

SAM RANDLES: So -- so why did -- why did the administration from Eagle Mountain-Saginaw direct me to you?

CAPTAIN GRADY: I don't -- I know -- because my -- my understanding was that you wanted to go onto school property, is that correct or no?

SAM RANDLES: So I -- I just -- I had called to update my emergency contact so I could have someone go to the school.

CAPTAIN GRADY: Okay. You can -- okay --

SAM RANDLES: So are you -- are you not allowing me to do that?

CAPTAIN GRADY: I'm not preventing you from doing it. I'm just not the person that does it.

SAM RANDLES: But -- but I just spoke with them and they said you are the person that does that, that I had to speak with you.

CAPTAIN GRADY: Who -- who did you speak with?

SAM RANDLES: Chandra (phonetic) and --

CAPTAIN GRADY: Hold on just a second and I'm going to reach out and find out, okay? Hold on just a second. All right? Can I get -- can I get your number and I will call you back as soon as I can get in contact with her to find out what -- what the misunderstanding, I guess, is. Because what I deal with is, because you've been criminally trespassed on property,

if you want to go onto the school property, then we have to -- to make some kind of arrangement to have an officer escort you if it's necessary for you to be on property. But you're saying you just want to update a form. Correct?

SAM RANDLES: I called the school district to update the emergency contact that -- that is correct, and to update my address. And they told me they could not do anything without talking with the captain, which is John Grady, which is you, correct?

CAPTAIN GRADY: Right. So what is your number 214-?

SAM RANDLES: I'm -- I'm having trouble understanding this whole thing. That doesn't make any sense to me. I'm trying to update personal information for my children, and you guys are -- are restricting me from doing that. I -- I don't understand the runaround.

CAPTAIN GRADY: No, sir. I'm not restricting you from doing anything. I think there may be -- like I said, I think there may have been some kind of misunderstanding. So if you will, hold on, I -- I've tried a number. She's not in at the moment. If you give me your number, I will call you back with correct information.

SAM RANDLES: Can -- can you tell me -- can you tell me why I'm being given the runaround about this?

CAPTAIN GRADY: I'm not so sure you are given the runaround. I mean, you've talked to one person who referred to

me, I think because they thought that you wanted access to be on school property. But my understanding and -- and there might be somebody in this office that knows if they can update that information on Skyward. Hang on --

Can you update who you want pick up your kids on Skyward? Oh, never mind. (Indiscernible) -- I -- I just want update my information and my address and people who can pick up my kids. Well, yeah. So he -- but he -- okay. Yeah, because I said you have a (Indiscernible). Well, right now he is -- like, if he hasn't been served, he doesn't know that. So I don't want tell him no. Asked, hey, do you have any kind preventive order or protective order, I (Indiscernible) got one. Yeah, but we (Indiscernible) know anything. How does somebody who (Indiscernible) is it Skyward or? (Indiscernible).

Okay. All right. Okay. So there is a question because, you know, you've been barred from the property. They're checking with the legal department to see exactly what the process is to update your information. So do you have joint custody or sole custody or what kind of custody of the kids do you have?

SAM RANDLES: The district already has my divorce decree on file.

CAPTAIN GRADY: I'm asking you -- I'm -- if you want me to help you, sir, you're going to have to answer my question. So --

SAM RANDLES: I am answer -- I am answering your question. I am answering your question.
CAPTAIN GRADY: Okayt.
SAM RANDLES: And -- and I'm telling you that the -- the -- the district already has a divorce decree on file, which states that I have equal access to all -- all educators, administrators, access to property. My divorce decree also states I have access to all educational materials for my children and I should not be excluded from any access in any way.
CAPTAIN GRADY: So the other day when you were arrested, you were not served with a -- a protective order?
SAM RANDLES: No, I was not.
CAPTAIN GRADY: Okay. And I -- and I don't know, I was just checking. So that's the information that I believe that we had. However --
SAM RANDLES: I -- I was asking for a video from the PTA, that's when they decided to arrest me is when I was --
CAPTAIN GRADY: Well, I'm talking about -- but my understanding, and I could be wrong, is -- is were you not arrested maybe by Fort Worth the weekend before, or no? Is that -- is that completely wrong?
SAM RANDLES: No, the resource officer from the Greenfield campus arrested me and took me to Saginaw.
CAPTAIN GRADY: Right, but prior to that, were you

arrested like at -- at your ex-wife's house or apartment or anything prior to that?

SAM RANDLES: No.

CAPTAIN GRADY: Prior to the Greenfield?

SAM RANDLES: No, I have not been arrested.

CAPTAIN GRADY: Okay.

SAM RANDLES: What -- what are you talking about?

CAPTAIN GRADY: I'm just asking you. I'm not --

SAM RANDLES: No because --

CAPTAIN GRADY: I'm not -- I'm asking you for clarification.

SAM RANDLES: Clarification on what?

CAPTAIN GRADY: I'm trying to take you at your word.

SAM RANDLES: Clarification on what exactly what is being communicated to you?

CAPTAIN GRADY: I just -- I just ask if -- if --

SAM RANDLES: Was some --

CAPTAIN GRADY: -- I'm just trying to figure out.

SAM RANDLES: -- was something communicated to you that I was arrested? Was something communicated to you that I was arrested prior?

CAPTAIN GRADY: Well, I know you -- I know you were arrested at Greenfield. That's what I'm asking you. Was there a prior arrest before that?

SAM RANDLES: But -- but you're stating something like

you have knowledge of. What -- what are you talking about?
CAPTAIN GRADY: I'm just asking you questions.
SAM RANDLES: Were you told that -- by someone that I had been arrested prior or have you been talking to my ex-wife?
CAPTAIN GRADY: I have never -- I have never spoke to your ex-wife at all. Not one time.
SAM RANDLES: Then I don't know what you're talking about.
CAPTAIN GRADY: We'll deal with this. Okay. Okay, then you don't know what I'm talking about. That's fine.
SAM RANDLES: Can -- can you tell me, because I would really like to know what's being said about me here.
CAPTAIN GRADY: I have nothing to tell you, sir. I'm asking you the question. You told me, no, you hadn't. And then that's the end of the question. There's no more question. I'm not saying -- you know, I just asked the question.
SAM RANDLES: I'm just trying to update --
CAPTAIN GRADY: Okay. The district is checking with the legal department to find out how --
SAM RANDLES: I'm just trying to update emergency contact information here. And this is really strange.
CAPTAIN GRADY: -- the process of updating the information that you seek.
SAM RANDLES: I don't understand the -- so I've -- I've talked to the registrar who sent me to the IT team who sent

me to the -- to the customer service something and in Eagle Mountain-Saginaw who then sent me to you. So I'm just trying to update my emergency contact and I'm getting the runaround for this.

CAPTAIN GRADY: So there's a difference between updating your information and then submitting stuff to allow somebody else to pick up your children from what I understand. So they have to go through all the legal paperwork. Like you got a divorce decree --

SAM RANDLES: I have that right. And I've -- I've done it year over year.

CAPTAIN GRADY: So -- so they have to look that -- the legal department has to look at that to see if your divorce decree allows you to grant that privilege. If it does, that's great. But there -- the legal people have to look at it first to see if oh yes, that, you know, Mr. Randles can designate other people or if the divorce decree just limits it to yourself.

So tha --, that's one of the reasons why they're sending it to legal to look through. You know, because we're not attorneys. They're not attorneys. So they'll look through all your divorce decrees to see if that's something that they can do. And they should have an answer, you know, shortly. It's not -- it's not something like, you know, an extended period of time.

SAM RANDLES: But you realize you're making this difficult on my children who need this assistance.

CAPTAIN GRADY: I'm not making this -- I didn't do any of these things, sir. I'm -- I -- you're the first the -- I haven't talked to -- to anybody about this other than the officer when they -- when it -- when it happened that night. So I -- you -- you're the first person I've talked to with it.

I haven't talked to your wife about it, haven't talked to -- to even the people at the school at Greenfield. I just got a call from -- you know, made a phone call to Chandra who referred you here and that's why because they've got to -- they've got to send it to legal to make sure that you're able to do what you want to do according to the court papers.

SAM RANDLES: This is extremely difficult and wrong on so many levels. I am asking you to update my emergency contact for my children so that I can have someone come onto campus and pick up my children on my designated days. And right now you are not allowing me to appoint someone.

CAPTAIN GRADY: Well, I'm not -- I'm not preventing you. So for --

SAM RANDLES: But you are

CAPTAIN GRADY: -- when is your designated days?

SAM RANDLES: Today.

CAPTAIN GRADY: Okay. Well, I will let Chandra know that and see what the -- that she can do.

SAM RANDLES: Why -- why are you making this difficult on my children?

CAPTAIN GRADY: I'm not making it difficult on anybody, Mr. Randles. I -- I don't have -- I don't have a magic wand to wave to say you can or can't do this. They're going through their district policy as far as to verify that you can make those changes. Okay? So I -- I can assure you that before the end of the day that you'll have an answer.

SAM RANDLES: So you are not allowing me on -- to confirm, you are not allowing me on campus to drive through and pick up my children.

CAPTAIN GRADY: I'm -- I'm not preventing you. I'm -- I'm saying that there's a criminal -- listen, I'm saying that there's a criminal trespass warning if you go on -- if you go on school property, you're subject to arrest. Yes, sir. That's what I'm saying. (Indiscernible)

SAM RANDLES: So you are saying that I cannot go pick up my children through the drive through?

CAPTAIN GRADY: Yeah. If you go onto school property that you will be subject to arrest, does that mean you will be arrested? No. It's just saying that you have a warning and you could be arrested. Okay. I am trying to get you an answer and I'll get you one as quick as I can. Okay?

SAM RANDLES: And -- and you're also stating you -- you're not -- everyone has told me that you are the person who

can update my emergency contact information.

CAPTAIN GRADY: I -- no. No, sir. I was never -- you were never told. I can update your emergency contact list. You were --

SAM RANDLES: I have the voicemail from Chandra saying to talk to you about updating my emergency contact.

CAPTAIN GRADY: -- you were directed to me because you have a criminal trespass warning that if you go on property, I'm the one that has to decide whether that -- that you've been arrested or not. And we're trying to -- so I understand what you're wanting to do. I'm trying to get you an answer. Okay?

SAM RANDLES: It doesn't sound like it. It sounds like I'm not being --

CAPTAIN GRADY: Well, the longer I'm stuck here with you, the -- the longer it's going to take me to get that answer to you.

SAM RANDLES: It -- it sounds like my rights are being violated here. Not that this is being taken care for my children.

CAPTAIN GRADY: I'm not -- sir, sir, I'm not violating anything. I'm just asking you what is your contact number and I will get back in contact with you as quick as I can.

SAM RANDLES: So -- so let me ask you, what does a criminal trespass warning have to do with updating the emergency contact? What does that have to do with that?

CAPTAIN GRADY: Sir, I -- because I don't, I don't update anybody's information. Okay. All I do is if you step on school property then -- then we have to review it and decide whether you go to jail again or not. So what is your telephone number so I can call you back, Mr. Randles?

SAM RANDLES: So if you're not the person who handles this, why are you calling me back?

CAPTAIN GRADY: Sir, that's it. Our conversation is about to be over sir.

SAM RANDLES: No -- no, I'm --

CAPTAIN GRADY: So if you give me your number I will -- I will be more than happy to call you back when I have a -- a solid answer for you. Okay.

SAM RANDLES: You -- I guess I -- but I don't understand. If you're not the person who updates the emergency contact, why can't you get me to the person who can update my emergency contact?

CAPTAIN GRADY: Because I do not know who does it for the district. That's all I can tell you. All I can tell you is if you will give me some time, I will try to get you some answers. Okay? I don't -- I don't have them now. So the only way I can get them is to hang up with you and make some phone calls to find out, okay?

SAM RANDLES: Okay.

CAPTAIN GRADY: All right. So what is your telephone

number and I'll call you back?

SAM RANDLES: My phone number is 214-

CAPTAIN GRADY: Okay.

SAM RANDLES: 250-6187

CAPTAIN GRADY: You said 214? Okay.

SAM RANDLES: Yes, sir. 214-250-6187.

CAPTAIN GRADY: Okay. I will give you a call back just as quick as I can. Thank you.

(Off the record)

STATE OF TEXAS )

COUNTY OF TARRANT )

This is to certify that I, Catherine Vecchio, a Certified Shorthand Reporter in and for the State of Texas, transcribed the audio provided me of the conversation on said recording to the best of my ability and the foregoing 16 pages contain a full, true and correct transcription of that conversation.

Certified to on this 19th day of September, 2025.

Catherine Vecchio

____________________________

Catherine Vecchio, CSR #3383
Arlington Court Reporting, Inc.
Firm Number 28
(817) 946-3262
arlingtoncri@gmail.com

# EXHIBIT H

## Affidavit Authenticating Parmer Relationship Documents

The notarized affidavit and all attachments are reproduced exactly as supplied. A duplicate PDF copy of Exhibit H is also stored on the sealed USB drive.

The attachments identify Elizabeth 'Betsy' Parmer and Travis Parmer as siblings and document their roles in Parmer Consulting, LLC.

The exhibit is offered with Exhibit E to preserve the relationship and related-case context.

322-619733-17

**Cause No.322-619733-17**

| | | |
|---|---|---|
| **IN THE INTEREST OF COURT** | **§** | **IN THE DISTRICT** |
| | **§** | |
| [redacted] **AND DISTRICT** | **§** | **322nd JUDICIAL** |
| [redacted] | **§** | |
| | **§** | |
| **CHILDREN TEXAS** | **§** | **TARRANT COUNTY,** |

**AFFIDAVIT AUTHENTICATING DOCUMENTARY EXHIBITS**

BEFORE ME, the undersigned authority, on this day personally appeared **Samuel Randles**, who being duly sworn, stated as follows:

1. **My name is Samuel Randles. I am over the age of eighteen (18) years, of sound mind, competent to make this affidavit, and fully capable of testifying to the matters stated herein. I have personal knowledge of the facts stated in this affidavit, and they are true and correct to the best of my knowledge.**
2. Attached hereto as **Exhibit A** is a true and correct copy of **the obituary of Hugh Quay Parmer**, obtained from **https://cemetery.texas.gov/locate-a-plot/plotholder/hugh-quay-parmer**. This obituary lists his children, including **Elizabeth Parmer** and **Travis Parmer**, establishing their sibling relationship.

3. Attached hereto as **Exhibit B** is a true and correct copy of the Texas business record for *Parmer Consulting, LLC*, as maintained on Bizapedia and the Texas Secretary of State. This record identifies Elizabeth Parmer as registered agent and Travis Q. Parmer as President and Director, demonstrating a business and financial relationship between them.

4. 5. These documents were obtained from publicly available sources and are presented here to demonstrate the familial and business relationship between opposing counsel, Elizabeth Parmer, and the individual who personally served me with process, Travis Q. Parmer, in violation **of Tex. R. Civ. P. 103**.

*"...But no person who is a party to or interested in the outcome of a suit may serve any process in that suit...*

FURTHER AFFIANT SAYETH NOT.

Sam R

(signed)

**Samuel Randles**

**5001 SH-114 E, Apt 1313, Roanoke, TX, 76262**

**214-250-6187**

**Randles.sam@gmail.com**

**SWORN TO AND SUBSCRIBED BEFORE ME** on this the **25th day of August, 2025**, by **Sam Randles** to certify which witness my hand and seal of office.

Linda DV

Notary Public in and for the State of Texas
My Commission Expires: Sept. 19, 2028

LINDA DEL VILLAR
My Notary ID # 135097151
Expires September 19, 2028

**EXHIBIT A**

**OBITUARY OF HUGH QUAY PARMER**



# Hugh Quay Parmer

**Service & Contributions:** Member, Texas Senate

**Birth:** August 3, 1939

**Death:** May 27, 2020

| ⓘ **LOCATION** | Statesman Meadow, Section 1 | *Row:* V | *Number:* 25 | **View on Map (https://cemetery.texas.gov/locate-a-plot?objectId=813)** |
|---|---|---|---|---|

## Hugh Quay Parmer

PARMER, HUGH QUAY (1939 ~ 2020). The following is an obituary for Hugh Quay Parmer, former Texas Senator. The obituary was provided by Roberts Family Funeral Home of Fort Worth.

Hugh Parmer (1939-2020)

Hugh Parmer, a former Fort Worth mayor and Tarrant County legislator who became a prominent international humanitarian, died Wednesday following abdominal surgery. He was 80.

A memorial service will be held at a later date with interment to follow at the Texas State Cemetery in Austin.

The family requests that donations in Hugh's memory be made to Tarrant Area Food Bank. Website: tafd.org

Hugh was born Aug. 3, 1939 to Rev. Quay and Mary Louise Parmer in Fort Worth. He graduated from Polytechnic High School and then earned a Bachelor's Degree at Yale University. Hugh later earned a Master's Degree from the University of Texas at Arlington.

A lifelong Democrat, Hugh ran for the Texas House of Representative and was elected at age 23, then the youngest to serve in the state legislature. After one term, he was selected in 1966 to serve at the Peace Corps headquarters in Washington. While there, he and Evelyn Grant married and had a son, Travis, and a daughter, Elizabeth.

The family moved to Fort Worth in 1969, and Hugh started a political consulting business. He helped direct political contests in multiple states and cities.

Hugh was elected to the Fort Worth City Council in 1975 and became Fort Worth's 36th mayor in 1977. During his term, he named the first black municipal judge. Subsequently he secured the appointments of Clifford Davis and Mary Ellen Hicks, the first two black District judges in Tarrant Co. Parmer also passed the city's first ethics code and financial disclosure ordinances for city office holders.

He was elected to the Texas State Senate 1983 to 1991 and served a term as its President Pro Tem. During his terms in the state legislature, Hugh authored, co-authored or sponsored 153 bills. The legislation included bills that provided hunger relief for hundreds of thousands poor Texans and forced health insurance companies to

cover Alzheimer's disease care. Hugh also authored a bill that provided coverage for mammograms – a bill that became the core legislation for other women's health issues.

Hugh spent time educating himself in Texas law and then took and passed the bar exam to become a lawyer in 1988. He later bought a law firm that assisted local governments in tax matters.

In 1990, Hugh was elected the Democratic candidate to the U.S. Senate and unsuccessfully challenged incumbent Republican Phil Gramm. He twice ran unsuccessfully for the U.S. House of Representatives.

"You know how it goes," Hugh said after losing to Republican Congresswoman Kay Granger in 1996. "Sometimes you eat the bear and sometimes the bear eats you."

President Bill Clinton in 1998 appointed Hugh Assistant Administrator of U.S. Agency of International Development's Bureau of Humanitarian Response, a job that made him America's man on the scene of global disasters. Hugh directed American relief efforts during the war in Kosovo, following hurricanes in Honduras and Nicaragua, and combating famine in Ethiopia and Eritrea.

It also started Hugh on a new career as an international humanitarian.

He left the government in 2001 and later became president of the American Refugee Committee, an international relief organization, in Minneapolis. In 2008, Hugh was named a research fellow at the Hubert H. Humphrey School of Public Affairs.

"Hugh served with honor and great distinction representing our nation in some of the most remote and challenging parts of the world," said former Congressman Martin Frost. "Hugh Parmer was a true public servant and a real humanitarian."

Hugh retired to Texas where he became adjunct professor at four universities teaching seminars on global aid and refugee affairs.

"Humanitarian crises are everyday news," Hugh said in a lecture at

Tarleton State University in 2017. "With understanding comes the desire to help. There's a latent interest in most of us to make the world a better place, to save a life, to do good."

Hugh is survived by Evelyn, his wife of 55 years, a son, Travis, a daughter, Elizabeth, son-in-law James Hinkle, and granddaughter Claire Hinkle. And, also, said Elizabeth, "many adopted family members."

(/)

**About (https://cemetery.texas.gov/history)**

**Plan Your Visit (https://cemetery.texas.gov/plan-your-visit)**

**Locate a Plot (https://cemetery.texas.gov/locate-a-plot)**

**Monuments (https://cemetery.texas.gov/locate-a-plot/points-of-interest/monuments-at-the-texas-state-cemetery)**

**Contact Us (https://cemetery.texas.gov/contact-us)**

ADDRESS

909 Navasota St.
Austin, TX 78702

HOURS OF OPERATION

Daily from 8 a.m. to 5 p.m.

CONTACT

(512) 463-0605
State.Cemetery@tspb.texas.gov (mailto:State.Cemetery@t

spb.texas.gov)

Texas.gov (https://www.texas.gov/) State Preservation Board (https://tspb.texas.gov/)
Texas Homeland Security (https://gov.texas.gov/organization/hsgd)
Veterans Portal (https://veterans.portal.texas.gov/)
Statewide Search (https://www.tsl.texas.gov/trail/index.html)
Transparency (http://www.texastransparency.org/) Report Fraud (https://sao.fraud.texas.gov/)
Public Information Act (https://tspb.texas.gov/spb/records/records.html)
Compact with Texans (https://cemetery.texas.gov/compact-with-texans)
Accessibility Policy (https://cemetery.texas.gov/accessibility)
Privacy Notice (https://tspb.texas.gov/spb/policies/policies.html)
Link Policy (https://cemetery.texas.gov/link-policy)
Disclaimer (https://cemetery.texas.gov/disclaimer)
Translation Tools (https://cemetery.texas.gov/translation-tools)

**EXHIBIT B**

**TEXAS BUSINESS RECORD FOR PARMER CONSULTING, LLC**

**AS MAINTAINED BY BIZAPEDIA AND THE TEXAS SECRETARY OF STATE**

Bizapedia

Home > U.S. > Texas > Fort Worth

# PARMER CONSULTING, LLC

Texas Secretary Of State Business Registration · Updated 7/23/2025

Write Review Upgrade Claim

Sponsored Links

PARMER CONSULTING, LLC is a Texas Domestic Limited-Liability Company (Llc) filed on June 16, 2017. The company's filing status is listed as Forfeited Existence and its File Number is 0802748015.

The Registered Agent on file for this company is Elizabeth Parmer and is located at 307 W 7th St Suite 1224, Fort Worth, TX 76102. The company's principal address is 6532 Genoa Rd, Fort Worth, TX 76116-1811.

The company has 1 contact on record. The contact is Travis Q Parmer from Fort Worth TX.

Like 33K

Court Record: 4 Sources

Review Public Records

## Company Information

| | |
|---|---|
| Company Name: | PARMER CONSULTING, LLC |
| Entity Type: | TEXAS DOMESTIC LIMITED-LIABILITY COMPANY (LLC) |
| File Number: | 0802748015 |
| Filing State: | Texas (TX) |
| Filing Status: | Forfeited Existence |
| Filing Date: | June 16, 2017 |
| Company Age: | 8 Years, 2 Months |
| Registered Agent: | Elizabeth Parmer<br>307 W 7th St<br>Suite 1224<br>Fort Worth, TX 76102 |
| Principal Address: | 6532 Genoa Rd<br>Fort Worth, TX 76116-1811 |
| Governing Agency: | Texas Secretary of State |

Sponsored Links

Court Record: 4 Sources

Review Public Records

## Company Contacts

TRAVIS Q PARMER
Director
3622 Eldridge St
Fort Worth, TX 76107

TRAVIS Q PARMER
President
3622 Eldridge St
Fort Worth, TX 76107

## Reviews

Write Review

There are no reviews yet for this company.

## Questions

Ads by Google
Send feedback Why this ad?

ADDITIONAL LINKS

Post Question For This Company
Contact Us Regarding Your Company Profile
All Companies Named PARMER CONSULTING, LLC
Search All Texas Companies
Learn About Our Pro Search Subscription Service

*The information on this page is being provided for the purpose of informing the public about a matter of genuine public interest.*

Copyright © 2012-2025 · Bizapedia.com · All rights reserved. Pro Data • Pro Search • Pro API • Contact Us • Terms of Use • Privacy Policy • Sitemap

Desktop · Server 1-0

# EXHIBIT I

## Affidavit Authenticating Greenfield Elementary Schoolwide-Hold Documents

The notarized affidavit and all attachments are reproduced exactly as supplied. A duplicate PDF copy of Exhibit I is also stored on the sealed USB drive.

The exhibit authenticates Principal Darius Flowers's August 15, 2024 email and schoolwide-hold notice.

It is offered with Exhibit E to document the District's contemporaneous campus account and preserve asserted conflicts in the record.

322-619733-17

**Cause No.322-619733-17**

| | | |
|---|---|---|
| **IN THE INTEREST OF COURT** | § | **IN THE DISTRICT** |
| | § | |
| [redacted] **AND** [redacted] | § | **322nd JUDICIAL** |
| [redacted] | § | |
| | § | |
| **CHILDREN TEXAS** | § | **TARRANT COUNTY,** |

**AFFIDAVIT AUTHENTICATING GREENFIELD ELEMENTARY HOLD**

BEFORE ME, the undersigned authority, on this day personally appeared **Samuel Randles**, who being duly sworn, stated as follows:

1. **My name is Samuel Randles. I am over the age of 18, of sound mind, capable of making this affidavit, and personally acquainted with the facts stated herein.**
2. Attached hereto as ****Exhibit A**** is a true and correct copy of an email sent by **Principal Darius Flowers of Greenfield Elementary School on August 15, 2024.**
3. I received this communication in the ordinary course as a parent of students at Greenfield Elementary.
4. The document has been maintained in my possession, and the attached copy is an accurate and complete reproduction of the original message.

FURTHER AFFIANT SAYETH NOT.

(signed)

**Samuel Randles**

**5001 SH-114 E, Apt 1313, Roanoke, TX, 76262**

**214-250-6187**

**Randles.sam@gmail.com**

**SWORN TO AND SUBSCRIBED BEFORE ME** on this the **25th day of August, 2025**, by **Sam Randles** to certify which witness my hand and seal of office.

Notary Public in and for the State of Texas
My Commission Expires: 06/28/2029

ERIKA SOTO
Notary ID #131194045
My Commission Expires
June 28, 2029

**EXHIBIT A**

**EMAIL AND ATTACHMENT COMMUNICATION FROM DARIUS FLOWERS – SCHOOLWIDE HOLD**

**DATE OF OCCURRENCE : 08/15/2024**

Gmail **Sam Randles <randles.sam@gmail.com>**

## Update

2 messages

**dflowers@ems-isd.net** <dflowers@ems-isd.net> Thu, Aug 15, 2024 at 7:33 PM
Reply-To: dflowers@ems-isd.net
To: randles.sam@gmail.com

This email is regarding: [redacted]

---------------------------------------------------

Greenfield Parents and Guardians,

Please see the attached letter regarding the incident that occurred during dismissal.

**District:** EAGLE MOUNTAIN-SAGINAW ISD
**District Web Site:** https://www.emsisd.com
**State:** TX
**District Code:** 220918

Student Management & Family/Student Access System

**Greenfield Hold 8-15-24.docx**
22K

**dflowers@ems-isd.net** <dflowers@ems-isd.net> Thu, Aug 15, 2024 at 7:38 PM
Reply-To: dflowers@ems-isd.net
To: randles.sam@gmail.com

[Quoted text hidden]

**Greenfield Hold 8-15-24.docx**
22K

August 15, 2024

Dear Greenfield Parents and Guardians,

I'm writing to provide you with information about a situation that took place behind our school this afternoon. Prior to dismissal as parents waited to pick up their children, our campus went into a "hold" status from 2:46 – 2:48 pm on the request of police. They were serving papers to an individual located adjacent to our property.

There was never a threat to our students or the other parents waiting to pick up their children. As a reminder, during a "hold" students remain in their classrooms, the halls are cleared, and business continues as usual. You can learn more about all the Standard Response Protocols at www.emsisd.com/srp.

If you have any questions, please don't hesitate to reach out.

Sincerely,

Darius Flowers
Principal