**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

SAMUEL RANDLES,

Plaintiff,

v.

EAGLE MOUNTAIN-SAGINAW INDEPENDENT SCHOOL DISTRICT;
JERRY HOLLINGSWORTH, solely in his official capacity;
JON GRADY, individually;
LARRY LANCE, individually;
MARK ALLAIN, individually;
DARIUS FLOWERS, individually;
PHILO WATERS, individually;
STACY ALFORD, individually;
AMANDA HIXON, individually; and
JENNIFER RANDLES, individually,

Defendants.

**Civil Action No. 4:26-cv-00999-O-BP**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S FIRST AMENDED AND SUPPLEMENTAL VERIFIED COMPLAINT UNDER 42 U.S.C. §§ 1983 AND 1985(2)**

This action challenges a coordinated course of conduct that converted a parent's request for his child's PTA Reflections video into an arrest and an official Criminal Trespass Warning that expanded a single Greenfield Elementary encounter into an indefinite districtwide exclusion. EMSISD then used that exclusion to support criminal prosecution, restrict parental and educational access, deny meaningful review, renew the seizure with Taser force, and carry school-police information into related family litigation after this action was filed. The amended and supplemental pleading adds the participants identified by the recording, police materials, grievance record, family-court transcript, later discovery, and post-filing events, and seeks damages and focused declaratory, corrective, and prospective relief.

## TABLE OF CONTENTS


I. NATURE OF THE ACTION ........ 4

II. PARTIES, JURISDICTION, AND VENUE ........ 9

III. STATUTORY AND CONSTITUTIONAL FRAMEWORK ........ 13

IV. FACTUAL ALLEGATIONS ........ 17

A. Predicate family, parental, and protected-activity facts ........ 17

B. The Reflections video, the July Board meeting, and the August 8, 2024 arrest ........ 18

C. The criminal case and favorable termination ........ 20

D. The coordinated August 15, 2024 service operation ........ 22

E. Family-court use of EMSISD allegations and blocked access to contrary records ........ 24

F. The blocked grievance, subpoena, and records-review paths ........ 26

G. Continuing family-court information channel and August 2026 monitoring operation ........ 28

H. Renewed enforcement and the August 11, 2026 seizure ........ 30

I. The federal filing, actual notice, later charges, and report dissemination ........ 31

V. CLAIMS FOR RELIEF ........ 33

COUNT I – FIRST AMENDMENT SPEECH, PETITION, AND RETALIATION ........ 33

COUNT II – FREE EXERCISE AND PARENTAL DIRECTION ........ 34

COUNT III – FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS ........ 36

COUNT IV – UNREASONABLE SEIZURE AND ARREST WITHOUT PROBABLE CAUSE ........ 38

COUNT V – FOURTH AMENDMENT EXCESSIVE FORCE ........ 39

COUNT VI – MUNICIPAL LIABILITY UNDER MONELL ........ 40

COUNT VII – FOURTH AMENDMENT MALICIOUS PROSECUTION ........ 42

COUNT VIII – § 1983 JOINT ACTION AND CONSPIRACY: 2024 TRANSACTION ........ 44

COUNT IX – § 1983 JOINT ACTION AND CONSPIRACY: 2026 TRANSACTION ........ 46

COUNT X – § 1985(2) FEDERAL-COURT INTIMIDATION CONSPIRACY ........ 48

COUNT XI – VIEWPOINT DISCRIMINATION AND DENIAL OF FORUM ACCESS . 50

VI. INJURY AND RELIEF REQUESTED ........ 52

VII. ATTORNEYS' FEES AND COSTS ........ 55

VIII. JURY DEMAND, ORAL ARGUMENT, AND PRAYER ........ 56

## I. NATURE OF THE ACTION

1. This action arises from Eagle Mountain-Saginaw Independent School District's (EMSISD) use of a single police-issued Criminal Trespass Warning (CTW) to convert Plaintiff's protected parental inquiries and one encounter at Greenfield Elementary into an indefinite exclusion from every District property, two arrests, criminal prosecution, and continuing interference with his participation in his children's education. Plaintiff alleges first that Defendants never acquired lawful authority to exclude him under Texas Education Code § 37.105. He further alleges, without conceding that any removal was lawful, that the decision to impose and maintain the broadest possible geographic restriction without an identified risk, conduct finding, definite term, or meaningful review confirms retaliatory and viewpoint-discriminatory purpose. After the first prosecution ended without a conviction, District officials blocked the prescribed review process, continued the exclusion beyond its statutory maximum, coordinated school-police information with related family litigation, and enforced the same CTW with Taser force in August 2026. These claims concern independent conduct by EMSISD, its police officers, and their alleged joint actors, not appellate review of any family-court judgment.

2. Plaintiff and Defendant Jennifer Randles are divorced and have two sons together. Their post-divorce relationship was high conflict and included Jennifer's interference with Plaintiff's relationship with the children, false oral and written accusations against Plaintiff, and assaultive and harassing conduct in 2022 against Plaintiff by Jennifer's brother-in-law, Scott Harmon. An assault charge against Harmon arising from that conduct was later expunged. Plaintiff had also asserted that Harmon presented a danger to the children. These conflicts existed before the school and police events alleged below.

3. Plaintiff is a practicing Christian and holds conservative political views concerning parental authority and the moral education of his children. Before the events alleged below, Plaintiff had repeatedly challenged EMSISD practices that discriminated against his religious and political viewpoints, including DEI programming and instruction or materials concerning sexual orientation, gender identity, and sex education presented to his children. Plaintiff requested information and instructional materials, objected to that content, and asserted his right to direct his children's moral and religious upbringing. Those communications placed EMSISD officials on notice of Plaintiff's beliefs, viewpoint, and continuing scrutiny of what the District was teaching his children. Plaintiff alleges that the later obstruction of information, exclusion from

District property, and police-controlled access were intended, in part, to deter that protected inquiry and parental participation.

4. Before the August 8, 2024 injury, Plaintiff held and exercised parental and educational rights concerning both children. Jennifer had family connections to EMSISD personnel, including her sister, Kimberly Harmon, who held an administrative position with the District. During March 2024, Plaintiff repeatedly requested his child's PTA Reflections video, verbally and through email communications, from Greenfield Elementary Principal Darius Flowers, teacher Melissa Moffett, Jennifer, and PTA President Amanda Hixon. It was later learned that Jennifer was the PTA Donations Chair. On July 22, 2024, at Flowers's request, Plaintiff and his child appeared before the EMSISD Board of Trustees. Flowers introduced Plaintiff's child as a PTA Reflections award winner for video production and publicly described the child's achievement while Hixon was present. Plaintiff Randles again asked for this video from Hixon. By August 8, 2024, Flowers, Hixon, and Jennifer therefore had actual notice that Plaintiff had been requesting material concerning a recognized school and PTA achievement involving his child. Those requests and the existing family-school relationships supplied the predicate, context, and retaliatory motive for the events alleged below.

5. On August 8, 2024, Plaintiff attended Greenfield Elementary's public Meet the Teacher event and again sought his son's PTA Reflections video and information about the school activity. Flowers and Lance directed Plaintiff to leave Greenfield without identifying a substantial risk of harm or particular inappropriate behavior, warning that persistence in that behavior could result in removal, or observing persistence after such a warning. Lance arrested Plaintiff. EMSISD then issued a written CTW that converted the Greenfield encounter into an exclusion from every District property. Although the CTW cites Texas Penal Code § 30.05, the Legislature's 2017 amendments specifically regulated school-district CTWs and conditioned exclusion on the grounds and safeguards in Education Code § 37.105. The CTW identifies no statutory cause, has no expiration, supplies no appeal information, and states that it remains effective until EMSISD rescinds it in writing.

6. The contemporaneous recording shows PTA President Amanda Hixon summoning assistance by sending her husband to locate EMSISD Police Officer Larry Lance, then telling Lance, "No problem. No problem," and explaining that Plaintiff had questions about Reflections. The recording captures no threat or attempted strike. Despite that record, Lance announced that

Plaintiff was going to jail. Hixon remained engaged after that announcement and asked Lance, "What do you want me to do?" Lance's ensuing report nevertheless portrayed Hixon as distraught and Plaintiff as appearing prepared to strike Flowers. Plaintiff alleges that Hixon supplied, adopted, or ratified that materially false danger account and remained available to assist the police action. Principal Darius Flowers was then identified as the injured person and statutory owner in the ensuing criminal complaint and information. EMSISD Police Detective Mark Allain reviewed the report and advanced the case for presentation under § 30.05 rather than § 37.105.

7. On August 14, 2024, Jennifer informed Flowers that she had contacted Lance regarding new family orders and would coordinate with both men before service the following day. On August 15, Plaintiff complied with the CTW's instruction to contact EMSISD Police Captain Jon Grady before entering District property, although the CTW invoked Penal Code § 30.05 rather than Education Code § 37.105. Plaintiff invoked § 37.105 and requested an arrangement that would permit him to pick up his children, but Grady made no such arrangement, reiterated that entry could result in arrest, and learned when and where Plaintiff would arrive. EMSISD Police then requested a temporary campus hold, and Travis Parmer—brother of Jennifer's retained family-law counsel, Elizabeth "Betsy" Parmer—approached Plaintiff from the Greenfield campus accompanied by Lance and another EMSISD officer to serve the ex parte order while Plaintiff remained off campus. Parmer claimed he was a functionary of the court in violation of service laws. Plaintiff alleges that this coordinated use of his expected pickup location, the CTW, and District police authority prevented him from retrieving his children and carried the school exclusion into the family litigation. The criminal prosecution arising from the August 8 arrest continued until January 2, 2025, when it ended without a conviction, and the family litigation is still ongoing.

8. EMSISD issued a single district-wide CTW on August 8, 2024, and thereafter treated that same instrument as permanent and outside the appeal procedures governing school exclusions. On March 7, 2025, Plaintiff invoked EMSISD's FNG(LOCAL) grievance process. EMSISD's Director of Policy and Information Management, Philo Waters III, Ed.D., dismissed the grievance at Level I without a conference and treated the EMSISD Police-issued CTW as unappealable through that process. Plaintiff timely appealed. EMSISD's Executive Director of Secondary Services, Walter W. Berringer III, Ed.D., conducted the Level II conference on April

14, 2025. On April 29, 2025, Berringer partially reversed the timeliness ruling but refused to remand the surviving issue for a Level I hearing, decided it himself, and left the CTW in effect.

9. Although Berringer's decision referenced a Level III appeal, EMSISD continued to characterize the exclusion as a Penal Code § 30.05 police matter rather than an Education Code § 37.105 school exclusion and provided no accommodation through which Plaintiff—who remained threatened with arrest on District property—could appear before the Board. The District's position therefore denied Plaintiff meaningful access to Level III review. EMSISD never issued a second CTW. Instead, after the two-year maximum prescribed by § 37.105 had passed, Captain Grady continued the arrest threat under the original August 8, 2024 CTW and its § 30.05 label. On August 11, 2026, despite written notice of those defects, Grady authorized enforcement of that same CTW. Lance seized Plaintiff and fired a Taser into Plaintiff's back after Plaintiff disengaged, turned away, and moved away from the officer. When the first wires dislodged during Plaintiff's fall, Lance fired a second cartridge, which missed.

10. The record also shows a continuing information channel among EMSISD personnel, EMSISD Police, Jennifer Randles, and the family litigation. Jennifer possessed and withheld the Reflections video and then relied on accounts from Hixon, Flowers, and EMSISD Police to seek restrictions on Plaintiff's parental and school access in family court. She coordinated with Flowers and Lance before the August 2024 service operation and later furnished family orders, Plaintiff's anticipated attendance, vehicle information, and other individualized information requested by Grady and Lance before the August 2026 enforcement event.

11. Jennifer initially pursued the family-court proceedings through Elizabeth "Betsy" Parmer and attorneys from Parmer's firm. On August 15, 2024, Parmer's firm obtained an ex parte temporary restraining order excluding Plaintiff from possession of or access to his children. Following hearings on September 20 and 23, 2024, 324th District Associate Judge Lori DeAngelis issued an Associate Judge's Report continuing supervised access and prohibiting Plaintiff from attending the children's school and extracurricular activities until further order. After Plaintiff disclosed that Parmer had previously represented presiding 231st District Judge Jesus "Jesse" Nevarez, Jr. in separate judicial-conduct proceedings involving sexual harassment of his former Associate Judge Lindsay DeVos, Parmer was discharged as Jennifer's attorney of record on February 18, 2025, and Laurie Robinson, Robinson & Smart, P.C., was substituted as Jennifer's counsel. Nevarez subsequently recused himself from all remaining proceedings on

July 22, 2025. Despite the counsel substitution and judicial recusal, the temporary restrictions originating from the August and September 2024 proceedings have not been dissolved and continue to impair Plaintiff's access to his children and their schools.

12. The counsel substitution did not eliminate the overlapping professional relationships affecting the proceedings. Public judicial records identify Robinson and DeAngelis as joint petitioners and appellants in *DeAngelis v. Protective Parents Coalition*, where they were represented by Jim Ross. The Jim Ross Law Group later publicly advertised Stacy Alford as one of its family-law attorneys. Alford subsequently joined Leasor Crass, the firm representing EMSISD, and appeared in the family proceeding as counsel for EMSISD personnel whose conduct and records were being used against Plaintiff. DeAngelis had issued the September 2024 ruling restricting Plaintiff's access, and Robinson later represented Jennifer in the same family case. Plaintiff alleges that these overlapping attorney and judicial relationships, the undisclosed conflict involving Parmer and Nevarez, the resulting counsel substitution and recusal, and the continued enforcement of temporary restrictions entered through those proceedings compromised the neutrality of the process and enabled EMSISD-generated allegations and records to be carried into the family case. Plaintiff pleads these facts to establish motive, coordination, causation, continuing injury, and the transmission of EMSISD information—not to request appellate review or reversal of any state-court custody order.

13. EMSISD counsel Stacy Alford represented Flowers, Lance, and another District witness in family-law proceedings involving subpoenas for material concerning the arrest and Reflections video, obtaining orders that quashed the subpoenas and awarded monetary judgments to those witnesses. On March 10, 2026, although EMSISD was not a party to the family case, Alford appeared in person at a family-court hearing without being listed on the appearance page or filing an appearance. When the court questioned her presence, Alford stated, "I'm here as a lawyer," identified herself as counsel for EMSISD, and said she had attended "as a courtesy" because she was named in a pending motion. Plaintiff objected on the record that he believed Alford was present to pursue sanctions arising from the earlier subpoena orders; the court responded that sanctions were not before it, and Alford stated that she had filed nothing. Immediately before the hearing, Plaintiff personally observed Alford in a private room with Jennifer and Jennifer's counsel, Laurie Robinson, and Plaintiff possesses a photograph depicting that meeting. The hearing transcript further confirms Robinson's possession of Alford's

telephone number, while an objection prevented Robinson from answering whether the private meeting occurred.

14. Plaintiff filed this federal action on August 13, 2026, and directly emailed the filed complaint and Rule 65 papers to EMSISD, Grady, and Lance on August 16. Formal charges arising from the August 11 event followed that notice. Jennifer later produced in family-court discovery an exhibit book whose index and pages repeatedly bear EMSISD Police Report No. 260002245.

15. Plaintiff alleges the facts within his personal knowledge directly. He alleges matters shown by identified records according to what those records state. He alleges on information and belief facts concerning communications, transmissions, and agreements uniquely within Defendants' possession, and states the known objective facts supporting those inferences.

16. Plaintiff seeks damages against the responsible individuals, municipal liability against EMSISD, declarations resolving the continuing CTW controversy, rescission and corrective notice, and prospective procedures that prevent Defendants from using a Penal Code label to evade the specific substantive and procedural limits the Legislature imposed on school-district CTWs.

## II. PARTIES, JURISDICTION, AND VENUE

17. Plaintiff Samuel Christopher Randles is a Texas resident and the father of two children enrolled in EMSISD. He continues to have recurring reasons to attend open Board meetings, scheduled parent conferences and events, school activities generally open to parents, and arranged inspections of educational records and instructional materials. He intends to participate in those activities when legally permitted and remains subject to arrest under the unrescinded CTW.

18. Defendant Eagle Mountain-Saginaw Independent School District is a Texas independent school district, political subdivision, and local governmental entity subject to suit under 42 U.S.C. § 1983. EMSISD may be served through Superintendent Jerry Hollingsworth at 1600 Mustang Rock Road, Fort Worth, Texas 76179.

19. Defendant Jerry Hollingsworth is Superintendent of EMSISD and is sued solely in his official capacity for prospective declaratory and injunctive relief. He is responsible, under the Board’s authority, for administering District operations and implementing compliance by District personnel, including the continuing CTW and access practices challenged in Counts I–III, VI,

and XI. Plaintiff does not seek individual-capacity damages or punitive damages from Hollingsworth.

20. Defendant Jon Grady is Captain of the EMSISD Police Department and acted under color of state law. Grady personally administered the CTW, asserted authority to determine whether entry onto District property would result in arrest, continued the arrest threat under the original CTW after two years, authorized its August 11, 2026 enforcement, and participated in the joint conduct alleged below. He is sued individually under Counts I–IV and IX–XI.

21. Defendant Larry Lance is an EMSISD peace officer who acted under color of state law. Lance issued the CTW, initiated the August 2024 arrest and resulting police report, participated in the exchange of family and school information, enforced the same CTW through seizure and Taser force on August 11, 2026, and engaged in the prosecution-related and post-filing conduct alleged below. He is sued individually under Counts I–V and VII–XI.

22. Defendant Mark Allain was an EMSISD detective acting under color of state law. Allain reviewed Lance's August 2024 report, adopted the premise that the encounter established criminal trespass, and advanced the case for presentation to the Tarrant County Criminal District Attorney despite the reproduced supplement bearing the notation "Approving Supervisor: Not approved." He is sued individually under Count VII.

23. Defendant Darius Flowers was Principal of Greenfield Elementary and acted under color of state law. Flowers participated in the August 2024 encounter and exclusion, directed Plaintiff to leave, was identified in the criminal papers as the injured person and statutory owner whose consent allegedly controlled, communicated with Jennifer and Lance, and participated in the accounts used to advance the prosecution and restrict Plaintiff's school and parental access. He is sued individually under Counts I–III, VII, VIII, and XI.

24. Defendant Philo Waters was EMSISD's Director of Policy and Information Management and acted under color of state law. Acting through EMSISD's grievance system and for the Superintendent, Waters denied Plaintiff a Level I conference and merits determination, declared the police-issued CTW unappealable through that process, closed the grievance issue, and participated in maintaining the challenged exclusion. He is sued individually under Counts I–III and XI.

25. Defendant Stacy Alford served as counsel and an authorized agent for EMSISD and its personnel concerning the August 2024 arrest, the Reflections video, District records, and related

family-court subpoenas. On March 10, 2026, although EMSISD was not a party to the family case and Alford had filed no appearance, Alford appeared at the hearing, announced that she was present as EMSISD's attorney, and acted on behalf of EMSISD personnel whose conduct and records were at issue. Immediately before the hearing, Plaintiff observed and photographed Alford meeting privately with Jennifer and Jennifer's counsel, Laurie Robinson. Plaintiff alleges that Alford thereafter participated in obtaining, coordinating, transmitting, or facilitating the litigation use of EMSISD-generated allegations and nonpublic records. Alford is sued individually for damages under Counts I, IX, and X because she personally acted under color of state law as EMSISD's counsel and agent or, alternatively, knowingly participated as a private joint actor with EMSISD officials, Jennifer, and Robinson in the conduct alleged below.

26. Defendant Amanda Hixon was Greenfield PTA President and is a private person alleged to have acted jointly with EMSISD personnel. Hixon summoned Lance into the Reflections dispute, remained engaged after Lance announced Plaintiff's arrest, supplied, adopted, or ratified information used to justify the arrest and prosecution, and asked Lance what he wanted her to do. She is sued individually under Counts I, VII, and VIII for the deprivations she allegedly caused through joint action with state actors, not merely because of her PTA position.

27. Defendant Jennifer Randles was Plaintiff's opposing party in the family case and identified herself under oath as Greenfield PTA Donations Chair. She possessed the requested Reflections video, coordinated with Flowers and Lance concerning family orders and school access, supplied individualized information and protected speech before the August 2026 enforcement operation, used EMSISD accounts in family court, and later possessed and produced materials bearing an EMSISD police-report number. She is sued individually under Counts I, IX, and X for her alleged willful participation in the specific monitoring, information-sharing, enforcement, and post-filing conduct alleged below—not merely because of her family relationship with Plaintiff or her PTA position.

28. The Texas Education Agency ("TEA") is a nonparty governmental agency. TEA received Plaintiff's complaint concerning EMSISD, assigned Reference No. 2025-03-0128, directed attention to the local grievance process, and requested that EMSISD contact Plaintiff concerning the reported violations. Plaintiff informed TEA that EMSISD denied him a Level I conference, restricted Level II consideration, maintained the CTW without meaningful appeal, and continued withholding relevant records. TEA's communications are alleged as evidence of external notice

to EMSISD, Plaintiff's exhaustion efforts, the availability of corroborating governmental records, and the District's opportunity to correct the challenged practices.

29. The Office of the Attorney General of Texas ("OAG") is a nonparty governmental agency that addressed Plaintiff's records disputes with EMSISD in two separate proceedings. First, in Letter Ruling OR2025-011860 (ID No. 25-004152), dated April 7, 2025, the OAG rejected EMSISD's asserted bases for withholding the submitted information, permitted withholding only a District police officer's cellular telephone number under Government Code § 552.108(b)(1), and ruled that EMSISD must release the remaining submitted information, which the District refused to do. Second, in Cost Complaint No. OR-25-007983-CC, the OAG determined on November 21, 2025, that EMSISD's approximately $21,540 estimate was deficient under § 552.2615; disallowed charges for reviewing records to determine whether exceptions applied, unexplained printing of electronically maintained records, and duplicate information; and required EMSISD to issue a compliant amended estimate within five business days. Plaintiff alleges that EMSISD did not timely comply with either determination and continued withholding responsive records through an unlawful production barrier. The two OAG proceedings establish EMSISD's notice, possession and control of responsive information, limited authority to withhold it, and continued obstruction of Plaintiff's access.

30. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because Plaintiff's claims arise under the United States Constitution and 42 U.S.C. §§ 1983 and 1985(2). Declaratory remedies are authorized by 28 U.S.C. §§ 2201–2202, and the requested prospective relief is governed by 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

31. Venue is proper in the Northern District of Texas and its Fort Worth Division under 28 U.S.C. §§ 124(a)(2) and 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Tarrant County, Texas.

32. The family-court proceedings and orders are alleged as evidence of motive, coordination, information transmission, causation, damages, and continuing injury. Plaintiff does not request that this Court vacate, modify, or exercise appellate review over any custody or family-court order. The requested federal relief addresses EMSISD's CTW, Defendants' independent conduct, and the resulting federal constitutional injuries.

## III. STATUTORY AND CONSTITUTIONAL FRAMEWORK

33. Texas Education Code § 37.105 supplies the specific authority and conditions under which a school administrator, school resource officer, or school-district peace officer may refuse entry to or eject a person from property under the district's control. The official may act only if the person refuses to leave peaceably on request and either poses a substantial risk of harm or persists in identified behavior inappropriate for a school setting after receiving the required behavior-specific warning. When the District proceeds under the inappropriate-behavior provision, it must record the warning and its date. At the time of exclusion, the District must provide written appeal information. An exclusion may not exceed two years, and the District must provide the parental accommodations specified by the statute. Tex. Educ. Code § 37.105(a), (c)-(f). The statute does not make exclusion from every District property automatic merely because an official directs a person to leave one campus.

34. The implementing rule requires the Board to hear an appeal through the District’s existing grievance process and to provide the excluded person an opportunity to address the Board personally within 90 calendar days after the initial filing unless the appeal is granted earlier. 19 Tex. Admin. Code § 103.1207. A process that declares the CTW unappealable, closes the grievance without a merits determination, or continues to threaten arrest without providing a practical means to appear before the Board does not supply the review required by the statute and rule.

35. Texas Penal Code § 30.05 defines criminal trespass through entry or remaining without effective consent after legally sufficient notice from an owner or person with apparent authority. It does not independently confer upon a school employee or police officer unlimited authority to create and maintain an official school-property exclusion. When the asserted lack of consent arises entirely from a District-issued exclusion, §§ 30.05 and 37.105 must be read together, with § 37.105 supplying the specific cause, warning, appeal, accommodation, and duration requirements governing that exercise of school authority. See Tex. Gov't Code § 311.026. Defendants could not eliminate those requirements by placing '§ 30.05' on the District's instrument.

36. The legislative history confirms that construction. The official Senate committee report described a CTW as a warning that a parent could not enter school 'property or properties' without designated permission or risk arrest. It also documented the use of broad CTWs to

prevent parental participation and explained that the legislation would prevent exclusion unless the person posed the specified risk or persisted in identified inappropriate conduct after warning. Senate Research Center, Bill Analysis, C.S.S.B. 1553, 85th Leg., R.S. (May 5, 2017). The Legislature therefore understood that a CTW could reach multiple properties and imposed substantive grounds, review, accommodation, and duration requirements to restrain that power.

37. EMSISD's own GKA materials reflect the same framework: § 37.105 authorizes refusal of entry or ejection, the resulting instrument is commonly called a criminal-trespass warning, its duration may not exceed two years, and an appeal must be provided. The proposal for decision in Hall v. McKinney ISD likewise applied § 37.105 to a school officer's CTW and concluded that the exclusion was defective when the statutory warning and related protections were absent. Dkt. No. 009-R10-10-2022, PFD 7-9 (Tex. Educ. Agency Apr. 18, 2023). Plaintiff thus challenges the existence of exclusion authority in the first instance. Without conceding such authority, he also challenges Defendants' deliberate conversion of one Greenfield encounter into an indefinite districtwide restriction unsupported by any finding connecting the alleged conduct to other District properties or functions.

38. A First Amendment retaliation claim requires protected speech or petitioning activity, an adverse action capable of chilling a person of ordinary firmness, and facts showing that the protected activity substantially motivated the adverse action. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Complaints to public officials, requests for public and educational information, grievances, participation in public meetings, and resort to the courts constitute protected activity. Arrest, prosecution, physical force, exclusion from public property, and credible arrest threats constitute actionable adverse measures. To the extent the retaliation claim rests upon arrest or prosecution, Plaintiff also pleads the absence of probable cause. See *Nieves v. Bartlett*, 587 U.S. 391, 402–07 (2019).

39. The First Amendment protects sincere religious exercise and prohibits government from substantially interfering with parents' religious direction of their children. *Mahmoud v. Taylor*, 606 U.S. 522, 535–46 (2025). The Fourteenth Amendment also protects parental care, custody, control, and educational direction. *Meyer v. Nebraska*, 262 U.S. 390 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Troxel v. Granville*, 530 U.S. 57 (2000). Plaintiff does not assert a generalized right to dictate the District's curriculum. He challenges retaliation, exclusion, denial

of information and participation, and the use of governmental authority to obstruct his exercise of recognized parental and religious rights.

40. Procedural due process protects a person from governmental deprivation of a recognized liberty or property interest without notice and a meaningful opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Section 37.105 and its implementing rule supplied defined restrictions on the duration and grounds for exclusion and an express right to Board review. Plaintiff alleges that Defendants maintained the arrest-backed exclusion beyond its maximum term, declared it unappealable, denied merits review, and provided no meaningful route through which he could safely reach the Board. Those allegations concern the complete denial of the prescribed process, not dissatisfaction with the result of a completed hearing.

41. A private person acts under color of state law when the person is a willful participant in joint activity with state officials. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). A § 1983 conspiracy requires facts supporting an agreement to commit an unlawful act and an actual constitutional deprivation. *Priester v. Lowndes County*, 354 F.3d 414, 420–21 (5th Cir. 2004). Merely reporting information or contacting police is insufficient. Counts VIII and IX instead plead directed communications, complementary roles, a shared unlawful objective, specific overt acts, and resulting constitutional deprivations from which joint participation and agreement may plausibly be inferred.

42. The Fourth Amendment prohibits an arrest or detention unsupported by probable cause. A warrantless arrest is reasonable only if the facts known to the officer supplied probable cause for at least one offense. *District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018); *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004). Here, criminal trespass required legally effective notice and a valid withdrawal of consent, while evading required a lawful attempted arrest or detention. Tex. Penal Code §§ 30.05, 38.04. The Fourth Amendment separately prohibits force that causes injury and is clearly excessive to the need and objectively unreasonable under the severity of the suspected offense, the immediate threat presented, and any active resistance or attempted flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Joseph v. Bartlett*, 981 F.3d 319, 332–35 (5th Cir. 2020).

43. A Fourth Amendment malicious-prosecution claim requires: (1) commencement or continuation of a criminal proceeding; (2) legal causation by the defendant; (3) favorable

termination; (4) absence of probable cause; (5) malice; and (6) damages. *Armstrong v. Ashley*, 60 F.4th 262, 278–79 (5th Cir. 2023); *Espinal v. City of Houston*, 96 F.4th 741, 749–50 (5th Cir. 2024). An intermediary does not break causation when a defendant's malicious conduct causes material facts to be falsified, suppressed, or omitted from the information presented to that intermediary. *Espinal*, 96 F.4th at 747–50. Count VII pleads each Defendant's causal acts, favorable termination, lack of probable cause, malice, and resulting damages.

44. Municipal liability exists when an official policy, policymaker-approved decision, or sufficiently settled custom is the moving force behind a constitutional violation. *Monell v. Department of Social Services*, 436 U.S. 658, 690–94 (1978). The policy and policymaker must be identified factually rather than through a generalized assertion of responsibility. Count VI identifies the District's asserted practice of using § 30.05 to create and enforce school exclusions outside § 37.105, the officials who administered that practice, its application after written notice of the statutory defects, and the resulting constitutional injuries.

45. Texas's two-year personal-injury limitations period governs the § 1983 and related federal civil-rights claims, with accrual determined by federal law. The August 2024 prosecution terminated without a conviction on January 2, 2025; Plaintiff's prosecution-related claims therefore accrued no earlier than that favorable termination. The August 2024 arrest, CTW, report preparation, and resulting prosecution also constitute relevant overt acts, notice, and evidence of the policies and coordinated course of conduct alleged below. Independently, Defendants committed fresh and timely acts by continuing to maintain and enforce the CTW, denying statutory review and access, withholding responsive records, coordinating the use of District information, seizing Plaintiff on August 11, 2026, and initiating charges after receiving notice of this federal action. Plaintiff therefore alleges timely claims based on both favorable termination and independently actionable conduct occurring within the limitations period.

46. The first clause of 42 U.S.C. § 1985(2) reaches a conspiracy whose predominant purpose is to deter a party or witness, by force, intimidation, or threat, from attending or testifying freely, fully, and truthfully in federal court, or to injure that person because of such attendance or testimony. Mere hostility toward the filing or maintenance of a lawsuit is insufficient. *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 149–51 (5th Cir. 2010); *Kinney v. Weaver*, 367 F.3d 337, 353–59 (5th Cir. 2004) (en banc). The federal-court clause requires no class-based animus. *Kush v. Rutledge*, 460 U.S. 719, 724–26 (1983). Count X therefore identifies

the contemplated federal hearing and testimony, Defendants' knowledge, the alleged deterrent object, post-notice acts, and resulting injury rather than relying merely on opposition to this action.

## IV. FACTUAL ALLEGATIONS

### A. Predicate family, parental, and protected-activity facts

47. Plaintiff and Defendant Jennifer Randles are divorced and have two sons together. Before August 8, 2024, Plaintiff held and exercised parental and educational rights concerning both children. Their post-divorce relationship was high conflict and included Jennifer's interference with Plaintiff's relationship with the children and false oral and written accusations against Plaintiff.

48. In 2022, Jennifer's brother-in-law, Scott Harmon, engaged in assaultive and harassing conduct against Plaintiff. An assault charge against Harmon arising from that conduct was later expunged. Plaintiff had also asserted that Harmon presented a danger to the children. Jennifer's sister, Kimberly Harmon, held an administrative position with EMSISD. These circumstances created a preexisting intersection between the family conflict and District personnel.

49. Plaintiff is a practicing Christian and political conservative who has previously challenged EMSISD concerning what he regarded as discriminatory District practices, including the presentation of DEI policies, LGBTQ ideology, and sex-related educational material to his children. Plaintiff repeatedly asserted his right to know what EMSISD was teaching his children and to participate in decisions affecting their education.

50. Plaintiff's religious practice and parental responsibilities include reviewing his children's instruction and expressive work, communicating with teachers and administrators, and seeking information about programs affecting them. Plaintiff's prior communications placed EMSISD personnel on notice of those beliefs and activities before the Reflections dispute, the August 2024 arrest, the continued exclusion, and the later enforcement alleged below.

51. Beginning in March 2024, Plaintiff repeatedly requested his child's PTA Reflections video, verbally and by email, from Greenfield Principal Darius Flowers, teacher Melissa Moffett, Jennifer, and PTA President Amanda Hixon. Jennifer later admitted in sworn discovery responses that she possessed the video, that Plaintiff requested it, and that she did not provide it. Her response also identified her as Greenfield's PTA Donations Chair, a position Plaintiff did not know she held on August 8, 2024.

**B. The Reflections video, the July Board meeting, and the August 8, 2024 arrest**

52. On July 22, 2024, at Flowers's request, Plaintiff and his child appeared before the EMSISD Board. Flowers introduced Plaintiff's child as a PTA Reflections film-production award winner and publicly described the achievement while Hixon was present. Plaintiff again requested the video from Hixon. Flowers, Hixon, and Jennifer therefore had actual notice before August 8 that Plaintiff was seeking material concerning a recognized school and PTA achievement involving his child.

53. On August 8, 2024, Plaintiff attended Greenfield's Meet the Teacher Night, an event open to parents. Several PTA representatives staffed tables at the event, and Hixon attended in her capacity as PTA President. Plaintiff again requested his child's Reflections video and related information from Hixon and Flowers.

54. The certified transcript begins with an unidentified speaker describing a parent as "kind of belligerent to the PTA" and asking someone to come inside. Plaintiff identifies that speaker as Hixon's husband. Hixon then summoned Lance to the cafeteria, stating, "I need you. I need you. Cafeteria." When Lance asked, "What's the problem?" Hixon responded, "No problem. No problem. I'm looking for Flowers," and explained that Plaintiff had questions concerning Reflections and had been directed to speak with Flowers.

55. The recording establishes that the encounter concerned Plaintiff's request for his child's Reflections video and related information. It captures no threat, attempted strike, or violent act by Plaintiff before police intervention. Hixon's contemporaneous statement that there was "No problem" contradicts the asserted need for an immediate police response and the danger narrative later incorporated into the official account.

56. Flowers and Lance directed Plaintiff to leave the open parent event at Greenfield. Plaintiff maintained that he was present to obtain his child's school-activity material. Neither Flowers nor Lance identified a substantial risk of harm or particular behavior as inappropriate, warned that persistence in that identified behavior could result in exclusion, and then observed Plaintiff persist after such a warning. The words directing Plaintiff to leave did not supply the behavior-specific warning required by § 37.105. Lance arrested Plaintiff and, after the arrest, issued EMSISD's printed CTW without providing the written appeal information required for a school-property exclusion.

57. The oral directives concerned Plaintiff's immediate presence at Greenfield during the August 8 encounter. The written CTW delivered after the arrest went much further. It states that the Superintendent authorized EMSISD Police to issue it; identifies Plaintiff as a District parent; covers every campus, office, bus, parking area, stadium, and facility; requires police scheduling for each visit; threatens arrest under § 30.05; and states, 'This notice shall remain in effect until it is rescinded in writing.' Its terms converted a single-location event into an official, districtwide, indefinite exclusion.

58. The CTW contains no finding that Plaintiff posed a substantial risk of harm; identifies no particular behavior as inappropriate; records no warning that continuation of identified behavior could result in removal; and documents no persistence after such a warning. It also contains no expiration date, written appeal information, or parental accommodation. Plaintiff therefore alleges that EMSISD lacked authority to issue any exclusion under § 37.105. Without conceding otherwise, the CTW also identifies no fact explaining why an encounter at Greenfield required exclusion from every other District property and function.

59. Lance's written narrative later asserted that Hixon appeared "distraught" and that Plaintiff's "demeanor, stance, and voice" caused Lance to believe Plaintiff was "prepared to strike Flowers." The contemporaneous recording contradicts those assertions. When Lance asked what the problem was, Hixon responded, "No problem. No problem." The certified transcript contains no threat by Plaintiff, and the body-camera video depicts no clenched fist, raised arm, striking motion, forward lunge, or attempted physical contact with Flowers.

60. Lance's own conduct and statements during the encounter further contradict his later danger narrative. Lance never directed Plaintiff to lower his hands, unclench a fist, step away from Flowers, stop threatening Flowers, or cease an attempted assault. Instead, Lance remained in the conversation, discussed Plaintiff's video request, suggested that Plaintiff submit the request by email and copy the superintendent, and stated that the school event was not the proper forum for resolving the dispute. Those statements are inconsistent with a contemporaneous belief that Plaintiff was preparing to strike the principal.

61. When making the arrest, Lance identified only Plaintiff's refusal to leave as the asserted offense, stating, "You refuse to leave. You're under arrest for criminal trespass." When Officer Davis arrived, Lance stated that he did not know all the details of the underlying PTA dispute and again explained the arrest through Flowers's direction to leave and Plaintiff's refusal. Lance

did not tell Davis that Plaintiff had made a threat, clenched a fist, raised an arm, lunged toward Flowers, or attempted to strike anyone. Plaintiff alleges that the “prepared to strike” assertion was a later, unsupported danger characterization used to justify an arrest and District-wide exclusion that had actually been imposed solely because Plaintiff continued requesting his child’s video and disputed Defendants’ authority to remove him.

62. After Lance announced the arrest and told Plaintiff that he was going to jail, Hixon remained actively engaged in the police encounter and asked Lance, “What do you want me to do?” Lance responded, “I’m waiting for another unit to get here, but he’s going to jail.” Hixon’s continued participation after acknowledging that there was “No problem” supports the inference that she was not merely a passive witness but remained available to assist Lance in completing and documenting the arrest.

63. The 2024 arrest and CTW were adverse actions that followed immediately from Plaintiff's protected request for information, objection to withholding his child's video, and insistence on speaking with the responsible school and PTA officials. The selection of an indefinite, all-property restriction from a Greenfield-only encounter, without an identified risk or conduct finding, further supports the inference that the CTW was designed to stop Plaintiff's continuing inquiries and participation rather than address a location-specific safety need.

**C. The criminal case and favorable termination**

64. The EMSISD Police report package identifies Lance as the reporting and arresting officer and identifies Allain as the approving official, auditor, and investigator. The report lists an approval date and audit date of August 12, 2024, and Lance’s narrative separately identifies Allain as the approving supervisor. These official entries establish Allain’s personal participation, under color of state law, in reviewing, approving, and advancing the police account rather than merely receiving the matter after prosecution had begun.

65. The structured report classified the offense exclusively as “Criminal Trespass PC 30.05,” identified Flowers as the alleged victim and later as a witness, identified Hixon as a witness, and recorded Plaintiff as unarmed, “Family Violence: No,” and the offense-entry field as “No Force.” Neither the structured report nor Lance’s narrative mentioned Texas Education Code § 37.105, identified a statutory ground for excluding a parent from school property, prescribed a definite exclusion period, or provided an appeal procedure.

66. Lance's narrative acknowledged that Plaintiff did not resist, either actively or passively, during the handcuffing and arrest. It identified no verbal threat, attempted strike, clenched fist, raised hand, physical contact, weapon, or other objective act demonstrating an imminent assault. Instead, Lance's asserted belief that Plaintiff was prepared to strike Flowers rested only on Plaintiff's "demeanor, stance, and voice." Allain approved and audited the report without identifying any additional objective fact supporting that characterization or correcting the report's exclusive reliance on § 30.05.

67. Allain then created a separate investigative supplement stating that he had reviewed Lance's report and that the elements of criminal trespass were satisfied because Flowers and Lance directed Plaintiff to leave and Plaintiff refused. Allain stated that the case would be presented to the Tarrant County District Attorney. The supplement identifies Allain as its creator and officer but states, "Approving Supervisor: Not approved." The supplement therefore confirms Allain's personal decision to advance the § 30.05 theory for prosecution, while identifying no additional supervisory approval and addressing neither § 37.105 nor the statutory grounds and safeguards governing exclusion from school property.

68. The only contemporaneous basis Defendants identified for arrest was Plaintiff's refusal to obey the direction to leave Greenfield. The recording shows no substantial risk of harm and no identified inappropriate conduct continuing after the behavior-specific warning required by § 37.105. Lance did not articulate an assault-based or safety-based ground during the encounter and expressly based the arrest on refusal alone. Plaintiff alleges that Defendants used the directive itself as the predicate for criminal trespass without first establishing lawful authority to exclude him, then used the resulting arrest to justify a written prohibition reaching every District property.

69. A criminal complaint and misdemeanor information were filed on August 12, 2024. Each identified EMSISD Police as the agency and Flowers as the injured person and alleged owner whose effective consent controlled. Plaintiff alleges that the criminal process was commenced and continued through the account generated by Lance, supported or adopted by Flowers and Hixon, officially approved and audited by Allain, and advanced through Allain's investigative supplement for presentation to the district attorney.

70. The criminal case ended on January 2, 2025, without a conviction. Plaintiff suffered arrest, detention, prosecution, defense burdens, loss of liberty, reputational injury, and the continuing use of the arrest and CTW in school and family proceedings.

**D. The coordinated August 15, 2024 service operation**

71. On August 14, 2024, Jennifer emailed Flowers that the family court had granted an ex parte temporary restraining order and awarded her sole custody; that she had contacted Lance; that Lance would review the orders with Flowers; and that Plaintiff would be served the following day. Jennifer stated that she would contact both Flowers and Lance before service occurred. Flowers replied that he was sorry she had to go through the situation. These communications placed Jennifer, Flowers, and Lance in a direct information and coordination channel before the service operation at Greenfield Elementary.

72. Jennifer's affidavit supporting the requested family-court relief relied on accounts attributed to EMSISD personnel, including allegations that Plaintiff yelled, behaved aggressively, and was believed to be preparing to strike Flowers. Those assertions tracked the same danger characterization contained in Lance's approved report even though the contemporaneous recording captured no threat, attempted strike, or violent act.

73. On August 15, 2024, before the planned service, Plaintiff telephoned EMSISD Police in compliance with the CTW's instruction to contact Captain Grady. Plaintiff sought to update his children's emergency-contact information and arrange to pick up the children on his designated possession day consistent with Texas Education Code § 37.105. Before Plaintiff mentioned any family-court proceeding, Grady asked whether a protective order or temporary restraining order was "out on" Plaintiff. Plaintiff truthfully answered no because he had received no notice, had not been served, and did not know that Jennifer had obtained an ex parte temporary restraining order.

74. While consulting another District employee during the recorded call, Grady stated, "if he hasn't been served, he doesn't know that," and explained that he did not want to disclose the information to Plaintiff. Grady later asked whether Plaintiff had already been served with a protective order during the August 8 arrest and whether Plaintiff had been arrested at Jennifer's residence, stating that this was "the information that I believe that we had." These statements support the reasonable inference that Grady possessed nonpublic information concerning the

family-court proceedings and anticipated service before Plaintiff was approached at Greenfield Elementary by Travis Parmer, Lance, and another EMSISD officer.

75. Grady did not arrange a time, location, or alternative method for Plaintiff to pick up the children. Instead, Grady continued to treat the original August 8 CTW as an indefinite Penal Code § 30.05 prohibition and told Plaintiff that entering District property—even through the vehicle pickup line—would subject him to arrest. Grady did not issue a new CTW; he continued the arrest threat under the original notice while providing no accommodation through which Plaintiff could exercise parental pickup rights without risking arrest.

76. That afternoon, EMSISD Police requested that Greenfield enter a campus 'hold' from 2:46 to 2:48 p.m. while papers were served on an individual adjacent to school property. Flowers's parent notice stated that police were serving the papers and that '[t]here was never a threat' to students or waiting parents. The hold temporarily cleared the halls and kept students in classrooms although the service occurred off campus and no safety threat existed.

77. Plaintiff's contemporaneous video and sworn authentication show Travis Parmer approaching Plaintiff from the Greenfield side while accompanied by Lance and another EMSISD officer. Travis identified himself as 'a functionary of the court' and presented the ex parte temporary restraining order while Plaintiff stood off campus at the pickup location. The officers' escort, police-requested hold, and Grady's advance knowledge occurred at the precise time and place Jennifer had arranged for service.

78. On information and belief, Jennifer and the persons acting for her arranged, directly or through the documented channel, for EMSISD personnel to use Plaintiff's expected child-pickup location and police authority to facilitate service. The known facts supporting that inference are Jennifer's advance email naming Lance and Flowers; Grady's knowledge that Plaintiff had not been served; Plaintiff's disclosure that he was coming for pickup that day; the police-requested campus hold; and Travis's approach with an EMSISD police escort from Greenfield.

79. This episode is pleaded as evidence of the participants' coordinated use of the CTW, school access, police personnel, and family-court process immediately after the arrest. It corroborates Grady's personal administration of the CTW, Flowers's and Lance's continuing participation, and Jennifer's use of state access and authority to advance the same exclusionary course rather than merely receiving neutral police assistance.

80. On August 15, 2024, during the phone conversation, Grady told Plaintiff that Grady controlled access and would decide whether entry resulted in Plaintiff going 'to jail again.' Grady thereby adopted and administered the CTW as an EMSISD Police directive rather than treating it as a completed, officer-specific encounter.

**E. Family-court use of EMSISD allegations and blocked access to contrary records**

81. By the September 2024 family-court proceedings, EMSISD possessed police reports, recordings, communications, and records concerning the arrest and Reflections video. Subpoenas had been issued to the EMSISD custodian of records, Flowers, and Lance, but the responsive materials were not produced before District witnesses testified. Plaintiff was therefore denied the conflicting records needed to test their accounts, establish what the contemporaneous recording captured, and demonstrate the absence of conduct satisfying § 37.105. Plaintiff timely requested de novo review, but Nevarez did not conduct the requested hearing within the applicable thirty-day period. Plaintiff alleges that EMSISD's withholding allowed its untested narrative to be carried into the family proceeding and used to restrict Plaintiff's relationship with his children. Despite those restrictions, Plaintiff still has educational rights as of the date of this filing.

82. On September 24, 2024, DeAngelis issued an Associate Judge's Report based on the evidence presented at the September 20 and September 23 hearings. The report awarded Jennifer the exclusive right to make educational decisions and ordered that Plaintiff's access to the children be arranged and supervised through Family Court Services, including exclusion from sports and school activities, without a finding of family violence. The report was filed on September 27, 2024. The restrictions thus incorporated consequences from the EMSISD account before Plaintiff had obtained the District records necessary to test that account.

83. Plaintiff thereafter pursued the underlying EMSISD records through both family-court subpoenas and the Texas Public Information Act. Plaintiff's counsel served the Greenfield Elementary custodian of records with a subpoena on January 7, 2025, seeking communications between school officials and the parties concerning Plaintiff and the children. As stated in Plaintiff's March 3 motion to compel, the custodian had provided neither a response nor responsive documents.

84. On January 20, 2025, Plaintiff submitted a Public Information Act request for the August 8 police and school records, including body-camera footage, campus video, police documentation, and communications among EMSISD Police, Flowers, Grady, and Lance.

EMSISD produced forty-seven pages on January 31 but withheld thirty-one additional pages pending an Attorney General ruling. EMSISD also directed Plaintiff to make appointments on District property to view or obtain video even though the District continued to maintain that Plaintiff risked arrest by entering its property.

85. On January 31, 2025, Plaintiff submitted a second request seeking internal and external communications concerning his children among District officials, police personnel, and PTA participants, including Flowers, Lance, Horton, Hixon, and Jennifer's relatives employed by or connected to EMSISD. EMSISD treated that request as received on February 3, requested clarification on February 7, and later demanded approximately $21,540.40 to produce the responsive material. The requested communications concerned the same relationships, arrest, exclusion, and family-court allegations already being used against Plaintiff.

86. After the professional relationship between Jennifer's attorney Elizabeth 'Betsy' Parmer and presiding 231st District Judge Jesus 'Jesse' Nevarez Jr. was disclosed, Parmer withdrew from Jennifer's representation on February 18, 2025, and Laurie Robinson was substituted as Jennifer's counsel. 231st District Judge Nevarez failed to disclose that he had retained Parmer in his defense in State Commission on Judicial Conduct (SCJC) proceedings in regards to sexual harassment claims made by his former Associate Judge, Lindsay DeVos. This tainted the family court proceedings, and Plaintiff filed his own complaint with the SCJC.

87. On February 27, 2025, EMSISD Director of Policy and Information Management Philo Waters acknowledged that Plaintiff's child had delivered the Reflections video to a District teacher, that the teacher transferred it to the PTA for the contest, and that the original USB was later returned to Jennifer. After Plaintiff's repeated requests, Waters located another saved copy through a PTA-associated person, attached it to his official response, and apologized "on behalf of the district" for how long EMSISD had taken to locate it. The response confirms that the video had passed through District-employee and PTA channels before the arrest and that EMSISD ultimately possessed and produced a copy. In the same response, Waters maintained that the police-issued CTW was unappealable and directed Plaintiff to enter District property by police appointment to obtain body-camera footage and pursue his complaint.

88. On or about February 28, 2025, Plaintiff's counsel served Flowers, Lance, teacher Larissa Horton, and EMSISD with subpoenas requiring the production of records and their appearance and testimony at the March 13 family-court hearing. The requested materials concerned the

August 2024 arrest, the Reflections video, and related communications. The subpoenaed records had not been produced before EMSISD moved to quash the subpoenas.

89. On March 1, 2025, after receiving Jennifer's supplemental discovery responses, Plaintiff notified Waters and Superintendent Hollingsworth that Jennifer had served as a Greenfield PTA board member and Donations Chair during the relevant period. Plaintiff again asked Waters to identify the teacher who initially received the video, the PTA participant from whom Waters obtained it, and the communications connecting Jennifer, Flowers, Hixon, and the video. Waters did not provide those identities or communications.

90. On March 3, 2025, Waters responded that the video had not been possessed by a Greenfield employee or Greenfield PTA parent, stated that he obtained it from an unidentified 'PTA person not associated with Greenfield,' and declared the video, CTW, and related matters closed except for the pending information request. That same day, Plaintiff moved in the family case to compel the Greenfield custodian's compliance with the January subpoena.

**F. The blocked grievance, subpoena, and records-review paths**

91. On March 6, 2025, Plaintiff submitted his complaint to the Texas Education Agency and received an automated acknowledgment. On March 7, he filed an FNG(LOCAL) Level I grievance challenging the CTW, the continuing arrest threat, the withheld video and records, and the interference with his parental and educational rights. On March 9, TEA formally confirmed receipt and assigned Complaint No. 2025-03-0128.

92. On March 12, 2025, Alford appeared for Flowers, Lance, Horton, and EMSISD and moved to quash the subpoenas requiring them to produce records and testify the following day. EMSISD's motion acknowledged that District personnel had previously been subpoenaed for hearings on August 26, September 20, November 25, January 29, and March 13. The motion sought protection from further production and testimony and tied production to the same disputed $21,540.40 records estimate. The result was that EMSISD witnesses had supplied allegations in the family proceeding while Plaintiff remained unable to obtain the police, video, and communications evidence necessary to test those allegations.

93. Waters, acting through the District grievance system and for the Superintendent, did not schedule or conduct the Level I conference required by FNG(LOCAL). He dismissed the grievance without a conference or merits review, maintained that the police CTW was

unappealable because of its label, copied Superintendent Hollingsworth, and closed the issue on EMSISD's behalf despite Plaintiff's express invocation of § 37.105.

94. On March 31, 2025, TEA informed Plaintiff that it had requested EMSISD contact him to address his concerns. Plaintiff responded that EMSISD had not addressed the complaint, had denied him a Level I conference, and continued to provide no appeal from the CTW.

95. Plaintiff timely pursued Level II review. EMSISD Associate Superintendent Walter Berringer conducted the Level II conference on April 14, 2025, and issued the Level II decision on April 29, 2025. Although the decision referred to Level III review, EMSISD continued to characterize the exclusion as a Penal Code § 30.05 police matter and provided no accommodation through which Plaintiff—while still threatened with arrest on District property—could appear before the Board. The District's position therefore denied Plaintiff meaningful access to Level III review.

96. The no-review position made the statutory remedy impossible by design. FNG(LOCAL) was the Board-adopted route required for a § 37.105 appeal, yet EMSISD used the '§ 30.05' label to bar that route while simultaneously treating the same District instrument as sufficient to arrest Plaintiff at every District property, including the Administration Building where the Board meets.

97. On May 12, 2025, TEA referred the allegations to its Compliance Review Unit, again directed Plaintiff to EMSISD's local grievance process, and identified the Office of the Attorney General as the appropriate agency for his public-records allegations. Despite that intervention, EMSISD maintained that the CTW was unappealable, supplied no Level I merits hearing, and left the exclusion in force after Level II review.

98. After Plaintiff filed an open-records complaint, the Texas Attorney General assigned Complaint No. OR-25-007983-CC. On November 21, 2025, the OAG determined that EMSISD's original estimate was deficient under Government Code § 552.2615; rejected charges for reviewing records to determine whether exceptions applied, unnecessary printing of electronic records, and duplicate information; required a sample test and recalculation if the relevant work remained incomplete; and directed EMSISD to send Plaintiff a compliant amended statement within five business days. EMSISD did not transmit an amended statement within that deadline. Alford sent a revised estimate on December 4, 2025, which Plaintiff challenged as continuing the identified defects, and the requested records remained unproduced. Plaintiff's

efforts through TEA and the OAG therefore failed to produce meaningful administrative review, rescission of the CTW, or access to the requested records.

**G. Continuing family-court information channel and August 2026 monitoring operation**

99. Alford continued representing Flowers, Lance, Horton, and EMSISD in the family proceeding concerning the subpoenas for records and testimony about the August 2024 arrest and the Reflections video. On May 16, 2025, she filed a motion to sign an order on the motion to quash. The ensuing rulings quashed subpoenas and awarded monetary relief to District witnesses. Her participation established an institutional channel through which EMSISD personnel, records, and legal positions entered the family proceeding.

100. Nevarez later recused from the remaining proceedings on July 22, 2025, but the temporary restrictions originating from the August and September 2024 proceedings remained in force. There was no acknowledgement of the notable conflicts regarding judges in Plaintiff's family cause, and Plaintiff has been denied access to his children entirely since May 2025 without any finding of family violence in violation of law.

101. Public judicial records identify Robinson and DeAngelis as joint petitioners and appellants in DeAngelis v. Protective Parents Coalition, where they were represented by Jim Ross. The Jim Ross Law Group later publicly identified Alford as one of its family-law attorneys during the period in which DeAngelis and Robinson retained that firm. Alford subsequently became counsel for EMSISD through Leasor Crass and entered Plaintiff's family proceeding on behalf of EMSISD personnel whose conduct and records were being used against Plaintiff.

102. Plaintiff pleads these overlapping representation and judicial relationships to establish the means by which EMSISD allegations and nonpublic records were transmitted into the family proceeding, the participants' knowledge and motive, and the resulting continuing injury. Plaintiff does not request appellate review or reversal of a state-court custody order in this action.

103. On March 10, 2026, Alford attended a family hearing, although EMSISD was not a party. When asked her capacity, she stated: 'I'm here as a lawyer. I represent Eagle Mountain-Saginaw ISD.' She discussed her representation of EMSISD and her prior work quashing the subpoenas.

104. The family court stated that Alford was not a party, described her as a potential witness, confirmed that she had not been subpoenaed, and permitted her to leave. Immediately before the hearing, Plaintiff personally observed and photographed Alford in a private room meeting with Jennifer and Jennifer's counsel Laurie Robinson. The photograph depicts the three together in

that separate room before Alford entered the courtroom and announced that she was present as EMSISD's lawyer.

105. During the same hearing, Robinson admitted possessing Alford's telephone number. Plaintiff asked Robinson whether Alford had just been present in the other room with Robinson and Jennifer. Robinson objected, and the court sustained the objection before Robinson answered. The photograph independently corroborates Plaintiff's personal observation of the private prehearing meeting; the pleaded inference does not rest on the unanswered question.

106. A May 28, 2026 amended family filing again relied on the August 2024 arrest and EMSISD accounts to seek Plaintiff's exclusion from school activities. Alford's photographed private meeting with Jennifer and Robinson immediately before her nonparty appearance, her representation of the District witnesses, Robinson's admitted direct contact information for Alford, and the renewed use of EMSISD police assertions in family court plausibly support a continuing channel through which official school-police information was coordinated for private litigation use.

107. On August 10, 2026, at 5:17 p.m., Jennifer emailed Grady the current family-court temporary orders and Family Court Services correspondence, introducing the materials with the words, "As requested." Her statement shows that Grady had asked her to provide those family-court records. At 5:20 p.m., Jennifer separately forwarded Plaintiff's same-day Facebook post because she wanted Grady and his "officer's [sic] to be aware." Grady acknowledged the transmissions by replying, "Thank you." These emails show that Jennifer and Grady were exchanging family-court and social-media information about Plaintiff immediately before EMSISD Police enforced the CTW on August 11.

108. On August 11, 2026, at 2:58 p.m., while preparing to enforce the CTW at Meet the Teacher Night, Lance asked Jennifer, 'Anything since this?' and requested Plaintiff's latest vehicle, whether his parental rights had been severed, whether he had a pistol, and whether Jennifer would attend that night. Jennifer answered each subject: she summarized the temporary orders and visitation status, described vehicles, stated that Plaintiff had received a 9mm Glock in the divorce but that she did not know whether he still possessed it, transmitted the orders, and confirmed that she would not attend. Lance answered, 'Ok. Thank you.'

109. At approximately 4:00 p.m. that day, Jennifer left Lance a voicemail stating that she had learned Plaintiff would be attending Greenfield's Meet the Teacher event and asking Lance to

call her. The message identified no imminent threat, unlawful entry, or emergency. Because it anticipated Plaintiff's attendance before his arrival and followed the prior communications and service operation involving Jennifer and EMSISD personnel, Plaintiff alleges that the message continued a monitoring and enforcement channel directed at his expected presence.

110. Later that day, Lance used the CTW to seize Plaintiff at the school entrance. On August 21, 2026, Jennifer, through counsel Laurie D. Robinson, served her Fifth Supplemental Responses and a Bates-numbered production identified as JR005757–JR005998. That production included an exhibit book whose index and pages repeatedly bear the footer 'Exhibit Book – Randles – Report 260002245' and contain internal police-related material concerning the EMSISD matter. The production identifies no outside or public source, and Plaintiff did not supply the material to Jennifer or Robinson.

111. Plaintiff alleges that EMSISD personnel transmitted or caused the transmission of nonpublic materials bearing Police Report No. 260002245 to Jennifer or Robinson for use in the family proceeding. Lance originated the investigation; Grady supervised the operative police response; and Alford represented the involved EMSISD personnel, had direct access to District witnesses and records, and met privately with Jennifer and Robinson immediately before the hearing. By August 21, 2026, Jennifer or Robinson possessed report-numbered materials that originated within EMSISD's investigative system and that Jennifer could not independently have created. The exact transmitting participant and route remain within Defendants' exclusive records, but the identified custody, access, communications, private meeting, and subsequent litigation use plausibly establish coordinated transmission.

### H. Renewed enforcement and the August 11, 2026 seizure

112. On August 7, 2026, Sergeant Calene McDonald warned Plaintiff that the CTW remained active for the August 11 Meet the Teacher Night and copied Grady and Lance. Plaintiff responded in writing that the District lacked cause and that the school exclusion omitted the safeguards and exceeded the two-year limit imposed by Education Code § 37.105.

113. On August 10, after receiving Plaintiff's statutory objection and request to attend the parent event, Grady wrote that Plaintiff would be arrested if he entered Greenfield 'for that event or any reason until the notice is rescinded.' Grady did not identify new conduct or a new source of authority.

114. At no relevant time did Defendants document that Plaintiff posed a substantial risk of harm or identify particular inappropriate behavior, warn that continuation of that identified behavior could result in removal, and then observe Plaintiff persist in that behavior. Nevertheless, EMSISD treated the CTW as permanent, denied meaningful review, and continued threatening arrest under § 30.05 beyond § 37.105's maximum term. Defendants then used that same purported authority to seize Plaintiff on August 11, 2026, while he was attempting to exercise parental rights.

115. On August 11, Plaintiff stood at Greenfield's front entrance to attend Meet the Teacher Night. He was unarmed, made no threat, and was not moving toward Lance. Lance blocked the door, put his hands on Plaintiff, invoked only the 2024 CTW, and announced enforcement without identifying new misconduct or a lawful ground for withdrawing the open-event invitation.

116. Lance grabbed Plaintiff's shirt and pulled him toward the officer while announcing an arrest. The grab initiated physical custody before any new offense and was an intentional seizure unsupported by the CTW. Plaintiff raised his hands to block Lance's grip, disengaged, turned away, and moved away from the officer.

117. With Plaintiff's back facing him and Plaintiff moving away, Lance fired the Taser into Plaintiff's back. The discharge incapacitated Plaintiff, caused him to fall, injured his right arm and hand, and scraped other parts of his body. As the first wires dislodged during the fall, Lance immediately fired a second cartridge without reassessing any threat; it missed. Lance and Officer Davis then pursued Plaintiff on foot.

118. The CTW remains unrescinded. Plaintiff intends to attend future open Board meetings and recurring parent events, conferences, school activities, and arranged inspections involving his children's education. Defendants' continuing assertion that entry for any reason risks arrest creates an actual and imminent controversy.

### I. The federal filing, actual notice, later charges, and report dissemination

119. Plaintiff filed this federal action on August 13, 2026. The original verified complaint challenged the CTW, the 2024 arrest and prosecution, the renewed arrest threat, and the August 11 enforcement event.

120. On August 16, 2026, at 4:02 p.m., Plaintiff emailed Superintendent Hollingsworth, Grady, Lance, and EMSISD counsel. The message expressly provided actual written notice of

this federal action and attached filed, docket-stamped copies of the verified complaint and the Rule 65 motions, briefs, and appendix. The message identified the case number, the requested relief, and the asserted constitutional grounds. No transmission-failure notice was received.

121. The August 16 notice establishes that Lance, Grady, and EMSISD knew of the pending federal case before the later formal charging and family-production events. The August 11 seizure preceded the federal filing and is pleaded as retaliation for Plaintiff's earlier speech, grievances, records requests, statutory objections, and protected parental activity. The later charging, report-transfer, and collateral-use allegations concern conduct after the federal case and notice.

122. On August 20, 2026—four days after Lance, Grady, and EMSISD received direct notice of this federal action—Robinson's billing records state that she reviewed Plaintiff's new criminal charges and magistrate warning. On August 21, Robinson served Jennifer's supplemental family-case discovery expressly identifying 'Police Offense Report No. 260002245' and produced the report-numbered exhibit book. Those events occurred before the complaint and information were formally filed with the county clerk on August 24.

123. The official county case-status record shows that on August 24, 2026—eight days after Lance and EMSISD received the federal complaint and Rule 65 papers—EMSISD Police filed Report No. 260002245 in Tarrant County cause 1934985 for alleged evading arrest or detention and criminal trespass arising on August 11. It further shows bonds issued on August 30 in the amounts of $1,500 and $1,000, each with conditions. The charging papers identify EMSISD Police as the agency and Lance as the officer, injured person, and asserted owner.

124. The precise dates, participants, and transmission paths remain principally within Defendants' possession. The August 20 review predating the county filing, Defendants' direct notice of this federal action, the later disclosure of Report No. 260002245 in family-court discovery, the appearance of EMSISD-generated material in that production, and the surrounding communications support a reasonable inference that EMSISD personnel transmitted nonpublic investigative material through the existing family-court information channel after receiving notice of this action.

125. The 2026 prosecution remains pending. Plaintiff pleads the charges, bond obligations, conditions, defense expense, and associated liberty restraint as adverse action, injury, and an overt act supporting the retaliation and conspiracy counts. He does not plead a completed Fourth

Amendment malicious-prosecution claim concerning that pending case and reserves amendment or supplementation if it terminates without a conviction.

## V. CLAIMS FOR RELIEF

### COUNT I – FIRST AMENDMENT SPEECH, PETITION, AND RETALIATION (EMSISD, GRADY, LANCE, FLOWERS, WATERS, HOLLINGSWORTH SOLELY FOR PROSPECTIVE OFFICIAL-CAPACITY RELIEF, AND JOINT ACTORS SPECIFIED IN COUNTS VIII AND IX)

126. Plaintiff's requests for his child's Reflections video and educational records, objections to District teaching and withholding of information, grievances, public-information requests, challenges to the CTW, comments and intended comments at open Board meetings, family-court filings, and this federal action were protected speech and petition activity.

127. Defendants subjected Plaintiff to arrest, prosecution, an indefinite districtwide physical exclusion, denial of ordinary parental access, elimination of the grievance route, continuing arrest threats, a second seizure, Taser force, conditional bonds, and collateral use of police information. Those actions would deter a person of ordinary firmness from continuing the protected activity.

128. Lance and Flowers converted the Reflections request into arrest and exclusion immediately after Plaintiff demanded the withheld video. Waters closed the prescribed grievance route after Plaintiff challenged that exclusion. Grady continued the arrest threat after Plaintiff invoked § 37.105, requested an arranged child pickup, and objected in writing. Lance later enforced the same CTW after Plaintiff's grievances, records requests, and litigation.

129. The absence of recorded danger, Hixon's statement that there was 'No problem,' the later false danger narrative, and the immediate conversion of a Greenfield dispute into an indefinite all-property exclusion support pretext. That inference is reinforced by the coordinated August 2024 service operation, denial of records and review, 2026 monitoring operation, and renewed enforcement after written notice. Together, those facts plausibly show that the asserted safety rationale did not drive Defendants' conduct and that Plaintiff's protected activity was a substantial or motivating factor.

130. Plaintiff filed this action on August 13, 2026. On August 16, he directly supplied EMSISD, Hollingsworth, Grady, Lance, and District counsel with the filed complaint and Rule 65 papers. The later formal charging, EMSISD-influenced bond conditions, and appearance of report-numbered police material in Jennifer's family production were materially adverse post-

notice acts. Their timing and continuity with the documented monitoring and enforcement channel support retaliatory causation.

131. The arrests, prosecutions, exclusion, record withholding, and renewed enforcement lacked probable cause or other lawful justification. The contemporaneous recording captured no threat or attempted strike; the CTW omitted the factual predicates and procedural protections required by § 37.105; the 2024 prosecution ended without a conviction; and the same defective exclusion was enforced again after its statutory maximum term. Independently, the unexplained choice to impose the maximum geographic scope from a single-campus encounter supports the inference that Defendants intended to suppress Plaintiff's future participation and criticism throughout EMSISD. Defendants' departures from the governing statute, escalation after protected activity, and selective use of District police power plausibly establish but-for causation.

132. Hixon is liable under this Count to the extent Count VIII establishes that she willfully joined the conversion of the protected Reflections request into arrest, exclusion, and prosecution. Jennifer is liable to the extent Count IX establishes that she willfully joined the 2026 monitoring and enforcement operation. Alford is liable only to the extent Count IX establishes her willful participation in the coordinated use of official EMSISD information to perpetuate the retaliatory consequences.

133. EMSISD is liable through the policies, decisions, ratification, and customs alleged in Count VI. Grady, Lance, Flowers, and Waters are liable for their personal acts under color of law. Hollingsworth is sued under this Count solely in his official capacity to implement prospective relief ending the continuing exclusion and its retaliatory effects.

134. Plaintiff seeks compensatory and nominal damages from the liable parties, punitive damages from the individuals whose conduct satisfies the governing standard, and declaratory and prospective relief against EMSISD and Hollingsworth in his official capacity.

## COUNT II – FIRST AND FOURTEENTH AMENDMENTS: FREE EXERCISE AND PARENTAL DIRECTION (EMSISD, GRADY, LANCE, FLOWERS, WATERS, AND HOLLINGSWORTH SOLELY FOR PROSPECTIVE OFFICIAL-CAPACITY RELIEF)

135. Plaintiff's sincere Christian practice includes the duty to direct his children's moral and religious upbringing, review what they are taught and create at school, communicate with their educators, attend conferences and activities, retrieve and accompany his children, and remain physically present in their educational lives. Those activities are exercises of religion and parental direction, not a generalized demand to control the District's curriculum.

136. The challenged policy denies the physical access required to perform those duties. It excludes Plaintiff from every EMSISD property, including his children's schools, open parent events, conferences, activities, Board meetings, arranged records inspections, and school pickup, under an immediate threat of arrest. The burden reaches Plaintiff's religious exercise, parental direction, and actual physical participation in his children's education.

137. Flowers and Lance imposed the original physical barrier. Grady administered it, refused to arrange the requested pickup, and continued it beyond two years. Waters denied the grievance route through which the burden could be reviewed. EMSISD maintained the all-property and police-permission policy after repeated notice. Each Defendant knew that Plaintiff's protected parental and religious inquiries preceded and were obstructed by the exclusion.

138. Section 37.105 permits exclusion only upon the statute's specified grounds and procedures. It requires either a substantial risk of harm or identified inappropriate behavior followed by a warning that continuation may result in removal and persistence in that identified behavior. It also requires a record of the warning, written appeal information, the specified parental accommodations, and a definite maximum term. Defendants documented none of those predicates, yet used § 30.05 to impose a functionally permanent physical ban that prevented Plaintiff from entering District property, picking up his children, participating in their education, and exercising his parental and religious responsibilities.

139. The burden is substantial and continuing. Plaintiff must either abandon physical participation in his children's education and the information needed to guide their religious upbringing or enter District property under threat of arrest, detention, and force. The later family-court restrictions do not eliminate the independent injury caused by EMSISD's CTW or its interference with access otherwise available under existing parental rights and lawful court orders.

140. The exclusion cannot survive the applicable constitutional review. Defendants identified no substantial risk, persistent warned behavior, current individualized assessment, definite term, meaningful review, or objective access standard. Without conceding that removal from Greenfield was lawful, even an immediate Greenfield removal would not explain an indefinite prohibition reaching every EMSISD property and every form of parental participation. Conduct-specific, time-limited, and location-responsive measures were available, but Defendants selected and maintained the maximum restriction without a corresponding safety finding.

141. EMSISD is liable as alleged in Count VI. Grady, Lance, Flowers, and Waters are liable for their personal participation. Hollingsworth is sued solely in his official capacity to implement prospective access and compliance. Plaintiff seeks compensatory and nominal damages, punitive damages against the liable individuals, and declaratory and prospective relief.

## COUNT III – FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS (EMSISD, GRADY, LANCE, FLOWERS, WATERS, AND HOLLINGSWORTH SOLELY FOR PROSPECTIVE OFFICIAL-CAPACITY RELIEF)

142. EMSISD deprived Plaintiff of protected liberty interests in parental care and physical participation, speech, petition, religious exercise, and freedom from an official districtwide legal disability enforced by arrest. The CTW altered Plaintiff's status by converting one Greenfield encounter into a prohibition against entry to every District property and conditioning ordinary parental access on discretionary police permission.

143. Plaintiff possessed a state-created entitlement not to be excluded from District property unless the substantive conditions imposed by Texas Education Code § 37.105 were satisfied. That statute materially constrained Defendants' discretion by requiring a substantial risk of harm or identified inappropriate behavior followed by a behavior-specific warning and persistence in that behavior, and by requiring written appeal information, parental accommodations, and a term not exceeding two years. Plaintiff also possessed concrete statutory entitlements to eligible educational records and responsive nonexempt public information concerning his children. Plaintiff pleads the withheld records, ignored subpoenas, and obstructed grievance procedures not as freestanding constitutional interests, but as process denied, evidence of the risk of erroneous deprivation, and prejudice preventing him from meaningfully challenging the continuing exclusion and resulting interference with his parental rights.

144. The withheld materials included evidence necessary to test the District's asserted justification for Plaintiff's arrest and exclusion, the conflicting accounts of Lance, Flowers, and Hixon, the handling of the Reflections video, communications concerning Plaintiff's arrival and service, and the transmission of EMSISD information into the family proceeding. Their withholding increased the risk of erroneous deprivation, prevented meaningful confrontation of District witnesses, and concealed evidence supporting Plaintiff's allegations of coordination among EMSISD personnel, Jennifer, and the other private participants.

145. EMSISD also denied meaningful process through its grievance system. Waters characterized the police CTW as unappealable; Berringer affirmed the exclusion while treating it

as a Penal Code matter; and the District provided no workable means for Plaintiff, who remained threatened with arrest on District property, to appear before the Board for Level III consideration. A nominal reference to another review level did not provide meaningful process when EMSISD simultaneously maintained that the exclusion fell outside the statutory appeal procedure and offered no accommodation permitting Plaintiff to use it.

146. The CTW failed to provide constitutionally or statutorily adequate notice of the basis, duration, and means of review. It did not identify conduct constituting a substantial risk, specify behavior deemed inappropriate, warn that continuation of identified behavior could result in exclusion, state a definite duration, provide written appeal instructions, or describe any parental accommodation. The oral direction to leave Greenfield did not identify the behavior allegedly satisfying § 37.105 and did not explain why Plaintiff would thereafter be barred from every EMSISD property and function.

147. The risk of erroneous deprivation was not hypothetical. The contemporaneous recording contradicts material parts of the later police narrative; Hixon expressly said there was "No problem"; no threat or attempted strike was recorded; the District's own report recorded "No Force"; Allain advanced the charge through an unapproved supplement; and EMSISD withheld records capable of exposing those conflicts while its personnel testified in other proceedings. Those facts demonstrate both the need for the omitted safeguards and the resulting prejudice when they were denied.

148. The required safeguards imposed little administrative burden. Defendants could have identified the allegedly inappropriate conduct, provided and recorded the behavior-specific warning required by § 37.105, stated a lawful duration, supplied appeal instructions, accommodated Plaintiff's parental access, and provided meaningful grievance review. If Defendants believed some restriction remained necessary, they also could have connected its geographic and functional reach to current, identified conduct. Instead, EMSISD bypassed those procedures and treated a single-campus directive as a permanent, districtwide, and unreviewable disability.

149. Calling the instrument a "§ 30.05 CTW" did not supply due process. EMSISD treated it as official enough to alter Plaintiff's legal status and command arrest but outside District authority whenever Plaintiff invoked the review protections enacted for that precise school-exclusion device.

150. EMSISD is liable under Count VI. Grady, Lance, Flowers, and Waters are liable for the process each personally denied or perpetuated. Hollingsworth is sued solely in his official capacity to implement prospective process, access, record-production, and correction relief. Plaintiff seeks compensatory and nominal damages, punitive damages against the liable individuals, and declaratory and prospective relief.

**COUNT IV – FOURTH AMENDMENT UNREASONABLE SEIZURE AND ARREST WITHOUT PROBABLE CAUSE (GRADY AND LANCE)**

151. Lance intentionally seized Plaintiff by blocking him, grabbing his clothing, pulling him toward the officer, announcing arrest, and applying Taser force. Grady caused and authorized the seizure by directing enforcement of the existing CTW before the event and maintaining that directive after receiving Plaintiff's statutory objections.

152. The August 11, 2026 seizure lacked probable cause. The original CTW did not establish either substantive predicate required by § 37.105, omitted the statute's notice and review protections, and had been enforced beyond the maximum period authorized by the Legislature. Defendants could not manufacture probable cause in 2026 merely by continuing to assert an exclusion that the controlling school-access statute did not authorize.

153. Penal Code § 30.05 supplies the general criminal-trespass offense, but Education Code § 37.105 specifically governs when a school administrator or school police officer may refuse a parent entry to, or eject a parent from, school property. The Legislature's 2017 enactment would have no effect if school officials could evade every substantive limitation, appeal right, accommodation requirement, and maximum term by labeling the same exclusion a § 30.05 withdrawal of consent. A purported withdrawal resting entirely on an unauthorized school exclusion could not independently create probable cause.

154. Defendants possessed no independent basis for arrest. Plaintiff contacted Grady in accordance with the CTW instructions and sought arrangements to pick up his children. Grady instead refused to facilitate pickup, maintained the arrest threat, and later used information obtained through that request to anticipate Plaintiff's arrival. On August 11, Plaintiff was attempting to exercise parental pickup rights; the alleged offense depended entirely on continued enforcement of the original defective CTW.

155. Plaintiff's reaction after Lance initiated the unlawful seizure could not retroactively create probable cause for the seizure itself. Probable cause must exist when the officer restrains

liberty. Plaintiff's effort to disengage from an arrest unsupported by an enforceable exclusion therefore cannot supply the missing statutory authority or retrospectively validate Lance's initial pursuit and seizure.

156. The unlawfulness was clearly established by August 2026. The Fourth Amendment had long prohibited arrest without probable cause, and § 37.105 gave school officials direct, specific notice of the findings, warning, record, appeal, accommodation, and duration required to exclude a parent from school property. No reasonable school officer could believe that an undocumented and effectively permanent exclusion remained enforceable after the statutory maximum term, particularly after receiving written notice of the defects. Even absent a reported case reproducing every fact alleged here, this is an obvious application of established Fourth Amendment principles to explicit statutory limits on Defendants' authority.

**COUNT V – FOURTH AMENDMENT EXCESSIVE FORCE (LANCE)**

157. Lance acted under color of law when he intentionally grabbed Plaintiff, pursued him, fired a Taser into his back, immediately discharged a second cartridge, and caused additional officers to search for him beyond the campus. Because the seizure rested on no valid CTW, lawful detention, or probable cause, Lance possessed no lawful enforcement interest supporting the degree of force used.

158. Plaintiff was unarmed, made no threat, did not advance toward Lance, and attempted to disengage from the unauthorized seizure. The suspected offenses were nonviolent misdemeanors resting on the same defective CTW. Those circumstances presented no immediate threat warranting intermediate force.

159. Lance fired into Plaintiff's back as Plaintiff turned and moved away from him. After the first wires dislodged during Plaintiff's fall, Lance immediately fired a second cartridge without pausing to reassess any threat. The back shot, immediate second discharge, continued pursuit, and neighborhood search were disproportionate to any legitimate governmental need.

160. The force was an intentional, unprivileged application of physical violence under asserted police authority. The absence of statutory authority and probable cause reinforces the objective unreasonableness of using a Taser to enforce the District's expired exclusion, while the force claim remains independently governed by the circumstances confronting Lance when he fired.

161. The force caused electrical incapacitation, a fall, injury to Plaintiff's right arm and hand, scrapes, pain, humiliation, emotional injury, and other damages. The second discharge and continued pursuit also prolonged the seizure and danger after Plaintiff had disengaged.

162. Plaintiff seeks compensatory and nominal damages, punitive damages, and declaratory relief against Lance.

**COUNT VI – MUNICIPAL LIABILITY UNDER MONELL (EMSISD; HOLLINGSWORTH SOLELY FOR IMPLEMENTATION OF PROSPECTIVE OFFICIAL-CAPACITY RELIEF)**

163. The EMSISD Board of Trustees is the District's final policymaker under Texas law. It holds exclusive governance authority, adopts District policy, commissions District peace officers, and defines their jurisdiction. The Superintendent administers those policies and District operations under Board authority, and the challenged official CTW expressly states Superintendent authorization.

164. The printed EMSISD CTW embodies districtwide policy choices on its face. It converts an encounter at one campus into a prohibition covering every District property, requires centralized police permission for each return, supplies no expiration or statutory ground, and threatens arrest until EMSISD rescinds it in writing. The instrument states that the Superintendent authorized EMSISD Police to issue it. It was an official District form and policy mechanism, not a private owner's isolated request or one officer's improvised notice.

165. Board-adopted GKA and FNG(LOCAL) supplied the exclusion and grievance framework. Waters acted through that framework for the Superintendent, declared the police-issued CTW outside meaningful review, copied Hollingsworth, and closed the issue on the District's behalf. Grady exercised the centralized police control over physical access created by the CTW and continued the arrest threat beyond the statutory maximum.

166. The challenged practice was implemented through multiple levels of District authority. Flowers initiated the Greenfield exclusion; Lance arrested Plaintiff, issued the districtwide CTW, and prepared the report; Allain approved and audited the report and prepared the supplement for prosecution; Grady administered the continuing arrest threat; Waters denied Level I review for the Superintendent; Berringer sustained the District's position at Level II; and Hollingsworth received notice while the policy remained in force. This implementation chain shows an institutional course of conduct, not an isolated mistake by one officer.

167. Repeated institutional conduct confirms deliberate implementation. District personnel routed ordinary parental access through police; EMSISD Police assisted family-court service at the anticipated pickup location; District witnesses used the exclusion narrative while responsive records were withheld; the grievance system denied complete review; and police again enforced the same CTW after two years. At each stage EMSISD treated the written instrument's districtwide scope as operative without identifying a risk or conduct finding extending beyond the original Greenfield encounter.

168. The District also maintained practices of substituting Penal Code § 30.05 for Education Code § 37.105, failing to identify lawful cause and duration, denying meaningful Board review, and withholding or delaying material records. Waters later admitted that the Reflections video had passed through a District teacher and the PTA, obtained another saved copy through a PTA-associated source, and apologized on behalf of EMSISD for the delay. Yet the video, related communications, arrest recordings, and other responsive materials had not been provided when Plaintiff sought them before the arrest or when District witnesses later testified. These institutional acts, followed by continued enforcement after written notice, support deliberate implementation, concealment of contradictory evidence, and ratification rather than an isolated records error.

169. Plaintiff alleges municipal liability through the officially used CTW form and exclusion practice; decisions and ratification by officials possessing final or delegated authority; the District's failure to train personnel on § 37.105 after the Legislature imposed detailed requirements; and deliberate continued enforcement after senior officials received actual notice of the defects. Plaintiff's primary theory is that EMSISD had no lawful basis to exclude him. Alternatively and without concession, the District's policy choice to convert one campus encounter into an indefinite all-property restriction without findings or review was itself a moving force behind the retaliatory, viewpoint-based, and procedural injuries.

170. Those policies and decisions were moving forces behind Plaintiff's First, Fourth, and Fourteenth Amendment injuries, including physical exclusion from his children, viewpoint discrimination, denial of process and records, arrest, prosecution, force, and continuing collateral restraints. The challenged constitutional injuries arise from the District's adoption and implementation of the exclusion mechanism, not from § 37.105 standing alone.

171. Plaintiff seeks compensatory and nominal damages, declarations, rescission, corrective notice, record correction, training, and prospective injunctive relief against EMSISD. Hollingsworth is sued solely in his official capacity as the official responsible for administering and implementing prospective District compliance; no individual-capacity damages are sought from him.

**COUNT VII – FOURTH AMENDMENT MALICIOUS PROSECUTION (LANCE, FLOWERS, ALLAIN, AND HIXON AS A JOINT ACTOR)**

172. Lance, Flowers, Allain, and Hixon caused or continued the 2024 criminal-trespass proceeding. Lance arrested Plaintiff and generated the materially misleading report; Flowers supplied the essential owner-and-consent allegation; and Allain reviewed, audited, supplemented, and advanced the case for prosecution. Hixon supplied the initiating private-party participation and was formally identified as a witness in the police report, which incorporated her account and conduct into the official investigative record. Before August 8, Hixon was PTA President, knew of Plaintiff's repeated requests for the Reflections video, and was present when Plaintiff requested the video directly at the July 2024 Board meeting. Jennifer, then serving as a PTA officer, was another person from whom Hixon could have requested the video. Waters later acknowledged that the video had passed through District and PTA channels and that another saved copy was available through a PTA-associated source.

173. Rather than provide or obtain the video, disclose its availability, or explain the legitimate reason for Plaintiff's request, Hixon intentionally redirected Plaintiff to Flowers and used her husband to summon Lance into the cafeteria. Although Hixon immediately told Lance there was "No problem," she permitted and assisted the encounter to proceed on the false and incomplete premise that Plaintiff was creating a disturbance. She remained engaged after Lance announced the arrest and repeatedly offered further participation, asking, "What do you want me to do?" Lance then identified Hixon as a witness and incorporated her account into the police report used to support the prosecution. When later subpoenaed for communications with Jennifer concerning the relevant events, Hixon refused to produce the requested text messages. Her prior knowledge, initiation of police involvement, adoption of the misleading narrative, continued assistance during the arrest, inclusion as a prosecution witness, and refusal to produce her communications with Jennifer support the plausible inference that she knowingly participated in causing and

continuing the prosecution and acted jointly with Jennifer, Flowers, Lance, and the other participating Defendants.

174. The criminal complaint and information constituted legal process. Plaintiff's initial arrest and detention became and continued as a Fourth Amendment seizure pursuant to that process when the charging instruments were filed and the prosecution subjected him to continuing court authority, mandatory appearances, defense obligations, and the threat of further restraint for noncompliance until the case terminated. The proceeding ended without a conviction on January 2, 2025, satisfying favorable termination. This Count accrued upon that favorable termination and was filed within two years as to every Defendant who caused or continued the prosecution.

175. Probable cause was absent because the supposed lack of consent arose from a school exclusion imposed without either statutory predicate; the event was open to parents; Plaintiff sought material from his child's recognized school activity; Hixon said there was 'No problem'; the recording captured no threat or attempted strike; and Lance reported that Plaintiff did not resist during handcuffing. Waters later confirmed that the video had passed through a District teacher and the PTA before being returned to Jennifer. Those facts corroborate Plaintiff's account that the encounter arose from a legitimate request for existing school-activity material and undermine the danger account used to justify arrest, prosecution, and the resulting exclusion.

176. The initiating materials omitted or contradicted those facts and instead portrayed Hixon as distraught and Plaintiff as prepared to strike Flowers without a documented fist, verbal threat, attempted blow, or violent act. Those omissions and the false danger narrative were material to the asserted authority to exclude and to the decision to prosecute.

177. Allain independently adopted the § 30.05 theory, omitted § 37.105, declared the elements met, and directed presentation to the prosecutor even though his reproduced supplement states "Approving Supervisor: Not approved." His review and affirmative continuation were causal acts under color of law, not mere supervisory status.

178. Any prosecutor or intermediary acted on the materially incomplete EMSISD account. Defendants supplied the owner, consent, and supposed-danger allegations while omitting the absence of any threat or attempted strike, the recording contradicting the danger narrative, the controlling requirements of § 37.105, and the fact that the requested video had passed through a District teacher and the PTA. The withholding of those material facts prevented the intermediary from independently evaluating the retaliatory context and did not break the causal chain.

179. The immediate conversion of Plaintiff's protected request into arrest, the participants' knowledge that the video concerned a recognized school activity, the later unsupported danger narrative, the choice of an indefinite all-property CTW, the coordinated service operation, the failure to produce conflicting records, and continuation of the accusation despite the recording support malice and retaliatory purpose. Waters's later institutional acknowledgment of the video's teacher-and-PTA chain further supports the inference that the underlying dispute was not a fabricated or baseless demand by Plaintiff.

180. The conduct caused detention, legal-process restraint, criminal-defense burdens, loss of liberty, reputational injury, emotional distress, and related damages. Plaintiff seeks compensatory and nominal damages and punitive damages against each Count VII Defendant.

**COUNT VIII – SECTION 1983 JOINT ACTION AND CIVIL CONSPIRACY: AUGUST 8, 2024 ARREST, EXCLUSION, AND PROSECUTION (LANCE, FLOWERS, AND HIXON)**

181. Plaintiff incorporates paragraphs 47–80 and 172–180. Count VIII concerns the Defendants' joint procurement and continuation of the August 2024 criminal prosecution and the resulting seizure pursuant to legal process. That prosecution terminated without a conviction on January 2, 2025, and this claim was filed within two years of its favorable termination. The August 8 arrest, the contemporaneous communications, the reports, the districtwide CTW, the withholding of contradictory evidence, the coordinated service operation, and the later enforcement are pleaded as overt acts and objective evidence of agreement, causation, malice, and the participants' continuing prosecutorial and exclusionary objectives. Independently actionable enforcement and exclusion occurring within the limitations period are also pleaded in Counts I, IX, and XI.

182. The shared objective was to use police power and asserted District-property authority to terminate Plaintiff's protected demand for his child's Reflections material, remove and arrest him, impose continuing exclusion, and advance prosecution without the cause, behavior-specific warning, and review required for that school-exclusion device. The subsequent choice to make the CTW indefinite and districtwide, although unsupported by any broader incident or finding, corroborates the exclusionary and retaliatory object.

183. Hixon initiated and directed the police intervention over the material request, identified Plaintiff and the cafeteria, acknowledged that there was "No problem," remained engaged after

arrest was announced, and asked Lance what he wanted her to do. Those acts support purposeful assistance, not mere presence or a completed neutral report.

184. Flowers supplied the indispensable state-authority component by asserting control over Greenfield and directing removal. Lance accepted that asserted authority, arrested Plaintiff, created the police narrative, and issued the all-property CTW. Hixon's direction of the police response and continued offer of assistance, Flowers's asserted property authority, and Lance's exercise of arrest and exclusion power were complementary acts directed to the same immediate result.

185. The recording supports the agreement inference because it captures no emergency, threat, attempted strike, or violent act before the seizure; Hixon expressly said there was no problem; and the intervention followed Plaintiff's protected material request. The later official narrative was inconsistent with what the participants had just observed and said.

186. Overt acts included summoning and directing the police response, supplying and accepting the property-authority predicate, arresting Plaintiff, issuing the districtwide CTW, creating or adopting the unsupported danger account, and causing or continuing prosecution. Those acts produced the timely Fourth Amendment injury pleaded in Count VII and the continuing exclusionary injuries alleged in Counts I and XI.

187. The agreement may be proved circumstantially. The participants' communications, immediate sequence, coordinated division of indispensable roles, shared account, conduct contradicted by the recording, and continuation of the resulting exclusion plausibly establish concerted action. The precise communications and later transmission records are within Defendants' possession and may be developed through discovery; the claim does not depend on an express statement memorializing the unlawful agreement.

188. The August 14-15 service operation further corroborates continuing joint action and the use of the districtwide exclusion for objectives unrelated to any safety issue at Greenfield. Jennifer's engagement of Elizabeth Parmer established a formal principal-agent relationship for the family litigation and an agreed objective of obtaining and serving the ex parte relief. Jennifer then informed Flowers that she had contacted Lance, that Lance would review the orders with Flowers, that service was expected the next day, and that she would notify both before it occurred. When Plaintiff arrived pursuant to his parental pickup request, EMSISD temporarily held the campus, and Travis Parmer approached from Greenfield accompanied by Lance and

another EMSISD officer to complete service while Plaintiff was denied access to his children. The engagement relationship, advance communications, coordinated timing, campus access, and police assistance support the inference that the participants used the CTW and state authority as parts of the same exclusionary course.

189. Plaintiff seeks compensatory and nominal damages and punitive damages from each Defendant for the constitutional injuries that Defendant agreed upon or jointly caused.

**COUNT IX – SECTION 1983 JOINT ACTION AND CIVIL CONSPIRACY: 2026 MONITORING, CTW ENFORCEMENT, AND POLICE-INFORMATION USE (LANCE, GRADY, JENNIFER RANDLES, AND ALFORD AS SPECIFIED)**

190. Plaintiff incorporates Counts I, III, IV, and V and the 2026 allegations. The 2026 agreement operated through an information-and-enforcement channel already established during the 2024 family litigation. Jennifer's formal engagement of Elizabeth Parmer supplied the family-litigation agency relationship; Jennifer's advance communications with Flowers and Lance and the police-assisted service by Travis Parmer demonstrate that the private litigation participants had previously coordinated access, timing, and official assistance with EMSISD personnel. Count IX alleges that Jennifer, Lance, Grady, and Alford later used that established channel for the 2026 monitoring, CTW enforcement, and acquisition or litigation use of EMSISD police information.

191. The pre-enforcement agreement is shown by reciprocal, directed communications. Lance instructed Jennifer to "stay on top of stuff." Grady requested current family orders and related correspondence. Jennifer responded "As requested," furnished those records, and separately supplied Plaintiff's protected Facebook speech for Grady and his officers. Grady acknowledged receipt.

192. Lance continued the channel by asking whether Plaintiff had posted anything further, what vehicle he drove, whether his parental rights had been severed, whether he possessed a pistol, and whether Jennifer would attend the school event. Jennifer supplied the requested operational information and documents and confirmed her nonattendance.

193. Grady had already directed arrest under the CTW, learned Plaintiff's expected pickup and attendance information, and maintained the operation through the seizure. Lance used the requested information to identify and confront Plaintiff and then enforced the old CTW. Jennifer's liability rests on knowing participation in that operation, not merely a one-time report to police.

194. The stated safety rationale was pretextual. Lance said that nothing reported was imminent or scary; Jennifer disclaimed knowledge whether Plaintiff possessed a firearm; and the later seizure rested on the old CTW rather than any new threat or offense. The CTW itself arose from a single Greenfield encounter but was maintained at maximum districtwide scope without a new assessment. The communications plausibly show a coordinated object of enforcing that challenged exclusion through protected speech, family information, and private monitoring after written notice of its defects.

195. The communications support a meeting of the minds because they were reciprocal, requested by the officials managing enforcement, tailored to Plaintiff's anticipated attendance, and followed by the precise deprivation for which the information was gathered.

196. EMSISD's withholding of the communications and transmission records does not eliminate the reasonable inference of agreement. The District controls the internal communications identifying who authorized the campus operation, who disclosed Plaintiff's location and arrival, who accessed Report No. 260002245, and who transmitted those materials for use in the family proceeding. Plaintiff has identified the known participants, documents, dates, communications, custody, and resulting coordinated acts; discovery will identify the complete internal chain.

197. The agreement is inferred from objective, corroborating facts: Jennifer's direct exchange of family materials with Grady; Grady's advance knowledge of the unserved ex parte order; his acquisition of Plaintiff's pickup time and location; the temporary campus hold; Travis's approach from the campus with Lance and another officer; EMSISD's refusal to accommodate pickup; the continued districtwide use of the Greenfield CTW; Alford's representation of the involved personnel; her private prehearing meeting with Jennifer and Robinson; and the later possession and use of nonpublic EMSISD report materials. The communications, coordinated timing, division of roles, and resulting official acts plausibly establish more than disconnected parallel conduct.

198. The August 16 notice establishes knowledge of this federal action before the August 20 review, August 21 family production, and August 24 formal county filing. Those acts continued the same arrest-and-exclusion narrative through criminal and family proceedings after the federal claims were known.

199. The overt acts caused or perpetuated the retaliatory arrest threat, seizure, force, criminal restraints, and collateral use of official information. Lance and Grady acted under color of law. Jennifer acted under color of law by willfully participating in the enforcement operation. Alford acted under color of law if the factfinder determines that she joined the alleged agreement and coordinated use of District-controlled information.

200. Plaintiff seeks compensatory and nominal damages and punitive damages against each individual whose conduct satisfies the governing standard.

**COUNT X – SECTION 1985(2) CONSPIRACY TO DETER ATTENDANCE OR TESTIMONY IN FEDERAL COURT (LANCE, GRADY, JENNIFER RANDLES, AND ALFORD AS ALTERNATIVELY PLEADED)**

201. Plaintiff incorporates the post-filing allegations and Counts I and IX. This Count is limited to the first, federal-court clause of 42 U.S.C. § 1985(2) and conduct occurring after this action was filed. It alleges external pressure directed at Plaintiff's prosecution of, attendance in, and testimony in this federal proceeding.

202. Plaintiff became a party in a court of the United States on August 13, 2026. His verified complaint and Rule 65 papers requested an expedited hearing at which he intended to appear, authenticate recordings and communications, and testify concerning Lance, EMSISD, the CTW, the earlier prosecution, and the August 11 seizure.

203. On August 16, Plaintiff emailed the filed complaint and Rule 65 papers to Hollingsworth, EMSISD, Grady, Lance, and District counsel. The recipients thereby had actual notice of the federal proceeding, requested hearing, claims, evidence, and contemplated testimony before the later charging, bond, and report-use events.

204. After receiving actual notice of this federal action and Plaintiff's requested Rule 65 hearing, Defendants agreed to continue and escalate the criminal, investigative-record, and family-litigation pressure directed at Plaintiff. Grady and Lance received the filed complaint and Rule 65 papers directly. EMSISD and its counsel received the same materials, giving Alford notice through the District role she invoked in the family proceeding. Jennifer's knowing participation may be inferred from her established communications with EMSISD personnel, her receipt or litigation use of EMSISD report-numbered material immediately after the notice, and the continuation of the same information-and-enforcement channel previously used to coordinate Plaintiff's exclusion and police-assisted service.

205. The post-notice sequence supplies objective evidence of the agreement and its purpose. Plaintiff provided the filed federal papers on August 16, 2026; EMSISD reviewed the new criminal matter on August 20; Jennifer or Robinson possessed and used report-numbered EMSISD material by August 21; the county formally filed the charges on August 24; and bonds with EMSISD-supplied conditions were imposed on August 30. These were complementary acts by participants occupying different roles—police enforcement, control and dissemination of investigative information, adverse family litigation, and continuing restrictions on Plaintiff's liberty—directed at the evidence, witnesses, and conduct challenged in this federal case.

206. At the magistrate proceeding, Plaintiff was informed that EMSISD had supplied the conditions associated with the misdemeanor charges and that the magistrate could not alter them. Plaintiff's criminal-trespass bond was set at $1,000 and his evading-detention bond at $1,500, with additional conditions restricting his conduct and movement. Those restraints extended EMSISD's control beyond school property while Plaintiff was seeking emergency federal relief against the same agency and officers and increased the burdens of appearing, preparing evidence, communicating with witnesses, and testifying against them.

207. The contemporaneous transmission and family-court use of EMSISD Police Report No. 260002245 furthered the same deterrent objective. The report concerned the conduct and officers directly challenged in this action, contained material relevant to Plaintiff's anticipated Rule 65 evidence, and was not obtained by Jennifer or Robinson from a public source. Alford possessed direct access to the involved EMSISD personnel and records, had appeared in the family proceeding as EMSISD's lawyer, and had privately met with Jennifer and Robinson before the hearing. Jennifer or Robinson's possession of the report-numbered material immediately after EMSISD received notice of this action supports the inference that the established District–family-litigation channel was used to increase collateral pressure and impair Plaintiff's presentation of the federal case.

208. The agreement and deterrent intent are plausibly inferred from Defendants' actual notice, reciprocal communications, coordinated timing, divided roles, control of nonpublic information, EMSISD-supplied bond conditions, and use of the challenged investigation in the parallel family proceeding. The acts did not merely preserve the status quo or defend against the complaint. They imposed new criminal, financial, evidentiary, and family-court burdens after Defendants

learned that Plaintiff intended to appear, authenticate the communications and recordings, and testify concerning their conduct.

209. The predominant purpose of the post-notice conduct was to deter, burden, or punish Plaintiff's attendance and testimony in this federal proceeding. Defendants targeted the investigation, records, witnesses, and exclusion Plaintiff had identified as evidence; imposed criminal and bond restraints after receiving his request for an expedited evidentiary hearing; transferred or facilitated collateral use of the same investigative material; and increased the personal and financial consequences of Plaintiff's continued participation. The coordinated acts operated directly upon Plaintiff's ability and willingness to appear, testify freely and fully, obtain evidence, communicate with witnesses, and prosecute the federal claims, rather than merely constituting opposition to those claims.

210. Threatened or actual state proceedings lacking a reasonable basis and used as external pressure to stop a party from pursuing a pending federal action can constitute intimidation under § 1985(2). *Mitchell v. Johnson*, 2008 WL 3244283, at *8–10 (5th Cir. Aug. 8, 2008) (unpublished). At the pleading stage, *Mitchell* accepted allegations that threatened family-violence proceedings and related litigation pressure were used to force abandonment of a federal case. Here, Plaintiff alleges actual post-notice charges, EMSISD-supplied bond conditions, transmission and collateral use of nonpublic investigative material, and resulting criminal and family-litigation pressure directed at his participation and anticipated testimony. Plaintiff does not challenge lawful process pursued independently of this action; he alleges that Defendants agreed to use unsupported proceedings and restrictions as external pressure after receiving actual notice of the federal filing and requested hearing.

211. Those overt acts injured Plaintiff's person and property through detention, bond obligations and conditions, restricted liberty, criminal-defense and family-litigation expense, coercive pressure, emotional injury, and impairment of his ability to prepare for and participate freely in federal court. Plaintiff seeks compensatory and nominal damages, punitive damages from each responsible individual, and appropriate declaratory relief.

**COUNT XI – FIRST AMENDMENT VIEWPOINT DISCRIMINATION AND DENIAL OF ACCESS TO PUBLIC AND LIMITED PUBLIC FORUMS (EMSISD, GRADY, LANCE, FLOWERS, WATERS, AND HOLLINGSWORTH SOLELY FOR PROSPECTIVE OFFICIAL-CAPACITY RELIEF)**

212. Plaintiff engaged in identifiable religious, political, parental, and government-critical expression. He objected to DEI and sexuality-related instruction, requested access to his

children's educational material, challenged District officials and police, pursued grievances and records, and intended to speak at open Board meetings.

213. EMSISD opened Board meetings for public attendance and comment and opened parent conferences, Meet the Teacher, award presentations, and similar activities to the relevant parent community. Those settings were at least limited public forums for the purposes for which the District opened them. Other school property remained a nonpublic forum, but restrictions there still had to be reasonable in light of the property's function and viewpoint neutral.

214. Defendants excluded Plaintiff from every category of District property and event because of the viewpoint and persistence of his inquiries, not because his speech fell outside a neutral subject-matter limitation. The exclusion began when he demanded the Reflections material at Greenfield, expanded immediately to every District property, continued after his criticism, grievances, and records requests, and was enforced after he challenged EMSISD in court.

215. Plaintiff alleges that Defendants had no lawful ground to exclude him from Greenfield or any other District property. Without conceding that primary allegation, even a lawful immediate removal from Greenfield would not establish a reasonable basis for an indefinite prohibition reaching every campus, office, Board meeting, parent event, parking area, stadium, and facility. The contemporaneous recording contains no threat or violent conduct, Hixon acknowledged that there was 'No problem,' and Defendants identified no current risk, conduct-specific rule, definite duration, objective access standard, or neutral process for restoring access. The maximum-scope ban was unreasonable in light of the forums' different purposes and was imposed and maintained because of Plaintiff's viewpoint.

216. The police-permission requirement and arrest threat operated as an individualized prior restraint. They vested unbounded discretion in EMSISD Police to decide whether Plaintiff could attend an open Board meeting, parent event, conference, activity, or arranged inspection. The CTW supplied no written criteria, time for decision, location-based standard, definite term, or meaningful review.

217. Flowers and Lance initiated the exclusion; Lance converted the Greenfield encounter into the districtwide written CTW; Waters maintained it by denying review; Grady administered and enforced it; and EMSISD continued the policy through its official form and implementation chain. Each individual knew of Plaintiff's protected inquiries and personally participated in imposing, maintaining, or enforcing the challenged restriction.

218. The continuing CTW chills Plaintiff from attending future Board meetings, addressing trustees, requesting materials, meeting educators, and participating in events otherwise open to parents. Plaintiff intends to engage in those activities but remains subject to arrest and force if he enters without discretionary police permission.

219. EMSISD is liable under Count VI. Hollingsworth is sued solely in his official capacity to implement prospective viewpoint-neutral access, rescission, and written procedures. Grady, Lance, Flowers, and Waters are liable for their personal participation and the damages caused by the exclusion.

220. Plaintiff seeks compensatory and nominal damages, punitive damages against the liable individuals, and declaratory and prospective relief prohibiting viewpoint-based exclusion and unbounded police control over access to forums opened by EMSISD.

## VI. INJURY AND RELIEF REQUESTED

221. The arrests, prosecutions, conditional bonds, seizure, Taser deployments, post-filing criminal pressure, and collateral use of police material caused physical injury and pain, loss of liberty, bond expense and conditions, criminal-defense and family-litigation burdens, humiliation, emotional distress, reputational injury, and disruption of daily life. The continuing exclusion denied Plaintiff physical participation in his children's educational community, burdened his religious direction and parental access, obstructed access to records and instructional material, impaired his relationship with his children, and caused the irretrievable loss of school events, conferences, child pickups, educational participation, religious guidance, and shared family experiences. It also chilled Plaintiff's speech, petition, viewpoint expression, Board participation, and preparation for attendance and testimony in this Court.

222. An actual and imminent controversy remains. EMSISD has not rescinded the CTW; Grady declared that entry for any reason remained arrestable until written rescission; EMSISD enforced the same notice with force after the statutory maximum period; District records and transmitted materials continue to carry the challenged characterizations; and Plaintiff intends to attend future open Board meetings, parent conferences and events, and arranged inspections of educational records and instructional materials.

223. **DECLARATORY RELIEF.** Plaintiff seeks a declaration that Defendants may not use Penal Code § 30.05 to impose or maintain a school-property exclusion substantively governed by Education Code § 37.105 without satisfying that statute's requirements; that the CTW alleged

here did not authorize continued exclusion or arrest after its lawful maximum duration; that, without conceding any lawful basis for the Greenfield removal, the single Greenfield encounter did not justify the indefinite districtwide restriction imposed here; that EMSISD's failure to provide the required written appeal information and online notice, combined with its declaration that the CTW was unappealable, denied constitutionally adequate process; and that issuance, maintenance, and enforcement of the CTW under the circumstances alleged violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments.

224. **RESCISSION AND RECORD REMEDIATION.** Plaintiff requests temporary, preliminary, and permanent relief against EMSISD and the officers, employees, and agents bound under Federal Rule of Civil Procedure 65(d)(2), requiring EMSISD to: (a) rescind the August 8, 2024 CTW and cease relying on it to exclude, arrest, detain, cite, seize, use force against, or threaten Plaintiff; (b) correct every record or database entry within EMSISD's possession, custody, or control that characterizes the CTW as permanent, unappealable, or presently enforceable; (c) place a permanent corrective addendum with the CTW, related police reports, grievance records, and database entries identifying the Court's declarations and final judgment; (d) preserve the original materials as evidence while preventing their future use without the corrective addendum; and (e) provide Plaintiff copies of the corrected records and a sworn certification of compliance.

225. **PUBLICATION OF SECTION 37.105 NOTICE.** To remedy the continuing process and access violations alleged, Plaintiff requests prospective relief requiring EMSISD and Hollingsworth to publish and continuously maintain on the District's Internet website and on every campus website the notice required by Education Code § 37.105(g) and 19 Texas Administrative Code § 103.1207(g). The notice must be readily accessible and must accurately explain the grounds for refusal of entry or ejection, the behavior-specific warning and record requirements, the right to contemporaneous written appeal information, the existing grievance process and right to address the Board within 90 days, the statutory maximum duration, required parental accommodations, and where the governing policy and appeal forms may be obtained. EMSISD shall certify the location and continuing availability of each posting.

226. **CASE-SPECIFIC CORRECTIVE NOTICE.** After final judgment, Plaintiff requests an order requiring EMSISD to publish a Court-approved corrective notice accurately stating the Court's declarations and liability determinations, including, to the extent adjudicated, that the

CTW was invalid or unenforceable; that the indefinite districtwide exclusion, viewpoint discrimination, retaliation, or continued enforcement violated Plaintiff's federal rights; that identified official statements or records were false, unsupported, or materially incomplete; and that any named Defendants were found to have joined an unlawful conspiracy. EMSISD shall publish a prominent link to that notice on the District website and every campus website in the same location as the § 37.105 notice for at least one school year, or for another period the Court finds sufficient to correct the continuing effects, and shall preserve an accessible copy thereafter with the Board's records of this matter.

227. **DISCLOSURE ACCOUNTING AND RECIPIENT CORRECTION.** Plaintiff requests an order requiring EMSISD to identify under oath every person, attorney, agency, governmental office, database, or other recipient to whom EMSISD or its personnel transmitted the CTW, Police Report No. 260002245, related investigative or educational material, or an official characterization of Plaintiff's exclusion or alleged conduct; state the date, method, sender, recipient, and material transmitted; send each identifiable recipient the Court-approved corrective notice and final judgment; attach the correction to any retained copy under EMSISD's control; and provide Plaintiff the accounting, transmitted notices, and sworn certification of compliance. Defendants shall not repeat, republish, or rely upon an adjudicated false or unconstitutional characterization without simultaneously providing the corrective notice, subject to lawful evidence-preservation and disclosure duties.

228. **PROSPECTIVE PROCEDURES AND TRAINING.** Plaintiff seeks prospective relief requiring EMSISD, Hollingsworth, and the appropriate official-capacity defendants, before excluding Plaintiff from District property, to identify the conduct asserted to satisfy § 37.105; provide any behavior-specific warning required by that statute; maintain the required record; state a definite and lawful duration; provide written appeal information; connect any restriction's reach to current individualized findings and the affected property or function; and furnish accommodations necessary for Plaintiff to exercise parental responsibilities, including child pickup, educational participation, and access to eligible records. EMSISD shall adopt and train responsible personnel on written procedures implementing those requirements and shall conduct periodic review sufficient to ensure that the District and campus website notices remain accurate and accessible. This request does not seek immunity from neutral, generally applicable criminal law or prevent officers from responding to an independently supported offense.

229. **VIEWPOINT-NEUTRAL AND RESTORATIVE ACCESS.** Plaintiff seeks prospective relief prohibiting Defendants from using the challenged CTW, unbounded police permission, or unauthorized disclosure of EMSISD investigative and educational records to retaliate against Plaintiff or suppress his viewpoint; requiring preservation of reports, recordings, access logs, communications, grievance materials, and transmission records relevant to the claims; and requiring EMSISD to provide lawful, objective, and nonretaliatory procedures through which Plaintiff may obtain eligible records and instructional material, participate in grievances and Board proceedings, attend future parent conferences and school events open to similarly situated parents, arrange child pickup consistent with governing orders, and exercise parental and educational access without reliance on the challenged CTW.

230. **DAMAGES AND DEFENDANT ALLOCATION.** Plaintiff seeks compensatory damages from Lance, Grady, Allain, Flowers, Waters, Alford, Hixon, and Jennifer to the extent each is liable under the individual-capacity and joint-action counts pleaded against that person; punitive damages against the individual Defendants whose conduct is proven to have been malicious, retaliatory, deliberately indifferent, or recklessly unconstitutional; and municipal damages against EMSISD under Count VI. Plaintiff does not seek punitive damages from EMSISD or damages from any Defendant sued solely in an official capacity. Compensatory damages include physical injury and pain, medical and related expenses, loss of liberty, bond premiums and bond-related expense, reasonable criminal-defense fees and expenses to the extent recoverable as proximately caused economic loss, lost income and time, records and access expenses, family-litigation expense to the extent proximately caused and legally recoverable, emotional distress, humiliation, reputational injury, impairment of Plaintiff's relationship with his children, the irretrievable loss of parental, educational, religious, and family opportunities, and other consequential losses proven at trial, without duplicative recovery.

231. Plaintiff further requests pre- and postjudgment interest, taxable costs, and all additional legal or equitable relief authorized by law.

## VII. ATTORNEYS' FEES AND COSTS

232. Under 42 U.S.C. § 1988(b), Plaintiff requests reasonable attorneys' fees for compensable work performed by counsel if counsel appears and Plaintiff prevails. Plaintiff does not request fees for his own pro se work. Criminal-defense fees are requested separately as proximately caused compensatory damages under paragraph 230, not as fees for Plaintiff's pro se work in this

action. Plaintiff requests taxable costs under 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54(d).

## VIII. JURY DEMAND, ORAL ARGUMENT, AND PRAYER

233. Under the Seventh Amendment and Federal Rule of Civil Procedure 38, Plaintiff demands a jury on every issue triable by right. Plaintiff requests: (a) judgment against each Defendant on each count applicable to that Defendant; (b) compensatory damages in an amount determined by the jury and allocated as stated in paragraph 230; (c) nominal damages for each proven constitutional violation; (d) punitive damages against the individual Defendants when the governing standard is proved; (e) the declarations stated in paragraph 223; (f) rescission and record remediation under paragraph 224; (g) statutory website publication, case-specific corrective notice, disclosure accounting, and recipient correction under paragraphs 225-227; (h) prospective procedures, training, and viewpoint-neutral restorative access under paragraphs 228-229; (i) pre- and postjudgment interest; (j) taxable costs and any recoverable attorneys' fees; (k) the referral request stated in paragraph 234; and (l) all further legal or equitable relief the Court deems just.

234. **PRESERVATION AND REFERRAL REQUEST.** If evidence developed in this action gives the Court reason to believe that a person willfully deprived Plaintiff of federal rights, joined a conspiracy against those rights, retaliated for participation in a federal proceeding, tampered with a party or witness, or knowingly falsified, altered, destroyed, concealed, or unlawfully transmitted a record to impede a federal matter, Plaintiff requests that the Court preserve and transmit the relevant evidence to the United States Attorney or other appropriate authority for independent review under any statute that authority determines applicable, including 18 U.S.C. §§ 241, 242, 1512, 1513, and 1519. This request includes evidence concerning Lance's direct or indirect transmission of nonpublic investigative material for collateral use after notice of this action and any related agreement or assistance by other Defendants. Plaintiff asserts no private civil cause of action under those criminal statutes and does not ask the Court to compel an investigation or prosecution.

235. **ORAL ARGUMENT AND RULE 65 HEARING.** Recognizing that Local Civil Rule 7.1(g) leaves oral argument to the presiding judge, Plaintiff requests oral argument when the Court considers any dispositive motion or motion affecting preliminary or permanent injunctive

relief. Plaintiff further requests an evidentiary hearing under Rule 65 when necessary to resolve disputed facts material to prospective relief.

236. Plaintiff requests all further legal or equitable relief the Court deems just.

Respectfully submitted,
**/s/ Samuel Christopher Randles** Sam Randles

SAMUEL CHRISTOPHER RANDLES
Plaintiff, Pro Se
2915 Beau Drive
Mesquite, Texas 75181
(214) 250-6187
Facsimile: None
randles.sam@gmail.com
Bar Number: N/A (Pro Se)

**VERIFICATION UNDER 28 U.S.C. § 1746**

I, Samuel Randles, declare under penalty of perjury that I have read this First Amended and Supplemental Verified Complaint. The factual allegations based on my personal knowledge are true and correct. Allegations describing identified records and communications accurately state what those records and communications say to the best of my knowledge, information, and belief. Allegations stated on information and belief are based on the objective facts identified in the pleading and on information presently within Defendants' possession.

Executed on October 12, 2026.

**/s/ Samuel Christopher Randles** Sam Randles

SAMUEL CHRISTOPHER RANDLES
Plaintiff, Pro Se
2915 Beau Drive
Mesquite, Texas 75181
(214) 250-6187
Facsimile: None
randles.sam@gmail.com
Bar Number: N/A (Pro Se)