**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| SAMUEL RANDLES,<br>Plaintiff, | **CIVIL ACTION NO.**<br>**4:26-cv-00999-O-BP** |
| v. | |
| EAGLE MOUNTAIN-SAGINAW<br>INDEPENDENT SCHOOL DISTRICT, et al.,<br>Defendants. | |

# APPENDIX IN SUPPORT OF PLAINTIFF'S NOTICE OF NEWLY DISCOVERED FACTS, REQUEST FOR ON-RECORD DISCLOSURE, AND MOTION TO RECUSE CHIEF JUDGE REED O'CONNOR AND MAGISTRATE JUDGE HAL R. RAY, JR.

Prepared October 22, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| SAMUEL RANDLES, | § | |
| | § | |
| Plaintiff, | § | **CIVIL ACTION NO.** |
| | § | **4:26-cv-00999-O-BP** |
| v. | § | |
| | § | |
| EAGLE MOUNTAIN-SAGINAW | § | |
| INDEPENDENT SCHOOL DISTRICT, et al., | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendants. | § | |

**UNSWORN DECLARATION OF SAMUEL CHRISTOPHER RANDLES**

I, Samuel Christopher Randles, declare as follows:

I am the Plaintiff in this action. I am competent to make this declaration and have personal knowledge of the matters stated here. The facts stated in the motion from my personal knowledge are true and correct. The factual statements drawn from records or materials accurately describe those sources to the best of my knowledge.

I have reviewed the supporting appendix. The records and materials reproduced there are true and correct copies of the materials I obtained or preserved, and the factual statements drawn from them accurately describe those sources to the best of my knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 22, 2026.

/s/ Samuel Christopher Randles Sam Randles

**SAMUEL CHRISTOPHER RANDLES**
Plaintiff, Pro Se
2915 Beau Drive
Mesquite, Texas 75181
(214) 250-6187
Facsimile: None
randles.sam@gmail.com
Bar Number: N/A (Pro Se)

# APPENDIX INDEX


| Ex. | Description | Pages |
|---|---|---|
| Decl. | Unsworn Declaration of Samuel Christopher Randles | APP-2-3 |
| A | Official biography of Chief Judge Reed O'Connor | APP-5-7 |
| B | Official biography of Criminal District Attorney Phil Sorrells | APP-8-9 |
| C | 2010 Form 990-PF for Masonic Temple Library and Museum of Fort Worth | APP-10-12 |
| D | Official biography of Justice D. Michael Wallach | APP-13-14 |
| E | Grand Lodge of Texas description of Freemasonry | APP-15-19 |
| G | Preserved professional profile of Robley Evans Sicard | APP-20-22 |
| H | Family notice for Mary Lattimore Evans | APP-23-25 |
| I | Preserved Wallach social-media identification capture | APP-26-27 |
| J | Preserved Wallach Masonic social-media capture | APP-28-29 |
| K | Moslah Temple March 2022 newsletter excerpts | APP-30-35 |
| L | Family notice for Eileen Petty Beardsley | APP-36-39 |
| M | 2020 Form 990 for Masonic Temple Association of Fort Worth | APP-40-42 |
| N | Second Court en banc denial in No. 02-25-00455-CV | APP-43-44 |
| O | Second Court en banc denial in No. 02-26-00216-CV | APP-45-46 |
| P | October 16, 2026 preservation and voluntary-production notice to Tarrant County CDA | APP-47-48 |
| Q | Timothy Cole Exoneration Review Commission pink-list report excerpt | APP-49-51 |
| R | ECF No. 33 Lance-related-case excerpts | APP-52-55 |
| S | State v. Lance, No. 0848894 selected primary records | APP-56-66 |
| T | State v. Lance, No. 0848896 selected primary records | APP-67-69 |
| U | 2008 Texas Super Lawyers Greg Westfall profile excerpts | APP-70-72 |
| V | ECF No. 31 Christian free-exercise and viewpoint excerpts | APP-73-75 |

# EXHIBIT A

**Official biography of Chief Judge Reed O'Connor**

Source file: Exhibit_A_Reed_OConnor_Official_Biography.pdf

**Source URL**

https://www.txnd.uscourts.gov/judge/chief-district-judge-reed-oconnor

Skip to main content
Directory

# Chief District Judge Reed O'Connor

## You are here

Home » Judges » District Judges

**Courtroom Deputy:** Melissa Hurtado, Phone: 817-850-6788, Email: Melissa_Hurtado@txnd.uscourts.gov

**Court Reporter:** Zoie Williams, Phone: 817-850-6630, Email: Zoie_Williams@txnd.uscourts.gov

**Courtroom Technology**

501 West 10th Street, Room 201
Fort Worth, Texas 76102-3673

**Courtroom:** 2nd floor

**Case Letter Designation:** (O)

## Judge Tabs

- **Judge Specific Requirements**(active tab)
- **Biography**

Judge Specific Requirements

A judge's copy is required for each dispositive motion, response, reply, and appendix thereto exceeding seventy-five (75) pages. The copy must be submitted in a three-ring binder, with any exhibits or attachments appropriately tabbed.

All motions require a proposed order that must be emailed to OConnor_Orders@txnd.uscourts.gov and must be in a WordPerfect or Word format (not PDF). The subject line of the email must include the case number and the document number of the referenced motion.

The United States Attorney and any defendant charged in a criminal case shall file on the docket any and all paperwork related to a guilty plea without delay to permit the matter to be promptly scheduled and heard.

Biography

**Birth:** 1965

**Year Service Began:** 2007

**Appointed by:** President George W. Bush

**Education:** Bachelor of Science from the University of Houston in 1986; Juris Doctor, second in his class, *summa cum laude*, from South Texas College of Law in 1989

**Legal Practice:** Assistant United States Attorney for the Northern District of Texas 1998 - 2007; Assistant District Attorney for Tarrant County District Attorney's Office 1994 - 1998; Associate, Vinson & Elkins LLP 1989 - 1994

**Current Memberships:** Tarrant County Bar Association; Dallas Bar Association; Federal Bar Association; State Bar of Texas

Court Information
Judges
Rules & Orders
Filing
Resources
FAQs
Attorneys
Jurors
Pro Se
Forms & Records

# EXHIBIT B

**Official biography of Criminal District Attorney Phil Sorrells**

Source file: Exhibit_B_Phil_Sorrells_Official_Biography.pdf

**Source URL**

https://www.tarrantcountytx.gov/en/criminal-district-attorney/about-us.html

# Phil Sorrells - District Attorney

Phil Sorrells grew up in Lubbock and earned his undergraduate and law degrees from Texas Tech University. Upon graduation from law school, Phil received a job offer from Tarrant County District Attorney Tim Curry. Phil accepted that offer and joined the Tarrant County District Attorney's Office where he worked as a prosecutor. Five years later, Phil ran for judge of County Criminal Court No. 10 against an incumbent; Phil won that race, becoming a judge at the age of 32.

Phil's 25-year tenure as the judge of County Criminal Court No. 10 has been marked by excellence. In just over a year, Phil took the court from having the largest backlog to the smallest. Phil has managed the taxpayers' money efficiently, consistently operating one of the lowest-spending criminal courts in Tarrant County. In 2001, Phil asked the Texas legislature to expand his court's jurisdiction to take on more responsibility and hear all appeals from the municipal courts in Tarrant County.

After serving as the judge of that court for 25 years, he resigned in November of 2021 to run for District Attorney. He won that election and was sworn in as Tarrant County's 15th elected District Attorney on January 1, 2023. Phil has spent his entire career serving the people of Tarrant County.

Phil and his wife of more than three decades, Susan, have three grown children and live in North Richland Hills. Together they are active members of North Richland Hills Baptist Church.

## ABOUT THE OFFICE

The Tarrant County District Attorney's Office is devoted to taking criminals off the street and making the community a safer place to live and work. Each year, more than 45,000 cases are filed in Tarrant County, ranging from capital murder to misdemeanor theft. Some of the best and brightest attorneys in the state handle the prosecution of these cases, which are assigned to 11 felony or 10 misdemeanor courts.

Tim Curry Criminal Justice Center Door

While handling criminal cases is the most public function of the District Attorney's Office, the Civil Division also plays a vital role. The attorneys in the Civil Division act as general counsel for all of Tarrant County's elected officials and appointed administrators, providing legal advice on a wide variety of topics.

The 300+ member staff of the District Attorney's Office is made up of dedicated professionals who are committed to serving the 1.9 million citizens of Tarrant County. Their goal is to prosecute the guilty, protect the innocent and deter crime.

This page was last modified on June 30, 2026

# EXHIBIT C

**2010 Form 990-PF for Masonic Temple Library and Museum of Fort Worth**

Source file: Exhibit_C_2010_Masonic_Temple_Library_Museum_Form_990PF.pdf

**Source URL**

https://projects.propublica.org/nonprofits/organizations/752345616

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93491133007351

Form **990-PF**

Department of the Treasury
Internal Revenue Service

# Return of Private Foundation

**or Section 4947(a)(1) Nonexempt Charitable Trust**
**Treated as a Private Foundation**

**Note.** The foundation may be able to use a copy of this return to satisfy state reporting requirements

OMB No 1545-0052

**2010**

**For calendar year 2010, or tax year beginning 01-01-2010 , and ending 12-31-2010**

**G** Check all that apply ☐ Initial return ☐ Initial return of a former public charity ☐ Final return
☐ Amended return ☐ Address change ☐ Name change

Name of foundation
MASONIC TEMPLE LIBRARY & MUSEUM OF FORT WORTH INC

**A Employer identification number**
75-2345616

Number and street (or P O box number if mail is not delivered to street address) | Room/suite
PO BOX 1320

**B** Telephone number (see page 10 of the instructions)
(817) 335-3518

City or town, state, and ZIP code
FORT WORTH, TX 76101

**C** If exemption application is pending, check here ▶ ☐
**D 1.** Foreign organizations, check here ▶ ☐
**2.** Foreign organizations meeting the 85% test, check here and attach computation ▶ ☐
**E** If private foundation status was terminated under section 507(b)(1)(A), check here ▶ ☐
**F** If the foundation is in a 60-month termination under section 507(b)(1)(B), check here ▶ ☐

**H** Check type of organization ☑ Section 501(c)(3) exempt private foundation
☐ Section 4947(a)(1) nonexempt charitable trust ☐ Other taxable private foundation

**I** Fair market value of all assets at end of year *(from Part II, col. (c), line 16)* ▶$ 5,128,059

**J** Accounting method ☐ Cash ☑ Accrual
☐ Other (specify) _
*(Part I, column (d) must be on cash basis.)*

**Part I** **Analysis of Revenue and Expenses** *(The total of amounts in columns (b), (c), and (d) may not necessarily equal the amounts in column (a) (see page 11 of the instructions) )*

| | | | (a) Revenue and expenses per books | (b) Net investment income | (c) Adjusted net income | (d) Disbursements for charitable purposes (cash basis only) |
|---|---|---|---|---|---|---|
| Revenue | 1 | Contributions, gifts, grants, etc , received (attach schedule) | 23,791 | | | |
| | 2 | Check ▶ ☐ if the foundation is **not** required to attach Sch B | | | | |
| | 3 | Interest on savings and temporary cash investments | | | | |
| | 4 | Dividends and interest from securities | 14,254 | 14,254 | | |
| | 5a | Gross rents | 328,134 | | | |
| | b | Net rental income or (loss) 56,004 | | | | |
| | 6a | Net gain or (loss) from sale of assets not on line 10 | 36,256 | | | |
| | b | Gross sales price for all assets on line 6a 111,124 | | | | |
| | 7 | Capital gain net income (from Part IV, line 2) | | 36,256 | | |
| | 8 | Net short-term capital gain | | | | |
| | 9 | Income modifications | | | | |
| | 10a | Gross sales less returns and allowances | | | | |
| | b | Less Cost of goods sold | | | | |
| | c | Gross profit or (loss) (attach schedule) | | | | |
| | 11 | Other income (attach schedule) | 431 | 431 | | |
| | 12 | **Total.** Add lines 1 through 11 | 402,866 | 50,941 | | |
| Operating and Administrative Expenses | 13 | Compensation of officers, directors, trustees, etc | | | | |
| | 14 | Other employee salaries and wages | 90,429 | 2,400 | 44,014 | 44,015 |
| | 15 | Pension plans, employee benefits | | | | |
| | 16a | Legal fees (attach schedule) | 4,377 | | 2,189 | 2,188 |
| | b | Accounting fees (attach schedule) | 3,300 | 825 | 1,237 | 1,238 |
| | c | Other professional fees (attach schedule) | | | | |
| | 17 | Interest | 7,758 | | 3,879 | 3,879 |
| | 18 | Taxes (attach schedule) (see page 14 of the instructions) | 108,371 | | 54,186 | 54,185 |
| | 19 | Depreciation (attach schedule) and depletion | 37,976 | | 37,976 | |
| | 20 | Occupancy | 111,258 | | 55,629 | 55,629 |
| | 21 | Travel, conferences, and meetings | | | | |
| | 22 | Printing and publications | | | | |
| | 23 | Other expenses (attach schedule) | 87,580 | | 73,020 | 14,560 |
| | 24 | **Total operating and administrative expenses.** Add lines 13 through 23 | 451,049 | 3,225 | 272,130 | 175,694 |
| | 25 | Contributions, gifts, grants paid | 0 | | | 0 |
| | 26 | **Total expenses and disbursements.** Add lines 24 and 25 | 451,049 | 3,225 | 272,130 | 175,694 |
| | 27 | Subtract line 26 from line 12 | | | | |
| | a | **Excess of revenue over expenses and disbursements** | -48,183 | | | |
| | b | **Net investment income** (if negative, enter -0-) | | 47,716 | | |
| | c | **Adjusted net income** (if negative, enter -0-) | | | | |

**For Privacy Act and Paperwork Reduction Act Notice, see page 30 of the instructions.** Cat No 11289X Form **990-PF** (2010)

Additional Data

**Software ID:**
**Software Version:**
**EIN:** 75-2345616
**Name:** MASONIC TEMPLE LIBRARY & MUSEUM OF FORT WORTH INC

**Part VI Line 7 - Tax Paid Original Return:** 0

**Form 990PF Part VIII Line 1 - List all officers, directors, trustees, foundation managers and their compensation**

| (a) Name and address | (b) Title, and average hours per week devoted to position | (c) Compensation (If not paid, enter -0-) | (d) Contributions to employee benefit plans and deferred compensation | (e) Expense account, other allowances |
|---|---|---|---|---|
| RICHARD BAKER<br>P O BOX 1320<br>FORT WORTH, TX 76101 | CHAIRMAN<br>1 00 | 0 | 0 | 0 |
| JOHN F JOHNSON<br>P O BOX 1320<br>FORT WORTH, TX 76101 | PRESIDENT<br>1 00 | 0 | 0 | 0 |
| HAL R RAY JR<br>P O BOX 1320<br>FORT WORTH, TX 76101 | 1ST VICE PRES<br>1 00 | 0 | 0 | 0 |
| H F SONNY TULL<br>P O BOX 1320<br>FORT WORTH, TX 76101 | 2ND VICE PRES<br>1 00 | 0 | 0 | 0 |
| CLAIR BILLINGTON<br>P O BOX 1320<br>FORT WORTH, TX 76101 | 3RD VICE PRES<br>1 00 | 0 | 0 | 0 |
| ROBERT E FRANKLIN<br>P O BOX 1320<br>FORT WORTH, TX 76101 | SECRETARY<br>1 00 | 0 | 0 | 0 |
| GARY E REYNOLDS<br>P O BOX 1320<br>FORT WORTH, TX 76101 | TREASURER<br>1 00 | 0 | 0 | 0 |
| RITT MOORE<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| JOSH W BERRY<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| GARY PARK<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| J F LITCHFIELD<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| DAVID SEBASTIAN<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| BRUCE W HAMMOND<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| DAVID KISSELBURG<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| RICHARD P EVANS<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| THOMAS P CROW<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| ED KNOTT<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| MELVIN T HAGOOD<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| JERRY TAYLOR<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| ROBERT Y RODRIGUEZ<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| L JOE CRASS<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| DANNY GILBERT<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| JOHN HENDERSON<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| JACK H JETER<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| STEPHEN JONES<br>P O BOX 1320<br>FORT WORTH, TX 76101 | DIRECTOR<br>0 25 | 0 | 0 | 0 |
| PAUL A JOHNSON<br>P O BOX 1320<br>FORT WORTH, TX 76101 | PAST CHAIRMAN<br>0 25 | 0 | 0 | 0 |
| WAYNE E PRICER<br>P O BOX 1320<br>FORT WORTH, TX 76101 | PAST CHAIRMAN<br>0 25 | 0 | 0 | 0 |
| WAYNE D HAGOOD<br>P O BOX 1320<br>FORT WORTH, TX 76101 | PAST CHAIRMAN<br>0 25 | 0 | 0 | 0 |
| MICHE BROUS<br>P O BOX 1320<br>FORT WORTH, TX 76101 | PAST CHAIRMAN<br>0 25 | 0 | 0 | 0 |
| H L WHITFIELD<br>P O BOX 1320<br>FORT WORTH, TX 76101 | BUSINESS MGR<br>25 00 | 13,200 | 0 | 0 |

# EXHIBIT D

**Official biography of Justice D. Michael Wallach**

Source file: Exhibit_D_Mike_Wallach_Official_Biography.pdf

**Source URL**

https://www.txcourts.gov/2ndcoa/about-the-court/justices/justice-mike-wallach/

# Second Court of Appeals

## MIKE WALLACH



### Justice Place 6

**Mike Wallach (2019 to Present)**

Mike Wallach was born in Fort Worth, Texas. After graduating from Fort Worth Eastern Hills High School as the top male graduate in 1973, he attended TCU, where he graduated *magna cum laude* in 1975 with a bachelor's degree in political science and history. He proceeded to earn his J.D. from the University of Houston Law Center, graduating *cum laude* in 1979.

Wallach began his legal career as a litigation attorney at Shannon, Gracey, Ratliff & Miller in Fort Worth. After working at this firm for twelve years, he opened his own firm named Wallach, Jones & Moore, P.C., where he practiced until he was elected to serve as judge of the 348th District Court in Tarrant County beginning in 2017. In 2019, Governor Greg Abbott appointed Wallach to the Second Court of Appeals, where he currently serves.

Wallach has over 35 years of experience in the courtroom and tried over 100 civil jury trials prior to taking the bench. He is Board Certified in Personal Injury Trial Law by the Texas Board of Legal Specialization and is also certified as a Civil Trial Advocate by the National Board of Trial Advocacy. He is an Emeritus Member of the International Association of Defense Counsel and a former member of the Defense Research Institute and the Federation of Defense and Corporate Counsel. He also held leadership positions in the Texas Association of Defense Counsel for many years, including serving as the organization's president in 2001–02.

Wallach has been an active supporter of the organized bar. He is a long-time member of the State Bar of Texas and the Tarrant County Bar Association. He has been an active participant in continuing legal education activities sponsored by various bar groups, including the State Bar of Texas and the Texas Association of Defense Counsel. He is a Life Fellow of the Texas Bar Foundation and a Sustaining Charter Member of the Tarrant County Bar Foundation. He is also a long-time member of the Texas Bar College.

Wallach is involved in other community organizations as well. He is a Mason and serves as a member of the Board of Governors of Shriners Hospitals for Children-Galveston. He also is a member of Lions International and the Colleyville Lions Club.

***Research by: Perry Cockerell, Clarke Rogers, Martha Johnston, Nathan Allison***

# EXHIBIT E

**Grand Lodge of Texas description of Freemasonry**

Source file: Exhibit_E_Grand_Lodge_of_Texas_What_Is_Freemasonry.pdf

**Source URL**

https://grandlodgeoftexas.org/what-is-freemasonry

# WHAT IS FREEMASONRY?



Freemasonry is a fraternity. Its membership is restricted to men, but there is no hazing as is found in some college fraternities. The Masonic Order is a serious group. It exists to take good men and help them to become better men. Thus, it is not a reform society. It does not exist to reform


## This website uses cookies.

We use cookies to analyze website traffic and optimize your website experience. By accepting our use of cookies, your data will be aggregated with all other user data.

ACCEPT

began to accept as members men who did not work in the building trade. Eventually whole lodges composed of such persons arose, leading to a transition from lodges being composed of stone masons to lodges being composed of men from other occupations who gathered and shared a ritual replete with allusions to carpentry, architecture, and stone masonry.

In 1717, four of these lodges in England met and formed the first Grand Lodge. A Grand Lodge is a Masonic body having jurisdiction over the lodges within a certain geographical area. Each state has its own Grand Lodge. Also the District of Columbia has its own Grand Lodge.

Symbolic, Craft, or Blue Lodge Masonry has three degrees. The three degrees are, in order: Entered Apprentice, Fellow Craft, and Master Mason. In early Speculative Masonry there was only one degree. Later a two-degree system developed and finally the three-degree system of today evolved and was firmly in place by around 1760 A.D.

A “degree” is a drama in which a newcomer to Masonry, the candidate, is made to play a key part. These dramas have several characteristics and are progressive in nature, that is, they build on each other. These dramas are enacted with only Masons being present and are for the purpose of moral instruction. A unique characteristic of each Masonic degree is an “obligation” taken by the candidate. The obligation is an oath taken for the purpose of instructing the candidate in his Masonic duty.

The three degrees have a biblical basis. Much biblical imagery is used in the ritual of the degrees. The central biblical image used in Masonic ritual is that of the building of King Solomon’s Temple, as meticulously described for us in the Old Testament books of I Kings and II Chronicles. Whenever a Masonic lodge is in session, the Holy Bible is open upon the lodge’s altar.

Masonry does require of its adherents a belief in God and in life after death, though it asks no one to expound upon the particulars of his understanding of those two beliefs. There is some memory work the candidate must learn after each degree is conferred upon him. He has a set amount of time to learn the catechism, that is, a set of questions and answers, and to recite them before the lodge members at a lodge meeting.

Masonry is not a religion. There is nothing in Freemasonry to interfere with a man’s religious life

## This website uses cookies.

We use cookies to analyze website traffic and optimize your website experience. By accepting our use of cookies, your data will be aggregated with all other user data.

ACCEPT

Masonry asks its candidates not to tell the details of its ritual to non-Masons. This is not because Masonry is ashamed of anything. It is because an element of secrecy serves to heighten interest in Masonic teaching. It is also because most people would not benefit from being introduced to Masonic teachings out of the context of the Masonic degree system.

Why do Masons keep their rituals a secret? For the same reason that the ancient stonemasons kept their trade secrets. Their secrecy helped to maintain a better quality of work. Our secrecy today helps us to make a good man better. It is difficult to believe that the secrets of Masonry are evil when you consider the heritage of Masonry that includes a long list of influential leaders such as Paul Revere, George Washington, Andrew Jackson, Theodore Roosevelt, Douglas MacArthur, Franklin D. Roosevelt, Harry Truman, Stephen F. Austin and Sam Houston. It is difficult to believe that the secrets of Masonry are evil when you see so many Masons working as a vital part of every community to provide better churches, better schools and better governments. It is difficult to look into the eyes of a little child in a Shrine Hospital and say the secrets of Masonry are evil. If we really believe the biblical teaching, "by their fruits ye shall know them" then we must believe that the secrets of Masonry really do help to make a good man better.

The influence of Masonry is like the influence of the home and the influence of the church. It does not produce perfect human beings. Despite the best efforts of the home there has never been a perfect child. Despite the best efforts of the church there has never been a perfect Christian. Despite the best efforts of Masonry there has never been a perfect Mason. Nevertheless there is a place for all these in our society. Man's basic nature is such that he needs every good influence he can get. He needs the powerful influence of a good home. He needs powerful influence of a dedicated church made up of dedicated believers. He needs the influence of dedicated teachers in the public schools. But, when it is all said and done, it doesn't hurt to have a little extra push that comes from civic organizations, from professional organizations and from fraternal organizations. Masonry has a proud heritage of 171; years of service to the State of Texas and we hope this discussion has helped you come to a better understanding of the purpose of our fraternal organization. Texas Masonry now looks to the future with the hope that a better understanding will allow the lodge to take its rightful place in every Texas community, right alongside of the church, the home, the schools, and the civic organizations as a positive force for good. With this better understanding there is every reason to believe that we can all work together to make our government, our schools and our churches even stronger than before. The strength

## This website uses cookies.

We use cookies to analyze website traffic and optimize your website experience. By accepting our use of cookies, your data will be aggregated with all other user data.

ACCEPT

issued and later a charter. This first Texas lodge was called Holland Lodge No. 36. It was named after then Grand Master of Masons in Louisiana, John Henry Holland. Anson Jones was the first Worshipful Master of Holland Lodge No. 36, now Holland Lodge No. 1. The charter was brought by John M. Allen and given to Anson Jones just prior to the battle of San Jacinto.

Two more Texas lodges were formed, also given dispensation and charter by the Grand Lodge of Louisiana. They were: Milam Lodge No. 40 in Nacogdoches, and McFarland Lodge No. 41 in San Augustine. Both were formed in 1837. These two lodges, together with Holland Lodge No. 36, sent representatives to meet in Houston and established the Grand Lodge of the Republic of Texas. The convention elected Anson Jones the first Grand Master of Masons in Texas. It should be noted that Anson Jones was the fourth and final President of the Republic of Texas, prior to becoming a state.

There are nominal one-time fees collected for the conferring of the three degrees. After that a Mason pays yearly dues to the lodge of which he has become a member. No Mason is supposed to ask another person to become a Mason. It is up to the individual man who has an interest in becoming a Mason to ask a Mason he knows for a petition to join the fraternity.

Up Next: Becoming a Texas Mason
or
Contact Us: Membership Inquiry Form

COPYRIGHT © 2026 GRAND LODGE OF TEXAS - ALL RIGHTS RESERVED. ACE

# EXHIBIT G

**Preserved professional profile of Robley Evans Sicard**

Source file: Exhibit_G_Robley_Sicard_LinkedIn_Experience.pdf

**Source URL**

https://www.linkedin.com/in/robleysicard/details/experience/

# Experience

## Substitute Teacher
Fort Worth ISD · Part-time
Jan 2024 - Present · 2 yrs 7 mos

## Challenge Course Facilitator
Leadership on the Move · Part-time
Sep 2021 - Present · 4 yrs 11 mos
Ponder, Texas

I work with groups of all ages and backgrounds to deliver experiential learning activities designed to enhance teamwork, communication, and leadership skills. Leveraging my personal experience as an attorney and a robust understanding of group dynamics and outdoor adventure principles, I guide diverse groups through high ropes courses, problem-solving initiatives, and trust-building exercises to achieve the group's intended goals, which can include developing or honing leadership, communication, and dispute-resolution skills. I am committed to safety and participant satisfaction, using a "challenge by choice" model that encourages personal and group growth while respecting individual preferences or concerns.

**Teambuilding, Personal Development and +4 skills**

## Director of Operations, YMCA Camp Carter
YMCA of Metropolitan Fort Worth · Full-time
Jan 2023 - May 2024 · 1 yr 5 mos
Fort Worth, Texas, United States · On-site

As the director of operations of YMCA Camp Carter, I oversaw the facilitation and development of an Outdoor Education department that served over 10,000 area students yearly through half-day, full-day, and overnight field trip experiences; the management and development of a summer day- and overnight-camp program that served over 1,200 campers each summer; and oversaw a retreat department that provided outdoor experiences to area nonprofits, commercial businesses, and families, with a focus on tailoring their experiences to meet their particular needs.

I fostered relationships with community members to raise funds to improve camp programming and facilities, and secured over $50,000 in grant funding to revive the Camp Carter community garden. And working closely with my team, I navigated organizational dynamics to develop sustainable and engaging programming providing both educational content and memorable outdoor experiences, as well as seeking to improve and maintain the 360-acre, 75-year old, Camp Carter property to serve the community for decades to come.

**Teambuilding, Outdoor Recreation and +6 skills**

## Attorney

GRIFFITH, JAY & MICHEL, LLP · Full-time
Apr 2022 - Jan 2023 · 10 mos
Fort Worth, Texas, United States

As an attorney with Griffith, Jay, & Michel, I handled complex civil appeals in all levels of state and federal court.

**Writing**

---

### Challenge Course Facilitator
YMCA Camp Carter · Part-time
Mar 2021 - Jan 2023 · 1 yr 11 mos
Fort Worth, Texas, United States

As a challenge course facilitator, I facilitate low- and high-ropes course activities for children and adults in various contexts - corporate groups, professional organizations, sports teams, outdoor-education students, and summer campers. I am level 2 certified by the Association of Challenge Course Technology and have diverse experience facilitating. At the YMCA Camp Carter Challenge Course, this included no-prop activities; low elements including the spider web, whale watch, and treetops; and high elements including a double zipline, a 60-foot rock climbing tower, an Alpine Tower, a giant swing, and a Leap of Faith.



**Alpine Tower**
Camp Carter's Alpine Tower - always exciting!

**Teambuilding, Team Building and +4 skills**

---

### Staff Attorney
State of Texas · Full-time
Aug 2015 - Apr 2022 · 6 yrs 9 mos
Fort Worth, Texas, United States · On-site

As a staff attorney for Chief Justice Bonnie Sudderth and other members of the court, I handled complex civil and criminal appeals from 14 counties in the Second Appellate District of the State of Texas. I assisted the justices with legal research and writing in drafting opinions and peer-reviewed work by justices and fellow staff attorneys to ensure legal and grammatical accuracy prior to opinions being released for publication.

Additionally, I developed and delivered CLE programs about the court of appeals and outreach in the form of a tour of the Court of Appeals facility to welcome and educate the public about the processes and procedures of the Court and its role within the Texas Judicial System.

**Legal Writing, Legal Research and +4 skills**

---

### Associate Attorney
GRIFFITH, JAY & MICHEL, LLP · Full-time
Sep 2010 - Aug 2015 · 5 yrs
Dallas-Fort Worth Metroplex · On-site

As an associate attorney, I acquired invaluable expertise across various legal domains including appellate law, family and probate law, and civil litigation. I briefed cases at all levels of the state and

# EXHIBIT H

**Family notice for Mary Lattimore Evans**

Source file: Exhibit_H_Mary_Lattimore_Evans_Obituary.pdf

**Source URL**

https://www.legacy.com/us/obituaries/dfw/name/mary-evans-obituary?id=7883472

Star-Telegram

Search by Name

Evans / Mary Evans

Send Flowers

Share Follow

**BORN** 1923

**DIED** 2020

**ABOUT** Paschal High School
University of Texas

**FUNERAL HOME** H.M. Patterson & Son-Arlington Chapel
173 Allen Road NE
Atlanta, Georgia

**RECORDS**
View more records for Evans on Ancestry.com®
Sponsored

## Mary Evans Obituary

Mary Lattimore Evans
July 28, 1923 - December 16, 2020

Robley Shirey. She had lived in Rome, Georgia, for the past 40 years.
She grew up in Fort Worth, graduating from Paschal High School in 1941. She spent one year at Sullins College, in Bristol, Virginia, then transferred to the University of Texas, where she joined Zeta Tau Alpha sorority, an organization she remained active in throughout her life.
The night she met a handsome young Aggie, Captain Robley David Evans, on a blind date, he told her he was going to marry her, and 30 days later, on March 2, 1946, he did. A survivor of the Bataan Death March, he had recently been rescued after more than three years in Japanese prison camps. They shared an extraordinarily close and happy partnership for 52 years, until his death in 1998.
An amazing communicator, Mary Kay seldom lost track of a friend, even through frequent moves during Bob's postwar hospitalizations and his 30-year career at Phillips Petroleum. She stayed in touch with her friends from Fort Worth and college as she made new friends in Shreveport, Dallas, Houston, Atlanta, Bartlesville, and Rome.
She loved to visit, describing herself as having been "vaccinated with a phonograph needle." She wrote beautiful letters that touched and changed the lives of the recipients, letters that have been kept, treasured, and reread as the years pass.
Mary became an integral part of every life she touched, so much so that the children of her friends and relatives kept up with her, often traveling long distances to come see her. Simply put, she cared for family and friends, making a difference in their lives by being a constant source of support and love.
Mary Kay Evans was preceded in death by her husband, her brother, Judge Hal McKnight Lattimore and his wife, Glenn Hill Lattimore.
She is survived by her son, Judge David Lattimore Evans and his wife, Phyllis, of Fort Worth; her daughter, Robley Katherine Evans Shirey and her husband, John, of Roswell, Georgia; four granddaughters, Ann Katherine Evans, Katherine Elizabeth Shirey, Mary Rebecca Shirey Beckett and her husband, John, and Robley Evans Sicard and her husband, Brad; five great-grandsons: Riley Alexander Olsen, William Yates Beckett, Charlie David Sicard, Henry Seabrook Beckett, and Warren Robley Sicard; a loving extended family and countless friends.
The surviving family and friends wish to express their appreciation to Robley Shirey and her husband John who made such a difference in the quality of Mary's life since Bob's passing.
Considering the current public health crisis, a private memorial will be held at a later date. In lieu of flowers, a memorial donation may be made to the Atlanta Alpha Endowed Scholarship Fund c/o Zeta Foundation, 1036 S. Rangeline Road, Carmel IN, 46032, or a charity of your choice.

To plant trees in memory, please visit the Sympathy Store.

Published by Star-Telegram from Dec. 27 to Dec. 28, 2020.

**Evans Pages**
Find more records

×

# EXHIBIT I

**Preserved Wallach social-media identification capture**

Source file: Exhibit_I_Wallach_Facebook_2COA.png

**Source URL**

https://www.facebook.com/

*Plaintiff's preserved capture; the direct profile URL is not shown in the source image.*

7:44 LTE 49

Mike Wallach

All Photos Reels

Justice, 2nd Court of Appeals, Place 6
Sep 7, 2019 - Present · 7 years, 1 month

See more work

## Education

University of Houston
Class of 1979

See more education

## Friends

See all



1m

Darlene Larson H...
9+ new



Richard Wood
96 mutual friends



Mike Laird
136 mutual friends

## Highlights



Featured

Add friend

Message

# EXHIBIT J

**Preserved Wallach Masonic social-media capture**

Source file: Exhibit_J_Wallach_Facebook_Masonic_Post.png

**Source URL**

https://www.facebook.com/

*Plaintiff's preserved capture; the direct post URL is not shown in the source image.*

7:45 LTE 48

Mike Wallach

All Photos Reels

**Mike Wallach**
Sep 7 ·

**Freemasons**
Sep 6 ·

History of Freemasonry

No one knows with certainty how or when the Masonic Fraternity was formed. A widely accepted theory among Masonic scholars is that it arose from the stonemasons' guilds during the Middle Ages. The language and symbols used in the fraternity's rituals come from this era. The oldest document that makes reference to Masons is the Regius Poem, printed about 1390, which was a copy of an earlier work. In 1717, four lodges in London formed the first Grand Lodge of England, and records from that point on are more complete.

Within thirty years, the fraternity had spread throughout Europe and the American Colonies. Freemasonry became very popular in colonial America. George Washington was a Mason, Benjamin Franklin served as the head of the fraternity in Pennsylvania, as did Paul Revere and Joseph Warren in Massachusetts. Other well-known Masons involved with the founding of America included John Hancock, John Sullivan, Lafayette, Baron Fredrick von Stuben, Nathanael Greene, and John Paul Jones. Another Mason, Chief Justice John Marshall, shaped the Supreme Court into its present form.

Over the centuries, Freemasonry has developed into

Add friend Message

late 1700s it was one of the organizations most

they choose, the formation of democratic

# EXHIBIT K

**Moslah Temple March 2022 newsletter excerpts**

Source file: Exhibit_K_Moslah_March_2022_Newsletter.pdf

**Source URL**

https://www.moslahshrine.org/wp-content/uploads/2022/03/March-Newsletter_2022-4.pdf

## MARCH STATED MEETING

Thursday, March 10th, we will have an Open Business Meeting with a guest speaker so bring your lady and guests. **Noble Jim Rumsey** from Sharon Temple, and a member of the Board of Governors of Shriners Children's Texas, will share an **update on Shriners Children's.**

Nobles, we have time-sensitive Shrine business that we need to handle so please arrive at 6:00 PM and meet in the large classroom in the basement. Once business is concluded, we will join our ladies and guests in the Grand Ballroom.

* 6:00 Business Meeting (Nobles only) - Meet in the large classroom in the basement

* 6:30 Dinner – Nobles, ladies, and guests in the Grand Ballroom

* 7:15 Guest Speaker - Noble Jim Rumsey

* 7:50 Social Hour

**RSVP for Meal**

## 2022 Hospital Fund Drive Dates

| | |
|---|---|
| **March**<br>31st (Thu) 6:30pm – Planning Meeting of Unit Presidents & HFD Chairmen with their Ladies at Director's Bldg | **September**<br>23rd (Fri) 6:30pm – Equipment Pickup at Director's Bldg<br>24th (Sat) 9am – 3pm Street Collections |
| **April**<br>21st (Thu) 6:30 pm – Equipment Pickup at Director's Bldg<br>22nd (Fri) 12 – 7pm Collections at Store Fronts (seeking replacements for Spec's locations)<br>23rd (Sat) 9am – 3pm Collections on Street Corners & Store Fronts | **November**<br>5th (Sat) – 6th Annual Moslah Christmas Car Show |
| **General Nobility and Ladies – We Need Your Help!**<br>Contact: Marvin Woods 817-614-9442 or Coty Owens 817-454-8112<br>Director's Building – 2000 Samuels Avenue, Fort Worth | |

## Shrine Hospital Board Members

| | |
|---|---|
| D. Michael Wallach, P.P | Galveston Hospital Board Member |
| William Risk, M.D., P.P. | Galveston Hospital Chairman Emeritus |
| Gary E. Reynolds, P.P | Galveston Hospital Chairman Emeritus |
| Richard P. Baker, P.P | Galveston Hospital Chairman Emeritus |
| James H. King, Jr., P.P | Hospital Board Member Emeritus |
| David Henderson | Galveston Hospital Secretary Emeritus |

*Save the Date:*
*Cornhole Tournament*
*Saturday, July 30*
*Sportsman Spectacular*
*Saturday, August 13*

# MOSLAH TEMPLE 2022 COMMITTEES

**ELECTIVE DIVAN**
Orlando Reyes, Potentate
Jerry E. Henderson, Chief Rabban
Coty B. Owens, Assistant Rabban
Gary Mayben, High Priest & Prophet
Brett Boone, Oriental Guide
Moe Rahmeh, P.P., Treasurer
Jeff Barcafar, P.P., Recorder

**APPOINTIVE DIVAN**
Gene Kolvig, First Ceremonial Master
James Perry, Second Ceremonial Master
Walter "Trey" Smith, Marshal
Robert "Bob" Jones, Chaplain
Barney J. McCasland, Director General Emeritus
James L. Mitchell, Director General
Norman K. Fountain, Captain of the Guard Emeritus
William Knight, Captain of the Guard
James Baker, Outer Guard
Henry Hackbusch, Potentate's Aide
David Grobe, Potentate's Aide
Marvin Woods, Colonel of Uniformed Units

**CEREMONIAL DIVAN**
Damon Scheer – Director
Robert E. Condon
Robert R. Cuykendall, P.P.
James H. King, P.P.
Robert "Sonny" Brown, Jr.
Henry C.F. Hackbusch III
Tim Collier
Cody Cox
Freddie Lopez

**IMPERIAL COUNCIL REPRESENTATIVES**
Orlando Reyes, Potentate
Jerry Henderson, Chief Rabban
Coty B. Owens, Assistant Rabban
Gary Mayben, High Priest & Prophet

**BOARD OF TRUSTEES**
William C. Estill, P.P., 2023
Paul A. Johnson, P.P., 2024

**TO TEXAS SHRINE ASSOCIATION**
Vern G. Ellis, M.D., P.P.
Steven P. O'Neal, P.P.
Orlando Reyes
Jerry E. Henderson, TSA 1st Vice-President
Coty B. Owens
Gary Mayben

**TO MASONIC TEMPLE ASSOCIATION**
J. John Henderson, Jr. 2022
D. Michael Wallach, P.P. 2023
Richard P. Baker, P.P. 2024

**POTENTATE'S REPRESENTATIVE TO UNIFORMED UNITS**
Moe Rahmeh, P.P.

**COLONEL OF UNIFORMED UNITS**
Robert C. "Bob" Brennand, Colonel Emeritus
Billy S. Barnett, Colonel Emeritus
Marvin Woods, Colonel

**COUNCIL OF UNIFORMED UNITS**
Erik Ervin, Chairman
James Wells, Vice-Chairman

Damon Ladd
Bob Symington
Walter Layton
Bob Putnam
Jarrod Plumlee
Scott Williams
David Henderson
R. J. Forester
Larry LeMond
Robert C. (Bob) Brunk
Royce Rose
Don Eber
Tom Lanier
Roger Harn
John McGee
Mark Upton
Wayne Clark
Steve Ledgerwood
Billy Hamilton
John Huffman
Jimmy Flippin
Jim Smith
Dickie Edwards
Chuck Boggess
Tom Smith
Art Pena
Paul Sawyer
Rick Trimble
Greg Mills
William Knight
David Beets
Ron Hall
Michael Handley
Damon Ing
Stoney Burke
Damon Scheer
Chad McMinn
Tim Collier

**BY-LAWS (Units and Clubs)**
Philip Trew, P.P., Chairman

**DIRECTORS STAFF**
Barney McCasland, Director General Emeritus
Jim Mitchell, Director General
Les Keeble, Director 1st Section
David Houston, Director 2nd Section

**ADVISORY COMMITTEE**
Jeff Eaton, P.P., Chairman
Gerald Ledbetter, P.P., Vice-Chairman
W. C. (Bill) Estill, P.P.

# MOSLAH TEMPLE 2022 COMMITTEES

Walter Echols, P.P.
Richard P. Baker, P.P.
Jack T. Kell, III, P.P.
James H. (Jimmy) King, Jr., P.P.
Lonnie H. Poe, P.P.
Paul A. Johnson, P.P.
Gary E. Reynolds, P.P.
William Risk, M.D., P.P.
Robert R. Cuykendall, P.P.
Vern G. Ellis, M.D., P.P.
Charles E. Carruthers, Jr., P.P.
Ray M. Moyer, P.P.
Gary D. Hawkins, P.P.
Richard V. Hall, Jr., P.P.
Don C. Coulson, P.P.
Allen C. Miller, P.P.
Steven P. O'Neal, P.P.
Richard P. Evans, P.P.
Patrick D. Bobbitt, P.P.
Stephen C. Jones, P.P.
Robert L. Lee, P.P.
D. Mike Wallach, P.P.
Harold H. Benefield, P.P.
Phillip H. Trew, P.P.
Jeffrey W. Barcafar, P.P.
Moe Rahmeh, P.P.

**FINANCE COMMITTEE**
Jerry Henderson, Chairman
Coty Owens, Vice-Chairman
Orlando Reyes, Ex Officio
Gary Mayben
Brett Boone
Moe Rahmeh, P.P., Treasurer
Jeff Barcafar, P.P., Secretary

**CIRCUS COMMITTEE**
Orlando Reyes, Honorary Chairman
Jerry Henderson, Chairman
Coty Owens, Vice-Chairman
Gary Mayben, Vice-Chairman
Brett Boone, Vice-Chairman
Moe Rahmeh, P.P, Treasurer
Jeff Barcafar, P.P., Secretary

**AMBASSADORS TO SHRINE CLUBS**
Coty Owens, Divan Representative
K. George White, Chairman

**PILGRAMAGE & HOUSING COMMITTEE**
Jeff Eaton, Chairman
J. Michael Bell, Co-Chairman

**INSURANCE COMMITTEE**
Fulton Abadie, Chairman
Robert L. Lee, P.P.

**MAKE-UP COMMITTEE**
Moslah Temple Clowns

**MEMBERSHIP COMMITTEE**
Gary Mayben, Divan Representative
Chad Gilley, Chairman
Cody Cox, Bedouins & Brew Club
D.P. Payton, Car-Vettes
Don Eber, Clowns
Henry Hackbusch, Clowns & Patrol
Tom Lanier, Clowns & Shifters
Royce Rose, Clowns
Roger Harn, Directors
Steve Ledgerwood, Flying Fez
Dave Harris, Golf
Art Pena, L.O.H.
William Knight, Motor Corps
Bill Jones, Mystic Wheels
Chris Akers, EMSC
Kevin Moss, Shifters
Brett Boone, Oriental Guide

**HOSPITAL FUND DRIVE**
Coty Owens, Divan Representative
David Cook, Chairman Emeritus
Marvin Woods, General Chairman
George White, Shrine Club Chairman
Marvin Champlin, Legal
Coty Owens, Finance
Jim Mitchell, Equipment Pick-Up
Darrel Carothers, Security

**ENTERTAINMENT COMMITTEE**
Brett Boone, Divan Representative
Lynn Ludolph, Chairman Emeritus
Kenny Beck, Chairman
Ron Hall
Jarrod Plumlee
Jerry Wyatt
Sonny Franks
Harold Benefield
David Beets

# MOSLAH TEMPLE 2022 COMMITTEES

**JURISPRUDENCE COMMITTEE**
Judge Sidney C. Farrar, Jr.
Marvin Champlin

**MOSLAH NEWS COMMITTEE**
John Henderson, Jr., Editor
Unit and Shrine Club Representatives

**CHILDREN'S HOSPITAL COMMITTEE**
J. Mike Bell, Chairman
Dr. Vern Ellis, P.P.
Robert R. Cuykendall, P.P., Flying Fez
D. Michael Wallach, P.P.
David L. Henderson
Bill Rhyan, Band
Steve Jones, Bedouins
Tom Smith, Car-Vettes
Royce Rose, Clowns
Danny Turner, Directors
Steve Ledgerwood, Flying Fez
David Peterson, Golf
Dave Sarginson, Golf
Paul Sawyer, L.O.H.
Larry Ramsey, Motor Corps
Jimmy Flippin, Mystic Wheels
Freddie Lopez, Patrol
Tom Lanier, Shifters

**PHOTOGRAPHY COMMITTEE**
Tom Crow
David McCarthy
Harold Benefield, P.P.

**SOUND & LIGHTING COMMITTEE**
Charles Rohde, III, Chairman
Joe Sherwin
Rickey Montey

**DeMOLAY COMMITTEE**
Richard P. Baker, P.P., Chairman

**RECEPTION COMMITTEE**
Tommy Wilson, Chairman
Moslah Temple Bedouins

**MEMORIAL SERVICE COMMITTEE**
Walter "Trey" Smith III, Chairman

**PROVOST COMMITTEE**
Darrell A. Carothers, Chairman
George H. Carter
Bill J. Caster
Robert Cook
W. A. "Joe" Corthay
Bob R. Curtis
Richard Smith

**DONOR RELATIONS COMMITTEE**
Brett Boone, Divan Representative
David L. Henderson, Chairman

**SUNSHINE COMMITTEE**
Richard Luke, Chairman
Laurence J. Maloney

**BLOOD BANK COMMITTEE**
Brett Boone, Divan Representative
Bill Rhyan, Band
Lawrence Maloney, Bedouins
Dan Eaves, Car-Vettes
Ron Hall, Clowns
Harvey Carroll, Directors
Tee Lowe, Flying Fez
D.T. "Dickie" Edwards, Golf
Paul Sawyer, L.O.H.
David Beets, Motor Corps
Bob Roth, Mystic Wheels
Landon Dickerson, Patrol
John Heim, Shifters

**PAST POTENTATES** (**Deceased)*
* E. J. Hosey, U.D. 1914
* Jake F. Zurn 1915
* William James 1916
* M. A. Massey 1917
* E. A. Levy 1918
* George Stapleton 1919
* John Waldrop 1920
* Steve Cooke 1921
* H. T. Pangburn 1922-23
* Frank Taylor 1924
* John F. Lyons 1925
* J. O. Montrief 1926
* A. L. Shuman 1927
* Robert A. Stuart 1928
* Raymond C. Gee 1929
* Paul Rogers 1930
* F. Bert Walker 1931
* Sam B. Cantey, Jr. 1932
* Clarence O. Kraft 1933
* Thomas R. James 1934
* Elmer Renfro 1935

# MOSLAH TEMPLE 2022 COMMITTEES

**PAST POTENTATES** continued (**Deceased)*

* Clyde A. Penry 1936
* R. H. Foster 1937
* B. Max Mehl 1938
* Jesse E. Martin 1939
* W. L. Stewart 1940
* Houston Hill 1941
* Jack McGraw 1942
* Henry A. Lawrence 1943
* Champ Clark 1944
* Melvin J. Miller 1945
* J. M. (Star) Williams 1946
* Jerry L. Fite 1947
* H. Ward Collier, Sr. 1948
* E. Morgan Townsen 1949
* Marvin Mabry 1950
* I. S. McConnell 1951
* R. L. Carnrike 1952
* George I. Billingsley 1953
* Paul L. Hamilton 1954
* R. M. Stovall 1955
* Houston P. Hutchens 1956
* B. W. Garrison, Sr. 1957
* Sproesser Wynn 1958
* C. Victor Thornton 1959
* Barney B. Parker 1960
* Dr. A. Ward Hicks 1961
* Ray F. Holmes 1962
* Robert W. Leonard 1963
* Earnest E. Sanders 1964
* Roy J. Brooks 1965
* John C. Sikes 1966
* Jimmy D. Luttrell 1967
* John G. Kemmerer 1968
* James L. Childs 1969
* William C. Northern,Jr. 1970
* Yale Lary 1971
* James M. Fry 1972
* R. W. McKithan 1973
* R. A. Phillips, Jr. 1974
* Charles J. Murray 1975
* Tom E. Leggett 1976
* C. C. (Cliff) Barnhart 1977
* Carl F. Ellis 1978
* John E. Dieb 1979
* Zach M. Gilliland 1980
* J. Tom Shelton 1981
* George W. Shannon 1982
W. C. (Bill) Estill 1983
* John W. Dillard 1984
* Randall S. Shiflet 1985
Walter Echols 1986
* J. E. (Jim) Harris 1987
* J. Raymond Reeves 1988
Jack T. Kell, III 1989
* Martin W. McAllister 1990
* George R. Nelson 1991
* John J. Desilets 1992
Paul A. Johnson 1993
William Risk, M.D. 1994
* Gerald A. Wyatt, Sr. 1995
Vern G. Ellis, M.D. 1996
* Thomas A. Clarkson 1997
Richard P. Baker 1998
James H. King, Jr. 1999
Lonnie H. Poe 2000
Gary E. Reynolds 2001
Robert R. Cuykendall 2002
Charles E. Carruthers, Jr. 2003
Ray M. Moyer 2004
* Don R. Russell 2005
Gary D. Hawkins 2006
Richard V. Hall 2007
Don A. Coulson 2008
Allen C. Miller 2009
Steven P. O'Neal 2010
Richard P. Evans 2011
Patrick D. Bobbitt 2012
Stephen C. Jones 2013
Robert L. Lee 2014
D. Michael Wallach 2015
Harold H. Benefield 2016
Philip H. Trew, Jr. 2017
Jeffrey W. Barcafar, Jr. 2018
Moe Rahmeh 2019
Jeffery L. Eaton 2020
Gerald Ledbetter 2021

# EXHIBIT L

**Family notice for Eileen Petty Beardsley**

Source file: Exhibit_L_Eileen_Beardsley_Obituary.pdf

**Source URL**

https://morelandfuneralhome.com/obituary/eileen-beardsley/

Moreland
Funeral Home




Return to Obituaries



**March 28, 1926 - September 13, 2015**

Leave a message of condolence

## Service

Thursday, September 17th 12 noon Central College Presbyterian Church

## Burial

Asbury Cemetery

Print

BEARDSLEY

Eileen Petty Beardsley, of Westerville, died peacefully Sunday, September 13, 2015. Born in Franklin County on March 28, 1926, to Howard and Mary Alice Petty. Eileen graduated from Mifflin High School and San Diego State University. She taught elementary school for many years and later owned Beacon Hill Nursery School in Lakeland, Florida. She was an active member of DAR, Colonial Dames, United Empire Loyalists, and First Families of Ohio. Eileen loved music all of her life; in her early years, she enjoyed playing cello with local orchestras. She loved reading, politics, her church, and travel. Eileen had visited all 50 states and 17 foreign countries. Eileen was an active member of Central College Presbyterian Church and was honored to be given a Lifetime Membership to her circle of Presbyterian Women, as well as being named a Woman of Faith. She also enjoyed serving as a Stephen Minister. She was the widow of Paul Eric Beardsley, and the sister of Francis (Maxine) Petty, Louise (Frank) O'Farrell, Neil (Nancy) Petty, Dorothy Jean (Carroll) Davis, and Jim (Sherry) Petty. She will be missed by her children, Ruth Osborn of Columbus, Matthew Osborn of Columbus, and Phyllis (David) Evans of Ft. Worth, Texas. She was especially proud of her grandchildren, Anne-Marie Robles of San Sebastian, Spain, Ann Evans and Robley (Brad) Sicard of Ft. Worth, Beth Osborn of Barcelona, Spain, and John Osborn of Columbus, and her special great-grandson, Charlie Sicard. A memorial service will be held at Central College Presbyterian Church, 975 S. Sunbury Rd., Westerville, on Thursday, September 17, 2015 at 12 Noon. The family sends a special thank you to the Ohio Health Hospice Team.

Return to Obituaries

Moreland
Funeral Home

Privacy Policy About Contact

2021 Moreland Funeral Home. All Rights Reserved

# EXHIBIT M

**2020 Form 990 for Masonic Temple Association of Fort Worth**

Source file: Exhibit_M_Masonic_Temple_Association_2020_Form_990.pdf

**Source URL**

https://projects.propublica.org/nonprofits/organizations/750418310

efile GRAPHIC print - DO NOT PROCESS | As Filed Data - | DLN: 93493316002191

Form **990**

Department of the Treasury
Internal Revenue Service

# Return of Organization Exempt From Income Tax

**Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)**

▶ Do not enter social security numbers on this form as it may be made public.

▶ **Go to *www.irs.gov/Form990* for instructions and the latest information.**

OMB No. 1545-0047

**2020**

**Open to Public Inspection**

**A For the 2020 calendar year, or tax year beginning 01-01-2020 , and ending 12-31-2020**

**B** Check if applicable:
☐ Address change
☐ Name change
☐ Initial return
☐ Final return/terminated
☐ Amended return
☐ Application pending

**C** Name of organization
MASONIC TEMPLE ASSOCIATION OF FORT WORTH

Doing business as

Number and street (or P.O. box if mail is not delivered to street address) | Room/suite
P O BOX 1320

City or town, state or province, country, and ZIP or foreign postal code
FORT WORTH, TX 76101

**D Employer identification number**
75-0418310

E Telephone number
(817) 335-3518

**G** Gross receipts $ 180,000

**F** Name and address of principal officer:
MOE RAHMEH
1100 HENDERSON
FORT WORTH, TX 76102

**H(a)** Is this a group return for subordinates? ☐ Yes ☑ No
**H(b)** Are all subordinates included? ☐ Yes ☐ No
If "No," attach a list. (see instructions)
**H(c)** Group exemption number ▶

**I** Tax-exempt status: ☐ 501(c)(3) ☑ 501(c) ( 2 ) ◀ (insert no.) ☐ 4947(a)(1) or ☐ 527

**J Website:** ▶ N/A

**K** Form of organization: ☑ Corporation ☐ Trust ☐ Association ☐ Other ▶

**L** Year of formation: 1929 | **M** State of legal domicile: TX

## Part I Summary

**Activities & Governance**

1 Briefly describe the organization's mission or most significant activities:
THE ASSOCIATION OWNS REAL ESTATE THAT IT LEASES TO VARIOUS MASONIC ORGANIZATIONS.

2 Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | | |
|---|---|---|---|
| 3 | Number of voting members of the governing body (Part VI, line 1a) | 3 | 30 |
| 4 | Number of independent voting members of the governing body (Part VI, line 1b) | 4 | 0 |
| 5 | Total number of individuals employed in calendar year 2020 (Part V, line 2a) | 5 | 0 |
| 6 | Total number of volunteers (estimate if necessary) | 6 | 40 |
| 7a | Total unrelated business revenue from Part VIII, column (C), line 12 | 7a | 0 |
| b | Net unrelated business taxable income from Form 990-T, line 39 | 7b | 0 |

| | | | Prior Year | Current Year |
|---|---|---|---|---|
| Revenue | 8 | Contributions and grants (Part VIII, line 1h) | | 0 |
| | 9 | Program service revenue (Part VIII, line 2g) | | 0 |
| | 10 | Investment income (Part VIII, column (A), lines 3, 4, and 7d ) | | 0 |
| | 11 | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 92,886 | 95,481 |
| | 12 | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 92,886 | 95,481 |
| Expenses | 13 | Grants and similar amounts paid (Part IX, column (A), lines 1-3 ) | | 0 |
| | 14 | Benefits paid to or for members (Part IX, column (A), line 4) | | 0 |
| | 15 | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | | 0 |
| | 16a | Professional fundraising fees (Part IX, column (A), line 11e) | | 0 |
| | b | Total fundraising expenses (Part IX, column (D), line 25) ▶0 | | |
| | 17 | Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) | 400 | 0 |
| | 18 | Total expenses. Add lines 13-17 (must equal Part IX, column (A), line 25) | 400 | 0 |
| | 19 | Revenue less expenses. Subtract line 18 from line 12 | 92,486 | 95,481 |
| Net Assets or Fund Balances | | | **Beginning of Current Year** | **End of Year** |
| | 20 | Total assets (Part X, line 16) | 3,600,024 | 3,600,247 |
| | 21 | Total liabilities (Part X, line 26) | 3,018,625 | 2,923,367 |
| | 22 | Net assets or fund balances. Subtract line 21 from line 20 | 581,399 | 676,880 |

## Part II Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

**Sign Here**

****** | 2021-05-16
Signature of officer | Date

MOE RAHMEH CHAIRMAN
Type or print name and title

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN P01046615 |
|---|---|---|---|---|
| Firm's name ▶ SPILLAR MITCHAM EATON & BICKNELL LLP | | | Firm's EIN ▶ | |
| Firm's address ▶ 110 NORTH SYLVANIA AVENUE FORT WORTH, TX 76111 | | | Phone no. (817) 877-5050 | |

May the IRS discuss this return with the preparer shown above? (see instructions) ☑ Yes ☐ No

**For Paperwork Reduction Act Notice, see the separate instructions.** Cat. No. 11282Y Form **99**

**Form 990, Part VII - Compensation of Officers, Directors,Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors**

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) Individual trustee or director | Institutional Trustee | Officer | Key employee | Highest compensated employee | Former | (D) Reportable compensation from the organization (W- 2/1099-MISC) | (E) Reportable compensation from related organizations (W- 2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| JOHN F JOHNSON<br>CHAIRMAN | 0.00 | X | | X | | | | 0 | 0 | 0 |
| JOHN HENDERSON<br>PRESIDENT | 0.00 | X | | X | | | | 0 | 0 | 0 |
| D MICHAEL WALLACH<br>1ST VICE PRES | 0.00 | X | | X | | | | 0 | 0 | 0 |
| ROBERT GOODE<br>2ND VICE PRES | 0.00 | X | | X | | | | 0 | 0 | 0 |
| HENRY HACKBUSCH<br>3RD VICE PRES | 0.00 | X | | X | | | | 0 | 0 | 0 |
| ROBERT E FRANKLIN<br>SECRETARY | 0.00 | X | | X | | | | 0 | 0 | 0 |
| GARY REYNOLDS<br>TREASURER | 0.00 | X | | X | | | | 0 | 0 | 0 |
| RIT MOORE<br>DIRECTOR | 0.00 | X | | | | | | 0 | 0 | 0 |
| BILLY MOORE<br>DIRECTOR | 0.00 | X | | | | | | 0 | 0 | 0 |
| GREG WRIGHT<br>DIRECTOR | 0.00 | X | | | | | | 0 | 0 | 0 |

# EXHIBIT N

**Second Court of Appeals en banc denial in No. 02-25-00455-CV**

Source file: Exhibit_N_Second_Court_En_Banc_Denial_02-25-00455-CV_2025-10-02.pdf

**Source URL**

https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=7bd8869b-3e67-462b-90a2-2341f4f0b769&coa=coa02&DT=MT%20ENBANC%20DISP&MediaID=621a6564-0abb-41be-8dd8-ad250907ed43

FILE COPY

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

No. 02-25-00455-CV

IN RE SAMUEL RANDLES, Relator

---

Original Proceeding
231st District Court of Tarrant County, Texas
Trial Court No. 231-619733-17 and 322-619733-17

---

**ORDER**

We have considered relator's "Motion for En Banc Reconsideration."

It is the opinion of the court that the motion for en banc reconsideration should be and is hereby denied and that the opinion of September 5, 2025, stands unchanged.

We direct the clerk of this court to send a notice of this order to the relator, the attorneys of record, the trial court judge, and the trial court clerk.

Dated October 2, 2025.

Per Curiam

En Banc

# EXHIBIT O

**Second Court of Appeals en banc denial in No. 02-26-00216-CV**

Source file: Exhibit_O_Second_Court_En_Banc_Denial_02-26-00216-CV_2026-04-23.pdf

**Source URL**

https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=9720336c-9454-4d38-aefe-1a9f995573f4&coa=coa02&DT=MT%20ENBANC%20DISP&MediaID=e7bf93db-7b5f-429a-a6c4-5e21d5256f60

FILE COPY

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

No. 02-26-00216-CV

IN RE SAMUEL RANDLES, Relator

---

Original Proceeding
322nd District Court of Tarrant County, Texas
Trial Court No. 322-619733-17

---

## ORDER

We have considered relator's "Motion for En Banc Reconsideration."

It is the opinion of the court that the motion for en banc reconsideration should be and is hereby denied and that the opinion of April 8, 2026, stands unchanged.

We direct the clerk of this court to send a notice of this order to the relator, the attorneys of record, the trial court judge, and the trial court clerk.

Dated April 23, 2026.

Per Curiam

En Banc

# EXHIBIT P

**October 16, 2026 preservation and voluntary-production notice to the Tarrant County Criminal District Attorney's Office**

Source file: Gmail sent-message record 1a14587fff0f3875

**Source URL**

https://mail.google.com/mail/u/?authuser=randles.sam%40gmail.com#all/1a14587fff0f3875

*Plaintiff's sent-message record; access to the linked Gmail record requires account authorization.*

# SENT EMAIL RECORD

**From:** Samuel Christopher Randles <randles.sam@gmail.com>

**Sent:** October 16, 2026, 11:25:03 a.m. Central Time

**To:** Grayson A. Ezzell <gaezzell@tarrantcountytx.gov>

**Cc:** Roberto Gonzalez III <rgonzalez3@tarrantcountytx.gov>

**Subject:** Notice, Preservation, and Request for Voluntary Production — EMSISD Police Records

**Attachment:** 31_101326_AMENDED_COMPLAINT.pdf

**Gmail Message ID:** a14587fff0f3875

---

Mr. Ezzell:

I am copying the Court and providing the attached First Amended and Supplemental Verified Complaint in Randles v. Eagle Mountain-Saginaw Independent School District, et al., No. 4:26-cv-00999-O-BP.

The federal action includes claims under 42 U.S.C. § 1985 arising from an alleged conspiracy involving EMSISD actors and the use of governmental authority and information against me. Evidence obtained in the related family proceedings also raises substantial concerns regarding the transmission of EMSISD Police reports and investigative information to Jennifer Randles, Laurie Robinson, and other outside parties.

Please preserve all records concerning EMSISD, EMSISD Police, Officer Larry Lance, and the investigation or prosecution of Cause Nos. 1918605 and 1934985, including records showing the receipt, disclosure, transmission, access, forwarding, or use of EMSISD Police information and communications with EMSISD personnel or the persons identified above.

I also request that the District Attorney's Office voluntarily produce this information, including communications, transmission records, access records, and other materials showing who obtained, provided, received, or used the underlying police information.

The State and Court are now expressly on notice of the pending federal litigation, the § 1985 allegations, and the evidentiary issues concerning EMSISD, Officer Lance, and other named defendants. Any subsequent participation in, facilitation of, or failure to address the conduct identified after receiving this notice may be relevant to any additional federal claims.

Please confirm preservation and advise whether the requested information will be produced.

Samuel Christopher Randles
Cause Nos. 1918605 / 1934985
Randles v. Eagle Mountain-Saginaw Independent School District, et al.
No. 4:26-cv-00999-O-BP

# EXHIBIT Q

**Timothy Cole Exoneration Review Commission pink-list report excerpt**

Source file: Exhibit_Q_TCERC_Improving_Discovery_2015.pdf

**Source URL**

https://www.txcourts.gov/media/1125653/2015_1029_TCERC.pdf

*Includes the report title page and PDF page 54, internally numbered page 12.*

# TEXAS JUDICIAL COUNCIL

205 WEST 14TH STREET, SUITE 600 - TOM C. CLARK BUILDING - (512) 463-1625 - FAX (512) 936-2423
P. O. BOX 12066 - AUSTIN, TEXAS 78711-2066

CHAIR:
HON. NATHAN L. HECHT
Chief Justice, Supreme Court

VICE CHAIR:
HON. SHARON KELLER
Presiding Judge, Court of Criminal Appeals

EXECUTIVE DIRECTOR:
DAVID SLAYTON

## TIMOTHY COLE EXONERATION REVIEW COMMISSION
## AGENDA

**October 29, 2015**
**2:00-4:00 P.M.**
**Supreme Court of Texas**
**201 W. 14th Street**
**Austin, Texas 78701**

**Action and Discussion Items:**

**I. Commencement of Meeting**

**II. Attendance of Members** – *Wesley Shackelford*

**III. Remarks from Bill Authors** – *Representative Ruth Jones McClendon & Senator Rodney Ellis*

**IV. Introductions of Commission and Advisory Members**

**V. Staff Introductions**

**VI. Election of the Commission's Presiding Officer**

**VII. Reports and Discussion Items**

a. Presentation of exoneration story - *Richard Miles*
b. Review charge to Commission/HB 48 – *Wesley Shackelford*
c. Discuss interests and goals - *Commission and Advisory Members*
d. Discuss scope of work – *Presiding Officer*
e. Report on implementation of recommendations from Timothy Cole Advisory Panel on Wrongful Convictions (2010) – *Wesley Shackelford*
f. Report on Texas Forensic Science Commission's notifications task force related to DNA mixture interpretation - *Dr. Vincent Di Maio*

**VIII. Public Comment**

**IX. Other Business**

## Improving Discovery: After the Michael Morton Act

A couple of issues have arisen regarding implementation of the Michael Morton Act which merit the commission's consideration.

**Ensure impeachment evidence available for police witnesses**. The Texas Criminal Justice Integrity Unit identified a gap in reporting impeachment information about police officers who've been disciplined for lying or other serious misconduct.[19] Particularly in civil service cities, that information Is treated as part of a confidential personnel file which is not disclosed to local District Attorneys' offices, even though prosecutors have a duty under *Brady v. Maryland* and the Michael Morton Act to disclose that information to the defense. In many jurisdictions, DA's offices maintain what's sometimes called a "do not sponsor" list – in Tarrant County it's known as the "pink list" – of officers with disciplinary problems so severe that prosecutors won't put them on the stand. But if agencies don't disclose that information to prosecutors, they never get to make those judgments.

A simple fix to this problem might be to apply the Public Information Act to law enforcement agencies operating under Ch. 143 of the Local Government Code. More than 2,500 law enforcement agencies statewide operate with disciplinary files largely public under the Public Information Act, with just more than 70 agencies operating with secret files under the civil service code. Often, agencies with overlapping jurisdictions have different laws governing their disciplinary records. For example, the Public Information Act governs disciplinary files at the Travis County Sheriff, while Ch. 143.089(g) of the Local Government Code governs them at the Austin Police Department. Making that information uniformly transparent under the Public Information Act would both solve the discovery problem and promote greater accountability among law enforcement.

**Ensure disclosure of informant deals.** While the Michael Morton Act requires prosecutors to turn over evidence that is favorable to the defense, including impeachment material about witnesses, it does not detail specific information which must be disclosed when the prosecution plans to use incentivized witness testimony. In its research document, the Tim Cole advisory panel recommended that prosecutors provide affirmative disclosure to the defense of all "statements made by the informant, rewards or benefits the informant has or will receive for his or her testimony, whether the informant has testified against other defendants, and any inconsistent statements made by the jailhouse informant."[20] The commission should revisit that research and recommend specific disclosure requirements for incentivized testimony.

Other states have enacted laws to strengthen pre-trial discovery requirements when the government plans to introduce informant testimony. In Illinois, upon the recommendation of the Illinois Commission on Capital Punishment, the legislature enacted a statute imposing special disclosure requirements for capital cases including: 1) the complete criminal history of the informant; any deal, promise, inducement or benefit that the offering party has made or will make in the future to the informant; 2) the statements made by the accused; 3) the time and place of the statements and their disclosure to law enforcement, and the names of all individuals present when the statements were made; 4) whether the informant recanted statements; 5) other cases the informant has testified in and any incentives he received for that testimony; and 6) any other information relevant to the informant's credibility.[21]

# EXHIBIT R

**ECF No. 33 Lance-related-case excerpts**

Source file: 33_102026_AMENDED_NOTICE_OF_RELATED_CASE.pdf

**Source URL**

https://ecf.txnd.uscourts.gov/

*Filed in this action as ECF No. 33; excerpts are ECF pages 7 through 9.*

17. Plaintiff discloses cause 1918605 because it shares the family-court setting, participants, physical evidence, telephone-custody issues, and alleged use of criminal process with the related civil matters. Plaintiff does not rely on chronology alone to establish that the prosecution was caused by the later federal filing, and he does not concede the charge, indictment, bond restraints, multiple sealed transactions by the State, assignment decisions, or other adverse acts are valid, lawful, independent, or entitled to deference beyond that required by governing law.

**C. Criminal cause No. 1934985**

18. The third connected criminal proceeding is State of Texas v. Samuel Christopher Randles, No. CCC3-1934985, pending and reassigned to County Criminal Court No. 2 of Tarrant County, Texas, per local rules. Plaintiff has asked for record clarification restyling and updated records in the docket and the court has refused to do so, despite motions and in-person requests. The complaint and information allege evading arrest or detention and criminal trespass arising from the August 11, 2026 Greenfield Elementary encounter. EMSISD Police is the filing agency, and Larry Lance is identified in the charging papers. Those allegations are disputed. The same encounter is pleaded in this federal action as renewed enforcement of the challenged 2024 CTW, an unlawful seizure, and excessive force.

19. This action was filed August 13, 2026. On August 16, Plaintiff transmitted the filed complaint and Rule 65 papers to EMSISD, Lance, Grady, the Superintendent, and District counsel. The county record shows the complaint and information in cause 1934985 were filed August 24. Plaintiff alleges that, after Defendants received notice of this federal action, they pursued criminal charges and EMSISD-supplied bond conditions against him. Plaintiff further alleges that EMSISD investigative materials were provided to Jennifer Randles and her counsel, Laurie Robinson, for use in the related family proceeding, creating coordinated criminal and family-litigation pressure intended to burden or deter Plaintiff's attendance, preparation of

evidence, and testimony in this Court. Plaintiff does not concede probable cause, lawful notice, consent or ownership authority, the lawfulness of any attempted detention or arrest, the validity of the 2024 CTW, the propriety of the bond conditions, or the identity and route of any information transmitter not yet established by discovery.

**D. Prior FWPD prosecutions involving Larry Wayne Lance, Nos. 0848894 and 0848896**

20. Causes 0848894 and 0848896 arose from a May 4, 2002 encounter in which Fort Worth police officer Larry Lance allegedly struck Christopher Dodd and Michael Moreno in the head with an ASP baton, causing injuries that required stitches. Dodd was a 17-year old minor. FWPD temporarily suspended Lance, Internal Affairs investigated, and the State gave notice of two prior disciplinary matters. Lance's partner, Officer Michael Johnson, testified before the grand jury and was expected to testify for the State. These events documented serious concerns about Lance's conduct before the prosecutions were resolved.

21. Before trial, the State also gave notice that Lance had been "acting differently" and was taking Prozac. That evidence arose after the alleged assaults; it did not erase the conduct that produced the suspension, investigation, and two felony prosecutions. Judge Sharen Wilson instructed the jury to acquit in Cause 0848894 if it found, or reasonably doubted, that Lance 'reasonably believed' the force was immediately necessary to make an arrest or search. Without body-camera evidence, the charge placed Lance's asserted belief and authority at the center of the verdict. The jury acquitted him on February 7, 2003. Defense counsel Greg Westfall later called it the "best case of my career."

22. The State dismissed the companion prosecution concerning Moreno for prosecutorial discretion on April 9, 2003. The dismissal prevented the second alleged baton assault from being tried, and neither disposition established Lance's account as objectively true. Lance nevertheless remained in law enforcement and later served in school-policing positions with Mineral Wells

and EMSISD. The present record does not show how FWPD resolved the Internal Affairs matter, why Lance left FWPD, what credibility or fitness findings were made, or what later employers learned through their background investigations. Plaintiff's pending public-information requests seek those records.

23. Whether Lance continued taking Prozac during his later law-enforcement employment remains unknown. If he did, his dosage, reported side effects, observed behavior, and any resulting fitness restrictions are additional factors bearing on his judgment, perception, motor performance, and recurring conduct. The pending records requests seek whether FWPD or any later employer evaluated those matters before authorizing Lance to carry a weapon, exercise arrest authority, serve in schools, or provide law-enforcement testimony.

24. The same accountability problem recurs here. Unlike the 2002 incident, the present case includes the August 8, 2024 body-camera recording and August 11, 2026 audio recording. Plaintiff alleges that those recordings contradict Lance's reports, asserted beliefs, and use of force, yet Lance's account was carried into the family and criminal proceedings before those conflicts were adjudicated. The prior aggravated-assault prosecution arising from alleged baton strikes against a minor requiring stitches, together with Lance's suspension, Internal Affairs investigation, disciplinary history, behavioral concerns, and unexplained movement into later school-policing positions, therefore bears directly on Lance's credibility and on EMSISD's hiring, screening, retention, supervision, and use of Lance as an officer and witness.

**IV. COMMON NUCLEUS AND SECTION 1985 CLAIM**

25. The family action and the dismissed 2024 CTW prosecution form the factual spine connecting the proceedings. The Blacklock action concerns judicial-administration practices affecting the family action. The present action alleges that EMSISD's warning, exclusion, communications, records decisions, and enforcement actions were communicated to or used in

# EXHIBIT S

**State v. Larry Wayne Lance, No. 0848894 selected primary records**

Source file: 0848894 selected Tarrant County court records

**Source URL**

https://dcsa.tarrantcounty.com/Criminal/CriminalDocket/CriminalDocketIndex

*Judgment, indictment, charge, Internal Affairs motion, State notice, and grand-jury production records.*

# CASE NO. 0848894D

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE CRIMINAL DISTRICT |
| VS. | § | COURT NUMBER ONE |
| LARRY WAYNE LANCE | § | TARRANT COUNTY, TEXAS |

## JUDGMENT ON JURY VERDICT OF NOT GUILTY

| | | | |
|---|---|---|---|
| Judge Presiding | : HON. SHAREN WILSON | Date of Judgment | : FEBRUARY 7, 2003 |
| Attorney for State District Attorney | : TIM CURRY | Assistant District Attorney | : MICHAEL G. MEYER SHERRY WHELCHEL |
| Attorney for Defendant | : GREG WESTFALL H.F.R. HAGEN | | |

| Offense Date | Offense | Count |
|---|---|---|
| MAY 4, 2002 | AGGRAVATED ASSAULT BY A PUBLIC SERVANT | ONE |

| | |
|---|---|
| Plea | : NOT GUILTY |
| Jury Verdict | : NOT GUILTY |

This day, set forth above, this cause was called for trial, and the State appeared by the above-named attorney, and the Defendant appeared in person in open court, the above-named counsel for Defendant also being present, and the said Defendant having been duly arraigned and it appearing to the Court that Defendant was mentally competent, and having pleaded "NOT GUILTY" to the indictment herein, both parties announced ready for trial and thereupon a jury, to-wit, a foreman and eleven others, was duly selected, impaneled and sworn, who having heard the indictment read and the Defendant's plea thereto, and having heard the evidence submitted, and having been duly charged by the Court, retired in charge of the proper officer to consider the verdict, and afterward were brought into Court by the proper officer, the Defendant and counsel being present, and returned into open court the verdict set forth above, which was received by the Court and is here now entered upon the minutes of the Court as shown above.

It is therefore CONSIDERED AND ADJUDGED by the Court that the said Defendant be immediately discharged from all further liability upon the charge for which herein tried, and that Defendant go hence without day.

PRESIDING JUDGE

Date Signed: FEBRUARY 7, 2003

VOLUME PAGE A OF CASE NO. 0848894D

TRANS NO. 1

5000 525

NAME LARRY WAYNE LANCE

ADDRESS 904 OUR LANE

WEATHERFORD TX 76088

RACE W SEX M AGE 44 DOB 12-25-57

CASE NO. 0848894 FILED: (DATE) 06-14-02

PC HAS BEEN DETERMINED

TRANSFER: 0599437 COURT DATE

OFFENSE AGG ASLT BY PUBLIC SERV

DATE 05-04-02

I. P. CHRISTOPHER DODD

C. C.

AGENCY FORT WORTH PD

OFFENSE NO. 02323790 COURT CDC1

INDICTMENT NO. 0848894 (1)

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

**THE GRAND JURORS OF TARRANT COUNTY, TEXAS,** duly elected, tried, empaneled, sworn and charged to inquire of offenses committed in Tarrant County, in the State of Texas, upon their oaths do present in and to the * * * * * * * * * CRIMINAL DISTRICT COURT NO. 3 of said County that * * LARRY WAYNE LANCE hereinafter called Defendant, in the County of Tarrant and State aforesaid, on or about the 4TH day of MAY 2002, did INTENTIONALLY OR KNOWINGLY CAUSE BODILY INJURY TO CHRISTOPHER DODD BY STRIKING HIM WITH AN ASP BATON AND THE DEFENDANT DID USE OR EXHIBIT A DEADLY WEAPON DURING THE COMMISSION OF THE ASSAULT, TO-WIT: AN ASP BATON, THAT IN THE MANNER OF ITS USE OR INTENDED USE WAS CAPABLE OF CAUSING DEATH OR SERIOUS BODILY INJURY AND SAID DEFENDANT WAS A PUBLIC SERVANT, TO-WIT: A POLICE OFFICER FOR THE CITY OF FORT WORTH AND WAS ACTING UNDER COLOR OF HIS OFFICE OR EMPLOYMENT,

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Filed (Clerk's use only)

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

AUG 2 0 2002

Time 10:00a

By ______ Deputy

Criminal District Attorney

INDICTMENT - ORIGINAL

Foreman of the Grand Jury

that on or about the 4th day of May 2002, in Tarrant County, Texas, the defendant, Larry Wayne Lance, did intentionally or knowingly cause bodily injury to Christopher Dodd by striking him with an asp baton and the defendant did use or exhibit a deadly weapon during the commission of the assault, to-wit: an asp baton, that in the manner of its use or intended use was capable of causing death or serious bodily injury and said defendant was a public servant, to-wit: a police officer for the city of Fort Worth and was acting under color of his office or employment, then you will find the defendant guilty of aggravated assault.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty of aggravated assault.

A peace officer is justified in using force against another when and to the degree the defendant reasonably believes the force is immediately necessary to make or assist in making an arrest or search if:

1. the defendant reasonably believes the arrest or search is lawful; and
2. before using force, the defendant manifests his purpose to arrest or search and identifies himself as a peace officer, unless he reasonably believes his purpose and identity are already known.

Reasonable belief means a belief that would be held by an ordinary and prudent man in the same circumstances as the defendant.

A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant.

Now, bearing in mind the foregoing definitions and instructions, if you believe from the evidence beyond a reasonable doubt that Larry Wayne Lance, in the County of Tarrant, State of Texas, on or about the 4th day of May 2002, did intentionally or knowingly cause bodily injury to Christopher Dodd by striking him

with an asp baton and the defendant did use or exhibit a deadly weapon during the commission of the assault, to-wit: an asp baton, that in the manner of its use or intended use was capable of causing death or serious bodily injury and said defendant was a public servant, to-wit: a police officer for the city of Fort Worth and was acting under color of his office or employment, but you further find from the evidence, or have a reasonable doubt thereof, that the defendant was a peace officer and reasonably believed that the force, when and to the degree used, was immediately necessary to make or assist in making an arrest or search and the defendant believed that the arrest or search was lawful, and before using force the defendant manifested his purpose to arrest or search and identified himself as a peace officer, unless the defendant reasonably believed his purpose and identity were already known, you will acquit the defendant and say by your verdict not guilty.

You have been permitted to take notes during the testimony in this case. In the event any of you took notes, you may rely on your notes during your deliberations. However, you may not share your notes with the other jurors and you should not permit the other jurors to share their notes with you. You may, however, discuss the contents of your notes with the other jurors. You shall not use your notes as authority to persuade your fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. Your notes are not official transcripts. They are personal memory aids, just like the notes of the judge and the notes of the lawyers. Notes are valuable as a stimulant to your memory. On the other hand, you might make an error in observing or you might make a mistake in recording what you have seen or heard. Therefore, you are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial.

Occasionally, during jury deliberations, a dispute arises as to the testimony presented. If this should occur in this case, you shall inform the court and request that the court read the portion of disputed testimony to you from the official transcript. You

0848894A

**CAUSE NO. 084889D**

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | **IN THE CRIMINAL DISTRICT** |
| | § | |
| **VS** | § | **COURT NO. 1** |
| | § | |
| **LARRY WAYNE LANCE** | § | **TARRANT COUNTY, TEXAS** |

FILED TARRANT COUNTY

**<u>MOTION TO QUASH AND FOR PROTECTIVE ORDER</u>**

**TO THE HONORABLE SHAREN WILSON:**

The City of Fort Worth, a municipal corporation incorporated and existing by and under the constitution and laws of the State of Texas, and Officer Don Fuller, hereinafter "Movants", ask the Court for an order to Quash and for a Protective Order against the Subpoenas served upon Officer Thomas Attebery and Sergeant Michael Decker and issued to the Fort Worth Police Department's Internal Affairs Division.

## I. BACKGROUND FACTS AND CIRCUMSTANCES

Two Subpoenas were issued by Thomas A. Wilder, the Clerk of District Criminal Courts of Tarrant County, Texas, on behalf of Greg Westfall, defense attorney on the 16th and 30th days of January, 2003, and served on the 16th and 30th days of January, 2003, in the above-entitled and numbered cause. The Subpoena requires the attendance of Fort Worth Police Department Internal Affairs Division personnel on January 31st and February 4, 2003, and further requires the production of the following records or items:

All tapes of interviews that were conducted by FWPD IAD in connection with the investigation connected with this case; copies of all photographs (which may be provided on disk if those photographs are digital).

The January 30th subpoena adds "written transcriptions of all audio taped interviews."

True and correct copies of the Subpoenas are attached as Exhibit "A" and incorporated herein by reference the same as if fully copied and set forth at length.

## II. MOTION TO QUASH

Officer Fuller is the Custodian of Officer Larry Wayne Lance's personnel file as it is maintained pursuant to Local Government Code § 143.089 (g) ("g" file). The City of Fort Worth Police Department temporarily suspended Larry Wayne Lance from the police department pursuant to Local Government Code § 143.056. Larry Wayne Lance's "g" file remains confidential as is mandated by § 143.089 (g). Futhermore, much of the information contained in the "g" file is or may contain "Garrity" material which must also be protected: Movants urge that the subpoena to the Internal Affairs Division be quashed pursuant to Local Government Code § 143.089(g), *Garrity v. U.S.*, 385 U.S. 493, 500 (1967), and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

## III. MOTION FOR *IN CAMERA* REVIEW AND TO QUASH THE SUBPOENA

The City of Fort Worth and the Internal Affairs Division of the Fort Worth Police Department request that the foregoing Subpoenas be quashed, a Protective Order be granted, and that Court determine the relevancy and materiality of the materials sought, that all such materials be reviewed upon Order, *in camera,* by the Court so that the Court may determine which of the documents, if any, are material or relevant to the case at bar, that only those materials expressly discoverable pursuant to Local Government Code § 143.089(a), *Garrity v. U.S.*, 385 U.S. 493, 500 (1967), *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) be ordered released, and that pursuant to any such release, the parties be instructed that such materials may be utilized in the case at bar only.

Cause No. 0848894

| | | |
|---|---|---|
| THE STATE OF TEXAS | () | IN THE CRIMINAL DISTRICT |
| VS. | () | COURT NUMBER ONE |
| LARRY WAYNE LANCE | () | TARRANT COUNTY, TEXAS |

**STATE'S NOTICE OF INTENT TO OFFER EXTRANEOUS CONDUCT UNDER RULES 404(B) & 609 (F) T.R.C.E. AND 37.07 T.C.Cr.P.**

COMES NOW, the State of Texas, by and through her undersigned Assistant District Attorney, Mick Meyer, and presents in and to the Court that the State intends to offer proof that the above-mentioned defendant received the following disciplinaries while working as a police officer for the City of Fort Worth, Tarrant County, Texas:

-oversleeping and missing his assigned shift
and –breaking out the window of a car of an individual stopped for the suspicion of DWI. Said defendant used his gun to break the window because he had broken his flashlight on same window.

In addition, the State intends to introduce proof of the following pending case:

| *Cause #* | *Offense* | *Date of Offense* | *Victim* |
|---|---|---|---|
| 0848896 | Agg Aslt by a Public Servant | 5-4-02 | Michael Moreno |

Said case allegedly took place within the bounds of Tarrant County, Texas and it is the State's contention that it is part and parcel of the above-styled matter.

Finally, the State intends to introduce proof that said defendant had been acting differently during the weeks immediately preceding the above-styled matter, including but not limiting to, the taking of Prozac.

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
JAN 2 2 2003
Time 6:25
By ____ Deputy

[redacted]

**Cause Nos. 0848894D and 0848896D**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN CRIMINAL DISTRICT |
| | § | |
| VS. | § | COURT NUMBER ONE |
| | § | |
| LARRY WAYNE LANCE | § | TARRANT COUNTY, TEXAS |

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
JAN 17 2003
Time 11:10
By ____ Deputy

***DEFENDANT'S MOTION FOR PRODUCTION OF GRAND JURY TESTIMONY***

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Larry Wayne Lance, hereinafter called Defendant, and respectfully requests this Court to order the State of Texas to produce a transcript of the proceedings before the Tarrant County Grand Jury who considered these cases. For particularized need, the Defendant would show as follows:

I.

The only testimony received by the Grand Jury was that of Officer Michael Johnson of the Fort Worth Police Department. Officer Johnson was riding with Larry Lance on the night of the incident made the basis of these cases. The Defense expects Officer Johnson to testify on behalf of the State. Thus, the transcript of his prior testimony is essential to the defense in order to possibly impeach Officer Johnson or to produce evidence favorable to the Defense through Officer Johnson.

[redacted]

II.

Counsel for Defendant has conferred with the State on this matter and the State has no objection to Defendant acquiring the Grand Jury transcript in this cause.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that this Court sign an order authorizing the State of Texas to produce the record from the Grand Jury in this cause.

Respectfully submitted,

GREG WESTFALL
State Bar Number: 00788646

WESTFALL, PLATT & CUTRER
910 Mallick Tower
One Summit Avenue
Fort Worth, Texas 76102
(817) 877-1700
(817) 877-1710 (fax)

***CERTIFICATE OF SERVICE***

I hereby certify that a true and correct copy of the foregoing instrument has been hand-delivered to the office of Mick Meyer, Assistant Tarrant County Criminal District Attorney, Tarrant County Justice Center, 401 West Belknap, Fort Worth, Texas 76196, on this 17 day of JANUARY, 2003.

GREG WESTFALL

**Cause Nos. 0848894D and 0848896D**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN CRIMINAL DISTRICT |
| | § | |
| VS. | § | COURT NUMBER ONE |
| | § | |
| LARRY WAYNE LANCE | § | TARRANT COUNTY, TEXAS |

***ORDER DEFENDANT'S MOTION FOR PRODUCTION OF GRAND JURY TESTIMONY***

Having considered Defendant's Motion, the Court is of the opinion that the Motion is meritorious and should be GRANTED.

IT IS THEREFORE ORDERED, that the State of Texas produce a copy of the Grand Jury proceedings in this Cause to the Defense.

SIGNED THIS 17 DAY OF January, 2003.

Honorable Sharen Wilson, Judge
Criminal District Court Number One

# EXHIBIT T

**State v. Larry Wayne Lance, No. 0848896 selected primary records**

Source file: 0848896 selected Tarrant County court records

**Source URL**

https://dcsa.tarrantcounty.com/Criminal/CriminalDocket/CriminalDocketIndex

*Indictment and April 9, 2003 dismissal for prosecutorial discretion.*

NAME LARRY WAYNE LANCE
ADDRESS 904 OUR LANE
WEATHERFORD TX 76088
RACE W SEX M AGE 44 DOB 12-25-57
CASE NO. 0848896 FILED: (DATE) 06-14-02
PC HAS BEEN DETERMINED
TRANSFER: 0599437 COURT DATE

OFFENSE AGG ASLT BY PUBLIC SERV
DATE 05-04-02
I. P. MICHAEL MORENO
C. C.
AGENCY FORT WORTH PD
OFFENSE NO. 02323790 COURT CDC1

INDICTMENT NO. 0848896 D

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

**THE GRAND JURORS OF TARRANT COUNTY, TEXAS,** duly elected, tried, empaneled, sworn and charged to inquire of offenses committed in Tarrant County, in the State of Texas, upon their oaths do present in and to the * * * * * * * * * CRIMINAL DISTRICT COURT NO. 3 of said County that * *

LARRY WAYNE LANCE hereinafter called Defendant, in the County of Tarrant and State aforesaid, on or about the 4TH day of MAY 2002, did

INTENTIONALLY OR KNOWINGLY CAUSE BODILY INJURY TO MICHAEL MORENO BY STRIKING HIM WITH AN ASP BATON AND THE DEFENDANT DID USE OR EXHIBIT A DEADLY WEAPON DURING THE COMMISSION OF THE ASSAULT, TO-WIT: AN ASP BATON, THAT IN THE MANNER OF ITS USE OR INTENDED USE WAS CAPABLE OF CAUSING DEATH OR SERIOUS BODILY INJURY AND SAID DEFENDANT WAS A PUBLIC SERVANT, TO-WIT: A POLICE OFFICER FOR THE CITY OF FORT WORTH AND WAS ACTING UNDER COLOR OF HIS OFFICE OR EMPLOYMENT,

Filed (Clerk's use only)

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
AUG 2 0 2002
Time 10:00
By ______ Deputy

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Tim Curry
Criminal District Attorney

Foreman of the Grand Jury

INDICTMENT - ORIGINAL

NO. 0848896

THE STATE OF TEXAS

VS

LARRY WAYNE LANCE

IN THE CRIMINAL DISTRICT

COURT NO. 1

TARRANT COUNTY, TEXAS

## MOTION TO DISMISS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the State of Texas by and through her Criminal District Attorney, and respectfully requests the Court to dismiss the above and numbered criminal action for the reason:

_____DM01 Insufficient evidence. *(Specify)

_____DM02 The defendant was convicted in Cause No. ______________ on the ______ day of ________________________________, 20______.

_____DM03 The complaining witness has requested dismissal -- affidavit on file.

_____DM04 The case has been refiled/reindicted as Cause No.______________.

_____DM05 The defendant has never been apprehended.

_____DM06 The defendant is deceased -- death certificate on file.

_____DM07 Defendant granted immunity for testimony.

_*_DM08 Other *(Specify)

_____DM09 Prosecution is barred by the Speedy Trial Act.

_____DM10 The defendant has been placed in the deferred prosecution program.

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
APR 09 2003
Time 910
By SP Deputy

* Prosecutorial discretion

WHEREFORE, it is prayed that the above entitled and numbered cause be dismissed.

Respectfully submitted,

TIM CURRY
CRIMINAL DISTRICT ATTORNEY
TARRANT COUNTY, TEXAS

Michael M Meyers
ASSISTANT CRIMINAL DISTRICT ATTORNEY

The foregoing petition having been presented to me on this the 9 day of April, A.D. 20 03, and the same having been considered, it is therefore ORDERED, ADJUDGED and DECREED that said above entitled and numbered cause be and the same is hereby dismissed.

[signature]
JUDGE

DA-270 Rev. 9/00
GPC-0606

# EXHIBIT U

**2008 Texas Super Lawyers Greg Westfall profile excerpts**

Source file: GregWestfallArticle2008_TheSinger_and_His_Fallen_Friends.pdf

**Source URL**

https://www.superlawyers.com/articles/texas/the-singer-and-his-fallen-friends/

*Excerpts identify Mollee Westfall and describe the Lance defense and reported injuries.*

that the music was too loud, and management stiffed them on their pay at the end of the night. “When you’re out there trying to make it in the music world, you have to take a lot of abuse,” he says. “There’s always someone there to hose you, whether it be a record company or a promoter.”

But certain types of cruel behavior are likely to pop up in the legal profession as well. During his first summer in law school, Westfall had a clerkship at a civil law firm, where he worked after graduation. “Man, I hated it,” he says emphatically. “I dealt with adjusters who would tell me to go fly a kite just for trying to claim the bare amount of medical costs.”

Finding civil law to be intolerably uncivil, Westfall switched to criminal law in an effort to avoid such nastiness. “If we’re just talking about someone’s life or their freedom,” he says, “people have a tendency to be collegial. But when you start talking about the really important things like money, everyone’s really mean to each other.”

After leaving the civil law firm in 1994, Westfall joined up with well-known criminal defense attorney Jeff Kearney. It was the same year Westfall married his wife, Mollee, a former Tarrant County prosecutor who recently took the bench as the youngest of Tarrant County’s nine felony court judges.

Once Westfall made the switch into criminal law, he had the opportunity to work on cases like that of Lance Butterfield, the high school honor student and football star who snapped one day and shot his abusive father. Westfall was second chair on the case, and felt a close bond with Butterfield. He recalls meeting with the young man the day before he was set to testify. “Lance was still completely removed from the fact that he had killed his own father,” he says. Westfall asked Butterfield to write a letter to his late father. Butterfield came back the next day with letter in hand, and, as Westfall describes it, “he completely opened up on the stand.” After an initial mistrial, a plea bargain was struck on the eve of the second trial. Butterfield pleaded guilty to manslaughter in exchange for a three-year sentence with eligibility for parole in 24 months.

After six and a half years with Kearney, Westfall opened his own criminal practice in February 2001, the same month that he and his wife celebrated the birth of their first child. He became inspired to play music

again. “I wanted my son to grow up in a house with music,” he says. (They’ve since added a daughter, who is now five.)

The following year, Westfall became even more “fired up” about music when he attended a course at Trial Lawyers College in Wyoming. It may seem unusual to find songwriting inspiration at a seminar designed to improve trial methods, but Westfall claims it was one of the most musically fertile periods of his life. “I was really into the notion of how to tell a story effectively,” he says. “I could translate that into my work in the courtroom, and into my work as a songwriter.”

After Westfall returned home from the seminar, two significant things happened. “I tried the best case of my career, and I wrote enough songs to fill a CD.” The case was that of Larry Wayne Lance, a police officer charged with aggravated assault. While responding to a call about suspicious activity, Lance struck two men on the head so hard that they required stitches. Westfall used his newly honed trial skills to successfully argue that Lance believed he was in a potentially volatile situation during the incident. The officer was acquitted.

Westfall was also successful when he tested out his fresh approach to songwriting at a local open-mic night. “I got a favorable response, so I went back another week, then another, for the next three months.” He hooked up with a local music producer, and the momentum grew. The following year Texas Theater was released. Before he knew it, Westfall was on stage warming up for country legend Tanya Tucker. “It was like Fantasy Island for a year,” Westfall says of the period after his CD was released.

While Westfall has plans to release another CD in the next few years, he’ll never give up law. “I love what I do in law,” he says, “and it helps me be more creative with music.”

## Search attorney feature articles

Lawyer login

Super Lawyers

# EXHIBIT V

**ECF No. 31 Christian free-exercise and viewpoint excerpts**

Source file: 31_101326_AMENDED_COMPLAINT.pdf

**Source URL**

https://ecf.txnd.uscourts.gov/

*Filed in this action as ECF No. 31; excerpts are ECF pages 34 and 51.*

notice acts. Their timing and continuity with the documented monitoring and enforcement channel support retaliatory causation.

131. The arrests, prosecutions, exclusion, record withholding, and renewed enforcement lacked probable cause or other lawful justification. The contemporaneous recording captured no threat or attempted strike; the CTW omitted the factual predicates and procedural protections required by § 37.105; the 2024 prosecution ended without a conviction; and the same defective exclusion was enforced again after its statutory maximum term. Independently, the unexplained choice to impose the maximum geographic scope from a single-campus encounter supports the inference that Defendants intended to suppress Plaintiff's future participation and criticism throughout EMSISD. Defendants' departures from the governing statute, escalation after protected activity, and selective use of District police power plausibly establish but-for causation.

132. Hixon is liable under this Count to the extent Count VIII establishes that she willfully joined the conversion of the protected Reflections request into arrest, exclusion, and prosecution. Jennifer is liable to the extent Count IX establishes that she willfully joined the 2026 monitoring and enforcement operation. Alford is liable only to the extent Count IX establishes her willful participation in the coordinated use of official EMSISD information to perpetuate the retaliatory consequences.

133. EMSISD is liable through the policies, decisions, ratification, and customs alleged in Count VI. Grady, Lance, Flowers, and Waters are liable for their personal acts under color of law. Hollingsworth is sued under this Count solely in his official capacity to implement prospective relief ending the continuing exclusion and its retaliatory effects.

134. Plaintiff seeks compensatory and nominal damages from the liable parties, punitive damages from the individuals whose conduct satisfies the governing standard, and declaratory and prospective relief against EMSISD and Hollingsworth in his official capacity.

**COUNT II – FIRST AND FOURTEENTH AMENDMENTS: FREE EXERCISE AND PARENTAL DIRECTION (EMSISD, GRADY, LANCE, FLOWERS, WATERS, AND HOLLINGSWORTH SOLELY FOR PROSPECTIVE OFFICIAL-CAPACITY RELIEF)**

135. Plaintiff's sincere Christian practice includes the duty to direct his children's moral and religious upbringing, review what they are taught and create at school, communicate with their educators, attend conferences and activities, retrieve and accompany his children, and remain physically present in their educational lives. Those activities are exercises of religion and parental direction, not a generalized demand to control the District's curriculum.

children's educational material, challenged District officials and police, pursued grievances and records, and intended to speak at open Board meetings.

213. EMSISD opened Board meetings for public attendance and comment and opened parent conferences, Meet the Teacher, award presentations, and similar activities to the relevant parent community. Those settings were at least limited public forums for the purposes for which the District opened them. Other school property remained a nonpublic forum, but restrictions there still had to be reasonable in light of the property's function and viewpoint neutral.

214. Defendants excluded Plaintiff from every category of District property and event because of the viewpoint and persistence of his inquiries, not because his speech fell outside a neutral subject-matter limitation. The exclusion began when he demanded the Reflections material at Greenfield, expanded immediately to every District property, continued after his criticism, grievances, and records requests, and was enforced after he challenged EMSISD in court.

215. Plaintiff alleges that Defendants had no lawful ground to exclude him from Greenfield or any other District property. Without conceding that primary allegation, even a lawful immediate removal from Greenfield would not establish a reasonable basis for an indefinite prohibition reaching every campus, office, Board meeting, parent event, parking area, stadium, and facility. The contemporaneous recording contains no threat or violent conduct, Hixon acknowledged that there was 'No problem,' and Defendants identified no current risk, conduct-specific rule, definite duration, objective access standard, or neutral process for restoring access. The maximum-scope ban was unreasonable in light of the forums' different purposes and was imposed and maintained because of Plaintiff's viewpoint.

216. The police-permission requirement and arrest threat operated as an individualized prior restraint. They vested unbounded discretion in EMSISD Police to decide whether Plaintiff could attend an open Board meeting, parent event, conference, activity, or arranged inspection. The CTW supplied no written criteria, time for decision, location-based standard, definite term, or meaningful review.

217. Flowers and Lance initiated the exclusion; Lance converted the Greenfield encounter into the districtwide written CTW; Waters maintained it by denying review; Grady administered and enforced it; and EMSISD continued the policy through its official form and implementation chain. Each individual knew of Plaintiff's protected inquiries and personally participated in imposing, maintaining, or enforcing the challenged restriction.